Scott S. Humphreys (SBN 298021)
humphreyss@ballardspahr.com
Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

J. Matthew Thornton (*pro hac vice forthcoming*)
thorntonj@ballardspahr.com
**BALLARD SPAHR LLP**
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.371.3211
Facsimile: 612.371.3207

Gregory P. Szewczyk (*pro hac vice forthcoming*)
szewczykg@ballardspahr.com
Alexia C. Chapman (*pro hac vice forthcoming*)
chapmana@ballardspahr.com
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.299.7354
Facsimile: 303.296.3956

*Attorneys for Defendant SkinSpirit Essential LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KOURTNEY RUSOW, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SKINSPIRIT ESSENTIAL LLC,

Defendant.

Case No. 3:24-cv-09317-CRB

**DEFENDANT SKINSPIRIT ESSENTIAL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

*Declaration of Scott S. Humphreys in Support of Motion to Dismiss; [Proposed] Order and Filed Herewith*

**Hearing:**
Judge: Hon. Charles R. Breyer
Dept: Courtroom 6, 17th Floor
Date: May 30, 2025
Time: 10:00 a.m.

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on May 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Charles R. Breyer in Courtroom 6 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant SkinSpirit Essential LLC ("SkinSpirit") will and hereby does move to dismiss with prejudice the entire Class Action Complaint ("Complaint") filed by Kourtney Rusow ("Plaintiff") and each and every claim alleged therein.

This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state any claim upon which relief can be granted.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and other matters on file in this action, and any further briefing, evidence presented or argument of counsel, and anything else the Court may properly consider.

**SUMMARY OF ARGUMENT**

Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

1. The California Confidentiality of Medical Information Act (CMIA) prohibits a provider of healthcare from disclosing medical information regarding a patient of the provider. Plaintiff has not pled facts sufficient to establish that she is a "patient" of SkinSpirit or that SkinSpirit disclosed to a third party (here, LinkedIn) any of her "medical information," as those terms are defined under the statute. Cal. Civ. Code §§ 56.05, 56.10; *Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *14 (S.D. Cal. Feb. 13, 2025); *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4–5 (S.D. Cal. Oct. 18, 2021); *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017); *Eisenhower Med. Ctr. V. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014).

2. Further, the section of CMIA under which Plaintiff brings her claim requires actual damages—it does not provide for recovery of statutory or nominal damages—and Plaintiff has not alleged that she suffered any economic loss or personal injury as a result of the alleged disclosure. Cal. Civ. Code §§ 56.10, 56.35.

3. The Electronic Communications Protection Act (ECPA) exempts a party to a communication from liability unless that party intercepted the communication "for the purpose of committing any criminal or tortious act[,]" 18 U.S.C. § 2511(2)(d) (the "crime-tort exception"). Plaintiff has not pled facts sufficient to show that SkinSpirit used LinkedIn's Insight Tag on its website "for the purpose of" committing any crime or tort, let alone a crime or tort that is independent from the alleged interception of Plaintiff's communications, as required under the law. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024); *Okash v. Essentia Health*, No. CV 23-482, 2024 WL 1285779, at *3–5 (D. Minn. Mar. 26, 2024); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001).

4. Plaintiff's attempt to invoke the crime-tort exception, here, by alleging that SkinSpirit violated the Health Insurance Portability and Accountability Act (HIPAA), fails as a matter of law, because (a) SkinSpirit is not a covered entity under HIPAA, and (b) even if it were, the conduct that allegedly violated HIPAA is not sufficiently independent from the alleged ECPA violation to trigger the crime-tort exception. 45 C.F.R. §§ 160.103, 162.1101, *et seq*.; *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02864-EMC, 2024 WL 1589982, at *8–10 (N.D. Cal. Apr. 11, 2024); *Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *3–4 (E.D. Pa. June 10, 2024).

5. Plaintiff's California Invasion of Privacy Act (CIPA) § 631(a) claim fails because it was not timely asserted, and, in any event, Plaintiff has not alleged facts sufficient to establish that SkinSpirit had the requisite knowledge of, or intent to aid in, LinkedIn's criminal or tortious purpose (if any) of collecting data about Plaintiff's website interactions. *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, Doc. 55 (C.D. Cal. March 13, 2025); *Smith v. Yeti Coolers, LLC*, -- F. Supp. 3d --, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024); *Javier v. Assurance IQ*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023); *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995).

6. Plaintiff's constitutional invasion of privacy claim fails because she cannot demonstrate either that she has a reasonable expectation of privacy under the circumstances alleged or that SkinSpirit's conduct was "highly offensive." *Hammerling v. Google,* No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

For these reasons, the Court should dismiss all of Plaintiff's claims, with prejudice.

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Civil Local Rule 7-4(a)(3), SkinSpirit sets forth the following statement of issues to be decided:

1. Whether the Court should dismiss Plaintiff's CMIA claim because Plaintiff has not sufficiently alleged that she is a "patient," that the data allegedly intercepted constitutes "medical information," or that she suffered economic loss or personal injury as required under the law.

2. Whether the Court should dismiss Plaintiff's ECPA claim because Plaintiff has failed to sufficiently allege that SkinSpirit, as a party to the communication at issue, intercepted the communication for the purpose of committing an independent criminal or tortious act.

3. Whether the Court should dismiss Plaintiff's CIPA claim because (a) it is untimely, or (b) she has failed to allege facts sufficient to establish that SkinSpirit had the requisite knowledge and intent to qualify as an aider and abettor under Cal. Pen. Code § 631(a).

4. Whether the Court should dismiss Plaintiff's constitutional invasion of privacy claim because she cannot sufficiently allege that she has a reasonable expectation of privacy in the data allegedly collected, or that the alleged invasion was highly offensive to constitute a serious invasion under the law.

DATED: March 19, 2025

BALLARD SPAHR LLP

BY: */s/ Scott S. Humphreys*
Scott S. Humphreys
Gregory P. Szewczyk
J. Matthew Thornton
Brianna R. Howard
Alexia C. Chapman

*Attorneys for SkinSpirit Essential LLC*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..... 1
II. FACT STATEMENT ..... 1
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 3
A. Plaintiff has not stated a viable CMIA claim. ..... 3
1. Plaintiff has not alleged facts sufficient to establish that she is a "patient." ..... 3
2. The information SkinSpirit allegedly disclosed to LinkedIn is not "medical information" as defined by CMIA. ..... 4
3. Plaintiff has not alleged she suffered any "economic loss or personal injury." ..... 6
B. Plaintiff has not alleged facts sufficient to sustain her ECPA claim. ..... 6
1. SkinSpirit could not have violated Section 1320d-6(a)(3) because it is not a "covered entity" under HIPAA. ..... 8
2. Even if HIPAA applied, the specific conduct Plaintiff claims SkinSpirit engaged in does not support application of the crime-tort exception. ..... 9
C. Plaintiff's CIPA claim fails. ..... 9
1. Plaintiff's CIPA claim was not timely asserted. ..... 9
2. SkinSpirit did not knowingly or intentionally aid and abet a CIPA violation. ..... 11
D. Plaintiff cannot allege facts sufficient to sustain her claim for constitutional invasion of privacy. ..... 13
1. Plaintiff does not have a reasonable expectation of privacy in the allegedly collected information. ..... 13
2. SkinSpirit's use of the LinkedIn Tag was not "highly offensive." ..... 14
V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal* ..... 3
556 U.S. 662 (2009)

*Ass'n of Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ..... 3
459 U.S. 519 (1983)

*Bell Atlantic Corp. v. Twombly* ..... 3
550 U.S. 544 (2007)

*B.K. v. Eisenhower Med. Ctr.* ..... 7
721 F. Supp. 3d 1056 (C.D. Cal. 2024)

*Doe v. Kaiser Found. Health Plan, Inc.* ..... 9
No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)

*Eisenhower Med. Ctr. v. Super. Ct.* ..... 4, 5
226 Cal. App. 4th 430 (2014)

*Erhart v. BofI Holding, Inc.* ..... 3, 4, 5
269 F. Supp. 3d 1059 (S.D. Cal. 2017)

*Fox v. Ethicon Endo-Surgery, Inc.* ..... 10, 11
110 P.3d 914 (Cal. 2005)

*Gibson v. Planned Parenthood Fed'n of Am., Inc.* ..... 5
No. 3:23-cv-04529-JD, 2024 WL 4251892 (N.D. Cal. July 2, 2024)

*Graham v. Noom, Inc.* ..... 9
533 F. Supp. 3d 823 (N.D. Cal. 2021)

*Hammerling v. Google LLC* ..... 13, 14
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024)

*Hammerling v. Google LLC* ..... 14
615 F. Supp. 3d 1069 (N.D. Cal. 2022)

*Hernandez v. Hillsides* ..... 14
47 Cal. 4th 272 (2009)

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.* ..... 5
No. 19-cv-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021)

*In re DoubleClick Inc. Priv. Litig.* ..... 7
154 F. Supp. 2d 497 (S.D.N.Y. 2001)

*In re Google Inc. Cookie Placement Consumer Priv. Litig.* ..... 7
806 F.3d 125 (3d Cir. 2015)

*In re Google, Inc. Priv. Pol'y Litig.* .......... 14
58 F. Supp. 3d 968 (N.D. Cal. 2014)

*In re iPhone Application Litig.* .......... 14
844 F. Supp. 2d 1040 (N.D. Cal. 2012)

*Javier v. Assurance IQ LLC* .......... 9, 10, 11
649 F. Supp. 3d 891 (N.D. Cal. 2023)

*J.C. v. Catholic Health Sys. Inc.* .......... 10
No. 1:23-cv-00796, 2024 WL 5136236 (W.D.N.Y Aug. 29, 2024)

*Jolly v. Eli Lilly & Co.* .......... 10
751 P.2d 923 (Cal. 1988)

*Kidron v. Movie Acquisition Corp.* .......... 11
40 Cal. App. 4th 1571 (1995)

*Low v. LinkedIn Corp.* .......... 14, 15
900 F. Supp. 2d 1010 (N.D. Cal. 2012)

*Licea v. Finish Line* .......... 12
No. 23STCV22390 (Cal. Super. Ct. Jul. 10, 2024)

*M.G. v. Therapymatch, Inc.* .......... 5
No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)

*Nienaber v. Overlake Hosp. Med. Ctr.* .......... 7
733 F. Supp. 3d 1072 (W.D. Wash. 2024)

*Okash v. Essentia Health* .......... 7, 9
No. 23-cv-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)

*Ott v. Home Savings & Loan Ass'n* .......... 8
265 F.2d 643 (9th Cir. 1958)

*People v. Beeman* .......... 11
35 Cal. 3d 547 (1984)

*Rodriguez v. FastMed Urgent Care, P.C.* .......... 9
741 F. Supp. 3d 352 (E.D.N.C. 2024)

*Smart v. Main Line Health* .......... 9
No. 22-cv-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024)

*Smith v. Yeti Coolers, LLC* .......... 12, 15
-- F. Supp. 3d --, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024)

*Tamraz v. Bakotic Pathology Assocs.* .......... 5
No. 22-cv-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022)

*United States v. Jiau* .......... 7
734 F.3d 147 (2d Cir. 2013)

*Valenzuela v. Kroger Co.* ..... 11
No. 2:22-cv-06382-DMG-AGR, Doc. 55 (C.D. Cal. Mar. 13, 2025)

*Warden v. Kahn* ..... 11
99 Cal. App. 3d 805 (1979)

*Williams v. DDR Media, LLC* ..... 14
No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)

*Wilson v. Rater8, LLC* ..... 4, 5, 6
No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)

*Yoon v. Lululemon USA, Inc.* ..... 13
549 F. Supp. 3d 1073 (C.D. Cal. 2021)

*Zarif v. Hwareh.com, Inc.* ..... 3, 4
No. 23-cv-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025)

**Statutes**

California Medical Information Act, Cal. Civ. Code § 56, *et seq.* ..... 3, 4, 5, 6

California Invasion of Privacy Act, Cal. Pen. Code § 631(a) ..... 9, 10, 11. 12

Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ..... 1, 6, 7

Health Insurance Portability and Accountability Act of 1996 ..... 7, 8

42 U.S.C. § 1320d, *et seq.* ..... 7, 8

**Other Authorities**

Cal. Code Civ. Proc. § 340 ..... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff's lawsuit arises from SkinSpirit's alleged use on www.skinspirit.com (the "Website") of a publicly-available snippet of code created by LinkedIn, called the "LinkedIn Insight Tag," for marketing and advertising purposes. Plaintiff alleges that, by using LinkedIn's Insight Tag on its Website, SkinSpirit enabled LinkedIn to collect "click event" data related to her online booking of a consultation with SkinSpirit for one or more of the pre-defined cosmetic procedures SkinSpirit features on its Website, purportedly in violation of the California Confidentiality of Medical Information Act (CMIA), the Electronic Communications Privacy Act (ECPA), the California Invasion of Privacy Act (CIPA), and her privacy under California's constitution.

The Court should dismiss all of Plaintiff's claims with prejudice. Plaintiff's CMIA claim fails because she has not, and cannot, allege that (1) she is a "patient," as defined by CMIA, (2) the data allegedly collected meets the statute's definition of "medical information," or (3) she suffered any "economic loss or personal injury" as required for recovery under the specific section of CMIA that Plaintiff claims SkinSpirit violated. Plaintiff's ECPA claim fails because SkinSpirit was a party to the alleged "communications" at issue, and Plaintiff cannot state facts necessary to invoke the narrowly construed crime-tort exception against it. Plaintiff's CIPA claim fails because it was brought outside of the applicable statute of limitations, and Plaintiff has not alleged facts sufficient to claim the benefit of tolling. Additionally, Plaintiff's CIPA claim fails because SkinSpirit did not have the requisite knowledge or intent to aid and abet a wiretapping violation. Lastly, Plaintiff's constitutional invasion of privacy claim fails because she does not have a reasonable expectation of privacy in the alleged data collection and, even if she did, SkinSpirit's alleged use of the LinkedIn Insight Tag was not "highly offensive" under the law.

## II. FACT STATEMENT[1]

SkinSpirit's Website allows users to click and choose from a series of predefined options to "schedule both virtual and in-person consultations" for cosmetic services, including "injectables,

[1] For purposes of this motion, SkinSpirit accepts as true all non-conclusory factual allegations in the Complaint.

laser treatments, body contouring, and laser hair removal procedures." Compl. ¶¶ 1–3, 8, 38. As ascertained by Plaintiff using publicly-available developer tools, *see id.* ¶¶ 39–40, SkinSpirit's Website incorporated "a simple code snippet" created by LinkedIn—an entity to which Plaintiff refers frequently in her Complaint, but which she chose not to join as a defendant—for any company to add to its website, called the LinkedIn Insight Tag. *Id.* ¶¶ 21, 25. As a result, when a LinkedIn user visited the Website, LinkedIn's Insight Tag would allegedly "intercept" certain information about that user's interactions with the Website for advertising purposes. *See id.* ¶¶ 27, 40–41.

Here, Plaintiff alleges that the LinkedIn Insight Tag on the Website was configured to intercept the following "click events": (1) the state in which a user would like to receive services; (2) the type of procedure the user would be interested in; (3) the specific procedure the user would want to have completed; (4) the provider the user would wish to see; and (5) the user's desired date and time for an appointment (collectively, "Booking Data"). *See id.* ¶¶ 7, 40, 42, 98. Plaintiff does **not** allege—because she cannot—that the LinkedIn Insight Tag was also configured to intercept a user's name, age, address, telephone number, social security number, insurance details, or any other information that might be used to correlate the Booking Data with a specific user. Rather, Plaintiff alleges that **LinkedIn** maintains its users' personally identifying information and is able, using the "li_sugr and lms_ads cookies" it installs on LinkedIn users' browsers when they log in to LinkedIn, to "make a probabilistic match of a user's identity," or otherwise link data collected about users' website browsing activity off of LinkedIn with their LinkedIn profiles. *Id.* ¶¶ 27–31, 43, 107; *see also id.* ¶ 29 n.23 (incorporating by reference LinkedIn's "Cookie Table," available at https://www.linkedin.com/legal/l/cookie-table).

Plaintiff—a LinkedIn user who was, at all relevant times, subject to LinkedIn's user agreement, privacy policy, and cookie policy—visited the Website on May 12, 2023, to "book a medical consultation for Botox and laser treatment." *Id.* ¶¶ 6–7, 33. She alleges that by incorporating LinkedIn's Insight Tag into the Website code, SkinSpirit "assisted" LinkedIn to intercept her Booking Data, *see id.* ¶¶ 4, 7, 40–42, 98, which, according to Plaintiff, gives rise to claims against SkinSpirit for violating the CMIA, ECPA, CIPA, and her constitutional right to privacy.

## III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a plaintiff must plead facts from which a court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678; *see also Ass'n of Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (holding it is improper to assume plaintiff "can prove facts that it has not alleged" or laws violated "in ways that have not been alleged").

## IV. <u>ARGUMENT</u>

### A. Plaintiff has not stated a viable CMIA claim.

Plaintiff claims SkinSpirit violated Section 56.10 of CMIA. *See* Compl., Count III. Section 56.10 provides, in pertinent part, that "[a] provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining" proper authorization. Cal. Civ. Code § 56.10(a).

Plaintiff's CMIA claim fails for at least three reasons: (1) Plaintiff is not a "patient" as defined by CMIA; (2) SkinSpirit did not disclose "medical information" to LinkedIn; and (3) Plaintiff does not allege that she suffered any economic loss or personal injury as a result of SkinSpirit's alleged disclosure. For any of these reasons, the Court should dismiss Plaintiff's CMIA claim.

1. <u>Plaintiff has not alleged facts sufficient to establish that she is a "patient."</u>

To assert a claim under CMIA, Plaintiff must allege facts sufficient to establish that she is "a patient" of SkinSpirit. Cal. Civ. Code § 56.10(a). CMIA defines "patient," in pertinent part, as a person "who **received** health care services from a provider of health care." Cal. Civ. Code § 56.05(m) (emphasis added). Browsing for and booking medical services on a health care provider's website are not, in and of themselves, sufficient to establish the requisite patient-provider relationship under CMIA. *See Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (holding that the plaintiff's alleged efforts to "seek[] an appointment with his physician" were not sufficient to establish that he was a "patient" under CMIA); *Zarif v. Hwareh.com, Inc.*, No. 23-

cv-0565-BAS-DEB, 2025 WL 486317, at *14 (S.D. Cal. Feb. 13, 2025) (holding that "brows[ing] for medications … on [d]efendant's website" was not sufficient to transform plaintiff into a "patient" under CMIA).

In this case, Plaintiff alleges that she "navigated to Defendant's Website to book a medical consultation for Botox and laser treatment" at one of SkinSpirit's locations and, "[d]uring the booking process," clicked certain pre-defined options to indicate "the state she wished to book the appointment in, the type of procedure she was interested in, the specific procedure she wanted to have completed, the reason for the procedure, the provider she wished to see, the day, and time for her appointment." Compl. ¶ 7; *see also id.* ¶ 40, Fig. 3. Plaintiff's formulaic recitation of the CMIA elements aside, she does not allege that any of the information the LinkedIn Insight Tag collected would show whether, or if, she actually **received** any services from SkinSpirit after engaging in the "booking process" on the Website. Thus, Plaintiff cannot show that she is a "patient" under CMIA, and her claim should be dismissed. *See Erhart*, 269 F. Supp. 3d at 1078; *Zarif*, 2025 WL 486317, at *14.

2. <u>The information SkinSpirit allegedly disclosed to LinkedIn is not "medical information" as defined by CMIA.</u>

Section 56.10 of CMIA prohibits health care providers from improperly disclosing "medical information," which is defined as "any individually identifiable information . . . regarding a patient's medical history, . . . physical condition, or treatment." Cal. Civ. Code § 56.05(i). For medical information to be "individually identifiable," it must "include[] or contain[] any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05(j); *see also Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4–5 (S.D. Cal. Oct. 18, 2021) ("It is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include 'a patient's medical history, mental or physical condition, or treatment.'" (quoting *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014))). Here, the information Plaintiff claims SkinSpirit permitted LinkedIn to collect does not qualify "as medical

information" for at least two independent reasons.

First, Plaintiff does not allege SkinSpirit disclosed information reflecting her own medical history, medical treatments, or physical condition. Rather, Plaintiff alleges that she clicked on categories of procedures "she was interested in" or "wanted to have completed," which included SkinSpirit's pre-defined summaries of what those services may typically address. Compl. ¶ 40, Fig. 3. But merely clicking on SkinSpirit's Website offerings to express interest in certain services—the modern day equivalent of walking into a specialty clinic and signing up to receive a consultation with a specialist who offers a specific kind of procedure—is not the equivalent of Plaintiff providing SkinSpirit information about her medical history, treatments, or physical condition. *See, e.g.*, *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 435 (noting that "an individual's name" on "a list released by doctor X or clinic Y" is not "medical information"); *Gibson v. Planned Parenthood Fed'n of Am., Inc.*, No. 3:23-cv-04529-JD, 2024 WL 4251892, at *1 (N.D. Cal. July 2, 2024) (finding plaintiff's research about "Women's Services" on defendant's website and appointment bookings not to be "medical information"); *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (holding generic allegations about a "patient's 'specific concern giving rise to the need for mental health therapy,' the 'kind of care that the patient was requesting,' and information regarding the patient's preferences regarding the therapist and where the patient was seeking therapy" was not "medical information").

Courts have also been clear that appointment booking information is not "medical information" under CMIA. *See Gibson*, 2024 WL 4251892, at *1 (scheduling of medical appointments not "medical information"); *Rater8*, 2021 WL 4865930, at *4–5 (plaintiff's contact information and medical appointment date not "medical information"); *Erhart*, 269 F. Supp. 3d at 1078 (fact that plaintiff sought appointment with physician not "medical information"); *Tamraz v. Bakotic Pathology Assocs.*, No. 22-cv-0725-BAS-WVG, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022) (holding appointment information was not "medical information"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-cv-2904, 2021 WL 5937742, at *34 (D.N.J. Dec. 16, 2021) (finding "dates of service and referring doctor" were not "medical information"). Indeed, at least one court has held that even the fact that a patient was actually

examined by a specific medical provider—far more than what Plaintiff has alleged here—is not "medical information" under CMIA. *See Rater8*, 2021 WL 4865930 at *4–5.

Second, even if SkinSpirit had disclosed Plaintiff's medical history, medical treatments, or physical condition, her CMIA claim would still fail because nowhere in the Complaint does she allege that SkinSpirit disclosed such information together with information that, alone or in combination with other publicly available information, would reveal her identity. *See, e.g.*, *Rater8* 2021 WL 4865930, at *4–5. Plaintiff does not allege that she inputted her name, address, email address, telephone number, or social security number anywhere on the Website—let alone that the LinkedIn Insight Tag intercepted such information. Nor does Plaintiff allege that SkinSpirit maintained other personally identifiable information about her that was disclosed to LinkedIn via the LinkedIn Insight Tag. Absent allegations that SkinSpirit disclosed both Plaintiff's medical history, medical treatments, or physical condition **together with** individually identifiable information, her CMIA claim fails.

3. <u>Plaintiff has not alleged she suffered any "economic loss or personal injury."</u>

To maintain a claim under Section 56.10 of CMIA—the only CMIA claim Plaintiff brings[2]—she must adequately allege (and ultimately prove) that she "has sustained economic loss or personal injury." Cal. Civ. Code § 56.35. Unlike violations under other sections of CMIA, *see id.* § 56.36(b) (providing additional remedies for claims arising from negligent release of confidential information), a patient seeking relief under Section 56.10 is not entitled to nominal damages.

Here, Plaintiff does not allege that she suffered any economic loss or personal injury as a result of SkinSpirit's alleged disclosure of her medical information. For this independent reason, her CMIA claim must be dismissed.

**B. Plaintiff has not alleged facts sufficient to sustain her ECPA claim.**

The ECPA, 18 U.S.C. § 2510 *et seq.*, prohibits the intentional and unauthorized interception of "any wire, oral, or electronic communication." *See* 18 U.S.C. § 2511(1). A "party" to a

[2] Although Plaintiff cites Section 56.101 in a footnote, *see* Compl. ¶ 17 n.3, she does not purport to bring a claim against SkinSpirit under that specific section, *see id.* at Count III, and she does not allege facts sufficient to support a claim for any negligent release of confidential information.

communication is exempt from liability under the ECPA unless that party intercepted the communication "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This carve-out is known as the "crime-tort exception."

Courts in the Ninth Circuit have held that, to assert a viable ECPA claim against a party to a communication based on the crime-tort exception, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024) (quoting *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064–65 (C.D. Cal. 2024) (internal quotations omitted)). "In other words, the bad acts must be 'secondary to the acquisition of the communication' and involve 'tortious or criminal use of the interception's fruits.'" *Okash v. Essentia Health*, No. 23-cv-482, 2024 WL 1285779, at *3–5 (D. Minn. Mar. 26, 2024) (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015)); *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining the crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) ("Section 2511(2)(d)'s legislative history and case law make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort.").

In this case, there is no dispute that SkinSpirit, as the owner of the Website, was a party to Plaintiff's communications. *See* Compl. ¶¶ 1, 7–8. Thus, Plaintiff's ECPA claim rises and falls on her ability to allege facts sufficient to invoke the crime-tort exception.

Plaintiff attempts to satisfy the crime-tort exception, here, by claiming that SkinSpirit violated Section 1320d-6(a)(3) of the Health Insurance Portability and Accountability Act (HIPAA). Compl. ¶ 84. Plaintiff's theory has numerous flaws, at least two of which are incurable: (1) Section 1320d-6(a)(3) only applies to information maintained by a HIPAA "covered entity," and Plaintiff has not (and cannot) allege that SkinSpirit is a covered entity under HIPAA; and (2) even if SkinSpirit were a HIPAA covered entity, the violation Plaintiff alleges is not independent of the

intentional act of recording or interception on which she bases her ECPA claim, and, thus, does not support application of the crime-tort exception here.

1. SkinSpirit could not have violated Section 1320d-6(a)(3) because it is not a "covered entity" under HIPAA.

As a matter of law, HIPAA does not regulate all companies that collect and process personal health information. Nor does Section 1320d-6(a)(3) impose a criminal penalty for knowingly disclosing individually identifiable health information (IIHI) in all contexts. Instead, Section 1320d-6(a)(3) provides, in pertinent part, that "a person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in violation of this part **if** the information is maintained by a covered entity (as defined in the HIPAA privacy regulation described in section 1320d–9(b)(3) of this title) . . . ." (Emphasis added). In this case, Plaintiff has failed to allege facts sufficient to establish that SkinSpirit is a covered entity.

Of the three types of "covered entities" that are subject to HIPAA, Plaintiff seems to assume (incorrectly[3]) that SkinSpirit is "[a] health care provider who transmits any health information in electronic form in connection with a [covered] transaction." 45 C.F.R. § 160.103 (defining "covered entity"). Although Plaintiff alleges that SkinSpirit provides health care, *see* Compl. ¶ 105, she does not allege that it electronically transmits protected health information (within the meaning of HIPAA) as part of a covered transaction, such as when engaging with a health plan through electronic media by sending an electronic bill for services to a health insurer. *See* 45 C.F.R. § 162.1101. Because Plaintiff does not allege—and cannot, in good faith, amend her Complaint to allege—that SkinSpirit bills or otherwise engages with health plans in a manner that would subject it to HIPAA's electronic transaction standards, SkinSpirit is not a "covered entity."

Because Plaintiff cannot allege that SkinSpirit is a covered entity, SkinSpirit could not have violated HIPAA, and Plaintiff cannot rely on SkinSpirit's purported violation of that statute as grounds to invoke the crime-tort exception. As that was the only pleaded basis for Plaintiff's ECPA claim, her claim must be dismissed as a matter of law.

---

[3] Plaintiff frames her legal conclusion as a factual allegation, but since she fails to support this conclusion with any specifically pleaded facts, the Court should not accept her conclusion as true. *Ott v. Home Savings & Loan Ass'n*, 265 F.2d 643, 648 n.8 (9th Cir. 1958).

2. Even if HIPAA applied, the specific conduct Plaintiff claims SkinSpirit engaged in does not support application of the crime-tort exception.

Even assuming, for purposes of this motion, that SkinSpirit is subject to and somehow violated HIPAA, numerous courts have held that substantially similar allegations were not sufficient to invoke the ECPA crime-tort exception. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *8–10 (N.D. Cal. Apr. 11, 2024) (rejecting application of ECPA's crime-tort exception based on alleged violation of HIPAA); *Okash*, 2024 WL 1285779, at *3–5 (same); *Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *3–4 (E.D. Pa. 2024) (same); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363–64 (E.D.N.C. July 24, 2024) (same). Like the plaintiffs in those cases, Plaintiff here asserts a HIPAA theory that arises from SkinSpirit's purported interception of Plaintiff's medical data—the same interception underlying Plaintiff's ECPA claim—and not any conduct independent therefrom. Accordingly, Plaintiff has not alleged facts sufficient to invoke the crime-tort exception, and her ECPA claim should be dismissed.

**C. Plaintiff's CIPA claim fails.**

Plaintiff asserts a claim against SkinSpirit under CIPA § 631(a), which prohibits (1) intentional wiretapping; (2) willfully reading the "contents or meaning" of a communication in transit over a wire without Plaintiff's consent; (3) attempting to use or communicate information obtained as a result of engaging in either of the previous two activities; or (4) aiding in one of those three actions. Cal. Penal Code § 631(a); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Plaintiff's CIPA claim fails for at least two reasons. First, she did not assert it within the applicable one-year statute of limitations and has not alleged facts sufficient to invoke tolling. Second, she has not alleged facts sufficient to establish that SkinSpirit, a party to the allegedly intercepted communication, aided, abetted, or conspired with a third party (specifically, LinkedIn) to violate the statute. For either of these reasons, Plaintiff's CIPA claim should be dismissed.

1. Plaintiff's CIPA claim was not timely asserted.

CIPA claims are subject to a one-year statute of limitations. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (citing Cal. Code Civ. Proc. § 340). A plaintiff who raises her claim outside of this limitations period bears the burden of pleading facts to establish tolling

under the delayed discovery doctrine. *Id.* To do so, a plaintiff must plead both "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (Cal. 2005). Even when applicable, the delayed discovery doctrine "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* at 668; *Javier*, 649 F. Supp. 3d at 901. A plaintiff has inquiry notice "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988).

There is no dispute, here, that Plaintiff failed to bring her CIPA claim before the applicable one-year statute of limitations expired. *See* Compl. ¶ 7 (alleging Plaintiff visited the Website in May 2023). Thus, for Plaintiff's CIPA claim to survive dismissal, she must allege facts sufficient to invoke the delayed discovery doctrine. She has not.

Plaintiff does not allege she was somehow precluded from discovering that the Website incorporated the LinkedIn Insight Tag. To the contrary, Plaintiff's own Complaint shows that the presence of LinkedIn's Insight Tag on the Website was, at all relevant times, ascertainable through publicly-available developer tools. *See* Compl. at pp. 12–14, Figures 1–5 (alleging, in screenshot descriptions, that existence of pixel overlay "confirmable with developer tools"). This, alone, precludes her from invoking the delayed discovery rule, regardless of whether she had the requisite technical knowledge to use those tools. *See J.C. v. Catholic Health Sys. Inc.*, No. 1:23-cv-00796, 2024 WL 5136236 (W.D.N.Y Aug. 29, 2024) (holding that lack of technical expertise will not toll the statute of limitations).

Plaintiff is also precluded from invoking the delayed discovery doctrine because her allegations establish that she had constructive knowledge that LinkedIn provided its Insight Tag to companies, like SkinSpirit, for the very purpose of collecting the information Plaintiff complains of here. Plaintiff alleges that, as a LinkedIn user, she "agree[d] to [LinkedIn's] User Agreement," available at https://www.linkedin.com/legal/user-agreement, *id.* ¶ 33 n.26. She also alleges that, "[b]y using or continuing to use LinkedIn's Services, [she] agree[d] to two additional agreements: the Privacy Policy and the Cookie Policy[,] *id.* ¶ 33, which are available at https://www.linkedin.com/legal/privacy-policy and https://www.linkedin.com/legal/cookie-policy,

respectively, *id.* ¶ 33 n. 27–28. Under those terms and policies, Plaintiff was put on notice of, and agreed to, LinkedIn's "use of cookies and similar technologies" and acknowledged that LinkedIn or "third parties may . . . place cookies in [her] browser when [she] visit[ed] non-LinkedIn sites that . . . host [LinkedIn's] plugins or tags," such as SkinSpirit's Website. Thus, at the time Plaintiff visited the Website, she had constructive notice of—and, indeed, had already consented to—the interception of her off-LinkedIn website activity by LinkedIn's Insight Tag.[4]

Because Plaintiff has failed to adequately allege facts sufficient to avail herself of the delayed discovery doctrine, her CIPA claim should be dismissed as time-barred.

2. <u>SkinSpirit did not knowingly or intentionally aid and abet a CIPA violation.</u>

Section 631(a) applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). To state a viable claim against a party to an allegedly intercepted communication, the plaintiff must allege facts sufficient to establish that the party—here, SkinSpirit—aided, abetted, or conspired a third party's violation of the statute. "[T]he weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) (emphasis in original); *see also Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, Doc. 55 (C.D. Cal. Mar. 13, 2025). "[A]ctual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995).

Applying the language of this criminal statute in the same civil context that Plaintiff is now

---

[4] The latest date on which Plaintiff could have plausibly had constructive notice of LinkedIn's interception of her data was the date on which she claims she first saw a SkinSpirit advertisement on LinkedIn. *See* Compl. ¶ 7. Because Plaintiff does not specify the date on which she first saw such ads, she has, at a minimum, failed to plead the time and place she first had information sufficient to discover the alleged violation, and thus she is precluded from invoking the delayed discovery doctrine. *See Javier*, 649 F. Supp. 3d at 901 (noting that "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (citing *Fox*, 110 P.3d at 914)).

attempting to use it, this Court has held that in order to survive a motion to dismiss, a plaintiff must allege, at a minimum, that the defendant was "acting with the third party **in order to** have the third party perform acts that violate the statute[,]" which requires the defendant to have "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. Yeti Coolers, LLC*, -- F. Supp. 3d --, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (emphasis in original).

California state courts have taken a similar approach in interpreting their own statute in this context. For example, in cases involving allegations that website cookies, pixels, or beacons violated Section 631(a), California courts have found that generalized allegations that such tracking tools are installed for advertising purposes does not, as a matter of law, satisfy a plaintiff's burden to establish the requisite knowledge. *See, e.g.*, *Licea v. Finish Line*, No. 23STCV22390 (Cal. Super. Ct. Jul. 10, 2024) (dismissing Section 631(a) claim because plaintiff failed to adequately allege retailer's knowledge and intent) (attached as Exhibit A).

Here, Plaintiff has offered only that "[t]he personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn Marketing Solutions[,]" Compl. ¶ 21. She has not, and cannot, allege SkinSpirit knew that using the LinkedIn Insight Tag on its Website could constitute a violation of any law, let alone that SkinSpirit acted with LinkedIn **in order to** have LinkedIn violate CIPA. *See Finish Line*, No. 23STCV22390, at 5–6 (finding that the defendant's use of third-party website chat software did not violate Section 631(a) because the plaintiff's allegations that the third party advertised its services to the public did not demonstrate how defendant "knew, let alone facilitated, the purported misconduct"). Plaintiff simply repeats conclusory allegations that SkinSpirit "aided, agreed with, and conspired with LinkedIn to track and intercept Plaintiff's and Class Members' internet communications while accessing the Website." Compl. ¶ 95. Such conclusory allegations fall short because they "do not contain sufficient facts for the Court to draw a plausible inference that [SkinSpirit] knowingly agreed with or employed [LinkedIn] to engage in conduct that violated the wiretapping statute[,]" *Yeti*, 2024 WL 4539578, at *5. Accordingly, Plaintiff's CIPA claim fails.

**D. Plaintiff cannot allege facts sufficient to sustain her claim for constitutional invasion of privacy.**

To allege a violation of privacy under California's constitution, a plaintiff must demonstrate, at a minimum, that (1) she has a reasonable expectation of privacy under the circumstances; and (2) the defendant's conduct was "highly offensive." *See Hammerling v. Google*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024) ("*Hammerling II*"); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). Plaintiff's allegations, here, fail on both counts.

1. <u>Plaintiff does not have a reasonable expectation of privacy in the allegedly collected information.</u>

The Ninth Circuit has held that a web user does not have a reasonable expectation of privacy when an applicable privacy policy expressly discloses that the data at issue is subject to collection. *Hammerling II* 2024 WL 937247, at *1. In *Hammerling II*, the Ninth Circuit upheld this Court's ruling that plaintiffs did not have a reasonable expectation of privacy in the information they voluntarily disclosed to third-party mobile applications on Google devices, despite their allegation that Google surreptitiously collected their personal information by tracking and using that data for purposes other than those contemplated by the privacy policy. The Ninth Circuit held that, because the privacy policy "unambiguously disclose[d] Google's collection of user activity data in third-party apps[,]" the plaintiffs did not have a reasonable expectation of privacy in that data. *Id.* at *3.

In this case, Plaintiff alleges that SkinSpirit used LinkedIn's Insight Tag to capture her interactions with the Website. *See* Compl. ¶¶ 78–79, 98. However, as noted above, Plaintiff also alleges she is a LinkedIn user, and that, when "first signing up" for a LinkedIn account, LinkedIn users "agree[] to the User Agreement," which specifically provides that "[b]y using or continuing to use LinkedIn's Services, users agree to two additional agreements: the Privacy Policy and the Cookie Policy[,]" *id.* ¶ 33 n.27–28. As pertinent here, those agreements—which Plaintiff admits are binding on LinkedIn users, including herself—require users to agree to LinkedIn's "use of cookies and similar technologies" and acknowledge that LinkedIn or "third parties may . . . place cookies in your browser when you visit non-LinkedIn sites that . . . host our plugins or tags." In other words, based on Plaintiff's own allegations, she specifically agreed that third parties, like SkinSpirit, may use the LinkedIn tag on their sites. Thus, as a matter of law, Plaintiff cannot establish that she had a

reasonable expectation of privacy in data collected by the LinkedIn Insight Tag. *See Hammerling II*, 2024 WL 937247 at *3 (finding no reasonable expectation of privacy in challenged data collection practices that are explicitly disclosed in the collecting party's privacy policy).

2. <u>SkinSpirit's use of the LinkedIn Tag was not "highly offensive."</u>

To state a constitutional invasion of privacy claim, a plaintiff must also plead facts sufficient to establish, at a minimum, that "the intrusion was highly offensive." *Id.*; *see also Hernandez v. Hillsides*, 47 Cal. 4th 272, 295 (2009) (internal citations and quotations omitted). "This District sets a high bar when assessing the 'highly offensive' requirement." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) ("*Hammerling I*") (citing *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014)).

Determining whether a defendant's actions were "highly offensive" requires "a holistic consideration of factors[,]" such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive[;]" the analysis "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Hammerling I*, 615 F. Supp. 3d at 1090 (internal quotations omitted). Courts undertaking this analysis have held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy"—especially in the context of ubiquitous cookie practices on commercial websites. *Id.*; *see, e.g., Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browser history to third parties was not highly offensive); *Google Priv. Pol'y*, 58 F. Supp. 3d at 988 (disclosure of users' browsing histories was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms); *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *6 (N.D. Cal. Aug. 18, 2023) (disclosure of "the date and time of plaintiff's visit to [defendant's] website, her keystrokes and clicks on the website, her name, her IP address, her geographic location, her address, and her phone number" were "minimal" such that their collection was not highly offensive). Even disclosure of sensitive personal information, including social security numbers, does not

automatically constitute an "'egregious breach of the social norms' to establish an invasion of privacy claim." *Low*, 900 F. Supp. 2d at 1025.

Plaintiff's allegations come nowhere near meeting the high bar courts in this District have set. Plaintiff does not allege that she communicated any highly sensitive information—her social security number, for example—while visiting the Website, or that she was deceived by any of SkinSpirit's statements about how it would use her data. At most, SkinSpirit intercepted "click events" about SkinSpirit services Plaintiff was interested in receiving and her desire to book an appointment at a SkinSpirit location for a consultation about such services. These actions only amount to the type of "routine commercial behavior" that numerous courts have held is not highly egregious under the law. *Yeti*, 2024 WL 4539578, at *7 (noting that "where the conduct [at issue] amounts to 'routine commercial behavior,'" a defendant's conduct cannot be so egregious as to constitute a serious invasion of privacy).

Moreover, as the *Yeti* court acknowledged, "whether Defendant's conduct was offensive turns on what specifically Plaintiff is alleging Defendant knew." *Id.* In that case, dismissal was appropriate because the plaintiff did not allege facts sufficient to allow a plausible inference that the third-party data collector was using the defendant's customer's personal information for additional purposes. *Id*. Here, too, Plaintiff has not shown that SkinSpirit knew, or could have known, that the LinkedIn Insight Tag, made by one of the most established and reputable social media platforms and offered for use on all websites, was engaging in any data collection that exceeded routine commercial behavior. Thus, Plaintiff's invasion of privacy claim should be dismissed.

## V. <u>CONCLUSION</u>

Because Plaintiff has failed to allege facts sufficient as a matter of law to support her claims against SkinSpirit, SkinSpirit respectfully requests that the Court dismiss all claims in the Complaint, with prejudice, and award it any costs and fees recoverable by law.

DATED: March 19, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ Scott S. Humphreys*
Scott S. Humphreys
Gregory P. Szewczyk
J. Matthew Thornton
Brianna R. Howard
Alexia C. Chapman

Attorneys for Defendant SkinSpirit Essential, LLC