Scott S. Humphreys (SBN 298021)
humphreyss@ballardspahr.com
Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

J. Matthew Thornton (*pro hac vice*)
thorntonj@ballardspahr.com
**BALLARD SPAHR LLP**
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.371.3211
Facsimile: 612.371.3207

Gregory P. Szewczyk (*pro hac vice*)
szewczykg@ballardspahr.com
Alexia C. Chapman (*pro hac vice*)
chapmana@ballardspahr.com
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.299.7354
Facsimile: 303.296.3956

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOURTNEY RUSOW and T.S. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKINSPIRIT ESSENTIAL LLC, SKINSPIRIT HOLDINGS LLC, and DEAN VISTNES M.D., INC.<br><br>Defendants. | Case No. 3:24-cv-09317-CRB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>*Declaration of Scott S. Humphreys in Support of Motion to Dismiss; Declaration of Lynn Heublein in Support of Motion to Dismiss; [Proposed] Order Filed Herewith*<br><br>**Hearing:**<br>Judge: Hon. Charles R. Breyer<br>Dept: Courtroom 6, 17th Floor<br>Date: July 18, 2025<br>Time: 10:00 a.m. |

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on July 18, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Charles R. Breyer in Courtroom 6 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants SkinSpirit Essential LLC, SkinSpirit Holdings LLC, and Dean Vistnes M.D., Inc. ("Defendants") will and hereby do move to dismiss with prejudice the entire First Amended Class Action Complaint ("FAC") filed by Kourtney Rusow and T.S. ("Plaintiffs") and each and every claim alleged therein.

This Motion is made pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. All claims asserted against Defendant SkinSpirit Holdings LLC should be dismissed because Plaintiffs have failed to allege facts sufficient to establish that SkinSpirit Holdings LLC is subject to personal jurisdiction in California. The FAC should further be dismissed, in its entirety, because Plaintiffs have failed to state any claim upon which relief can be granted.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and other matters on file in this action, and any further briefing, evidence presented or argument of counsel, and anything else the Court may properly consider.

**SUMMARY OF ARGUMENT**

The FAC should be dismissed as to SkinSpirit Holdings LLC ("SkinSpirit Holdings") pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs do not allege facts sufficient to establish that (1) SkinSpirit Holdings is "at home" in California or that it has case-related contacts with the State that would be sufficient under the Due Process Clause to hail it into a California court or (2) SkinSpirit Essential's contacts with California are attributable to SkinSpirit Holdings under the alter-ego doctrine. *See Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1058–60 (N.D. Cal. 2022); *Theodorakis v. DFINITY Stiftung*, No. 23-CV-02280-AMO, 2025 WL 822978, at *4 (N.D. Cal. Mar. 14, 2025); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015); *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 828 (N.D. Cal. 2023); *Corcoran v. CVS Health Corporation*, 169 F. Supp. 3d 970, 982-84 (N.D. Cal. 2016).

All of the claims Plaintiffs asserted against newly-added defendants SkinSpirit Holdings

and Dean Vistnes M.D., Inc. should independently be dismissed, because, aside from Plaintiffs' improper use of "group pleading," they have not alleged—and cannot allege—that either of those entities had any involvement with the operation or installation of the Website technologies at the center of Plaintiffs' claims. *See, e.g.*, *Dawson v. One Call Med., Inc.*, No. 3:20-CV-01188-LAB-KSC, 2021 WL 5513516, at *2 (S.D. Cal. Sept. 21, 2021); *Webb v. Rejoice Delivers LLC*, No. 22-CV-07221-BLF, 2025 WL 974996, at *3 (N.D. Cal. Apr. 1, 2025); *Desfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *5 (N.D. Cal. Apr. 11, 2024); *Lee v. Plex, Inc.*, No. 24-CV-02386-EKL, 2025 WL 948118, at *7 (N.D. Cal. Mar. 28, 2025).

Plaintiffs' claims against all Defendants should further be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

1. The Electronic Communications Protection Act (ECPA) exempts a party to a communication from liability unless that party intercepted the communication "for the purpose of committing any criminal or tortious act[,]" 18 U.S.C. § 2511(2)(d) (the "crime-tort exception"). Plaintiffs cannot invoke the crime-tort exception, here, because they have not pled facts sufficient to show that Defendants used LinkedIn's or Google's tools on its website "for the purpose of" committing any crime or tort, let alone a crime or tort that is independent from the alleged interception of Plaintiffs' communications. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064–65 (C.D. Cal. 2024); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025); *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Allen v. Quicken Loans*, No. 17-cv-12352 (ES) (MAH), 2018 WL 5874088, at *7 (D.N.J. Nov. 9, 2018); *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024); *Okash v. Essentia Health*, No. 23-cv-482, 2024 WL 1285779, at *3–5 (D. Minn. Mar. 26, 2024); *Cohen v. Casper Sleep Inc.*, 17-cv-9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018); *Kaiser Found. Health Plan*, 2024 WL 1589982, at *8–10; *Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *3–4 (E.D. Pa. 2024); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363–64 (E.D.N.C. July 24, 2024).

2. California Plaintiff Rusow's claim under the California Confidentiality of Medical Information Act (CMIA) fails because Rusow has not pled facts sufficient to establish that Defendants disclosed to third parties (here, LinkedIn and Google) any of her "medical information," as those terms are defined under the statute. Cal. Civ. Code §§ 56.05, 56.10; *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4–5 (S.D. Cal. Oct. 18, 2021); *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017); *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014); *Gibson v. Planned Parenthood Fed'n of Am., Inc.*, No. 3:23-cv-04529-JD, 2024 WL 4251892, at *1 (N.D. Cal. July 2, 2024); *Tamraz v. Bakotic Pathology Assocs.*, No. 22-cv-0725-BAS-WVG, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022). Further, the section of CMIA under which Rusow brings her claim requires actual damages—it does not provide for recovery of statutory or nominal damages—and Rusow has not alleged that she suffered any economic loss or personal injury as a result of the alleged disclosure. Cal. Civ. Code §§ 56.10, 56.35.

3. Rusow's California Invasion of Privacy Act (CIPA) claim fails because it was not timely asserted, and, in any event, Rusow has not alleged facts sufficient to establish that Defendants had the requisite knowledge of, or intent to aid in, LinkedIn's or Google's criminal or tortious purpose (if any) of collecting data about her website interactions. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023); *Smith v. YETI Coolers, LLC,* 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025); *Cody v. Boscov's LLC*, No. 8:22-cv-01434, 2024 WL 2228973, at *2 (C.D. Cal. May 6, 2024); *Licea v. Finish Line*, No. 23STCV22390 (Cal. Super. Jul. 10, 2024); *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995).

4. Rusow's constitutional invasion of privacy claim fails because she cannot demonstrate either that she has a reasonable expectation of privacy under the circumstances alleged or that Defendants' conduct was "highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) ("*Hammerling I*"); *Hammerling v. Google LLC*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024) ("*Hammerling II*"); *Yoon v. Lululemon USA, Inc.*, 549 F.

Supp. 3d 1073, 1086 (C.D. Cal. 2021); *Hernandez v. Hillsides*, 47 Cal. 4th 272, 295 (2009); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *6 (N.D. Cal. Aug. 18, 2023).

5. Washington Plaintiff T.S.'s claim under Washington's newly enacted My Health My Data Act fails because T.S. does not allege that she suffered any injury to her "business or property" as a result of Defendants' alleged actions. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *15 (W.D. Wash. Mar. 4, 2025). Further, even if T.S. had alleged a cognizable injury, her claim would still fail because she did not allege that Defendants' conduct caused her injury. *Scott v. Amazon.com, Inc.*, 559 P.3d 528, 544–45 (Wash. App. 2024).

For these reasons, the Court should dismiss all of Plaintiffs' claims, with prejudice.

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Civil Local Rule 7-4(a)(3), Defendants set forth the following statement of issues to be decided:

1. Whether the Court should dismiss all of Plaintiffs' claims against SkinSpirit Holdings for lack of personal jurisdiction.

2. Whether the Court should dismiss all of Plaintiffs' claims against SkinSpirit Holdings and Dean Vistnes M.D., Inc., based on Plaintiffs' improper use of "group pleading" and failure to state any claim upon which relief can be granted.

3. Whether the Court should dismiss Rusow's CMIA claim because she has not sufficiently alleged (a) disclosure of her medical history, mental or physical condition, or treatment; (b) disclosure of information which included or contained personally identifying information; or (c) economic or personal injury.

4. Whether the Court should dismiss Rusow's CIPA claim because (a) it is untimely, or (b) she has failed to allege facts sufficient to establish that Defendants had the requisite knowledge and intent to qualify as an aider and abettor under Cal. Pen. Code § 631(a).

5. Whether the Court should dismiss Rusow's constitutional invasion of privacy claim because she has not sufficiently alleged that she has a reasonable expectation of privacy in the data allegedly collected, or that the alleged invasion was "highly offensive" under the law.

6. Whether the Court should dismiss T.S.'s My Health My Data Act claim because she cannot sufficiently allege injury or causation.

7. Whether the Court should dismiss Plaintiffs' ECPA claim because Plaintiffs have failed to sufficiently allege that Defendants, as a party to the communication at issue, intercepted the communication for the purpose of committing an independent criminal or tortious act.

DATED: June 3, 2025

BALLARD SPAHR LLP

BY: */s/ Scott S. Humphreys*
Scott S. Humphreys
Gregory P. Szewczyk
J. Matthew Thornton
Brianna R. Howard
Alexia C. Chapman

*Attorneys for Defendants*

## Table of Contents


PRELIMINARY STATEMENT .......... 1

FACT STATEMENT .......... 2

ARGUMENT .......... 4

I. Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim Against Either SkinSpirit Holdings or the Vistnes Entity. .......... 4

II. All Claims Against SkinSpirit Holdings Should Be Dismissed for Lack of Personal Jurisdiction. .......... 6

A. SkinSpirit Holdings Is Not Subject to the Court's General Jurisdiction. .......... 7

B. Plaintiffs Do Not Satisfy the High Bar of the Alter Ego Test for Specific Jurisdiction. .......... 8

III. Plaintiff Rusow Has Not Stated a Viable CMIA Claim Against SkinSpirit. .......... 10

A. Rusow Fails to Allege Disclosure of Her Medical History, Mental or Physical Condition, or Treatment. .......... 11

B. Rusow Fails to Allege That The Intercepted Booking Information "Included or Contained" Personally Identifying Information. .......... 12

C. Rusow Fails to Allege Economic or Personal Injury. .......... 13

IV. Plaintiff Rusow Has Not Stated a Viable CIPA Claim. .......... 13

A. Rusow's CIPA Claim Is Time Barred. .......... 13

B. Rusow Fails to Allege That SkinSpirit Knowingly Aided and Abetted a CIPA Violation. .......... 15

V. Rusow Fails to Allege a Viable Claim for Invasion of Privacy. .......... 18

A. Rusow Does Not Have a Reasonable Expectation of Privacy in the Allegedly Collected Information. .......... 18

B. Rusow Fails to Allege Facts That Satisfy the "Highly Offensive" Standard. .......... 19

VI. The MHMDA Claim Fails Because T.S. Fails to Allege Injury or Causation. .......... 21

VII. Plaintiffs Fail to Allege Facts Sufficient to Sustain Their ECPA Claim. .......... 21

A. Plaintiffs Fail to Plead That SkinSpirit Committed a Crime or Tort. .......... 22

B. Plaintiffs Fail to Allege That SkinSpirit Acted "for the Purpose" of Committing a Tortious or Criminal Act. .......... 23

C. None of the Crimes or Torts Plaintiffs Claim SkinSpirit Committed Are Independent From the Interception on Which They Base Their ECPA Claim. .......... 25

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Quicken Loans*,
No. 17-cv-12352 (ES) (MAH), 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ........................... 24

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024)........................................................................... 23

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996)............................................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 4

*Ass'n of Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ........................................................................................................ 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 4

*Beluca Ventures v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022) ............................................................................. 6

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)........................................................................... 22

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) ........................................................................................................ 7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................................... 24

*Cody v. Boscov's LLC*,
No. 8:22-cv-01434, 2024 WL 2228973 (C.D. Cal. May 6, 2024) ......................................... 16

*Cody v. Lacoste USA, Inc.*,
No. 8:23-cv-00235, 2024 WL 3761288 (C.D. Cal. July 30, 2024)........................................ 16

*Cohen v. Casper Sleep Inc.*,
No. 17-cv-9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) ............................................ 25

*Corcoran v. CVS Health Corporation*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ............................................................................. 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................................................................ 7

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977)........................................................................................ 6, 7

*Dawson v. One Call Med., Inc.*,
No. 3:20-CV-01188-LAB-KSC, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021)...................... 5

*Desfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011)............................................................................................ 5

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......................... 5, 25

*Dutrisac v. STMicroelectronics, Inc.*,
No. 23-CV-06639-BLF, 2024 WL 3646949 (N.D. Cal. Aug. 2, 2024) .................................. 9

*Eisenhower Med. Ctr. v. Super. Ct.*,
226 Cal. App. 4th 430 (2014)...................................................................................... 10, 11

*Erhart v. BofI Holding, Inc.*,
269 F. Supp. 3d 1059 (S.D. Cal. 2017) ............................................................................ 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (Cal. 2005) ........................................................................................... 14, 15

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 1083214 (N.D. Cal. Apr. 10, 2025) ................................ 6

*GeoSolutions B.V. v. Sina.com Online*,
700 F. Supp. 3d 821 (N.D. Cal. 2023) ................................................................................ 9

*Gibson v. Planned Parenthood Fed'n of Am., Inc.*,
No. 3:23-cv-04529-JD, 2024 WL 4251892 (N.D. Cal. July 2, 2024)............................. 11, 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................... 13, 15, 16

*Hammerling v. Google*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024)................................................ 18, 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................................................................... 19, 20

*Hernandez v. Hillsides*,
47 Cal. 4th 272 (2009)........................................................................................................ 19

*Hernandez v. Mimi's Rock Corp.*,
632 F. Supp. 3d 1052 (N.D. Cal. 2022) ................................................................................ 9

*Hukui Tech, Inc. v. Intelligent Sols., LLC*,
No. 5:23-CV-00991-PCP, 2024 WL 4876951 (N.D. Cal. Nov. 22, 2024) .......................... 6, 7

*Ingram v. Money Map Press, LLC*,
No. 23-CV-05802-CRB, 2024 WL 3540993 (N.D. Cal. July 24, 2024).................................. 7

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 19-cv-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ................................................ 12

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 24

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 25

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 20

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 13, 14, 15

*Jolly v. Eli Lilly & Co.*,
751 P.2d 923 (Cal. 1988) ........ 14

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ........ 8

*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571 (1995) ........ 18

*Lee v. Plex, Inc.*,
No. 24-CV-02386-EKL, 2025 WL 948118 (N.D. Cal. Mar. 28, 2025) ........ 5, 6

*Licea v. Finish Line*,
No. 23STCV22390 (Cal. Super. Jul. 10, 2024) ........ 17, 18

*Lloyd v. Facebook, Inc.*,
No. 21-cv-10075-EMC, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ........ 16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 20

*Mason v. Mortg. Am., Inc.*,
114 Wash.2d 842 (1990) ........ 21

*McKinney v. Misico Invs., LLC*,
No. 11-10467, 2011 WL 5244956 (E.D. Mich. Nov. 3, 2011) ........ 23

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ........ 21, 22

*Okash v. Essentia Health*,
No. 23-cv-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ........ 25

*Ott v. Home Savings & Loan Ass'n*,
265 F.2d 643 (9th Cir. 1958) ........ 23

*Payne v. Norwest Corp.*,
911 F. Supp. 1299 (D.Mont. 1995) ........ 24

*People v. Beeman*,
35 Cal. 3d 547 (1984) ..... 16

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ..... 8, 9

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. July 24, 2024) ..... 25

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ..... 24

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..... 6, 8

*Scott v. Amazon.com, Inc.*,
559 P.3d 528 (Wash. App. 2024) ..... 21

*Smart v. Main Line Health*,
No. 22-cv-5239, 2024 WL 2943760 (E.D. Pa. 2024) ..... 25

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..... 15, 16, 17, 18, 20, 21

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ..... 9

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ..... 24

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..... 7

*Tamraz v. Bakotic Pathology Assocs.*,
No. 22-cv-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ..... 12

*Theodorakis v. DFINITY Stiftung*,
No. 23-CV-02280-AMO, 2025 WL 822978 (N.D. Cal. Mar. 14, 2025) ..... 9

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) ..... 24

*Valenzuela v. Kroger Co.*,
No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025) ..... 16

*Victoria v. City of San Diego*,
326 F. Supp. 3d 1003 (S.D. Cal. 2018) ..... 5

*Walden v. Fiore*,
571 U.S. 277 (2014) ..... 8

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ..... 15

*Webb v. Rejoice Delivers LLC*,
No. 22-CV-07221-BLF, 2025 WL 974996 (N.D. Cal. Apr. 1, 2025) ........ 5

*Williams v. DDR Media, LLC*,
No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ........ 20

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ........ 24

*Wilson v. Rater8, LLC*,
No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........ 10, 12

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
724 F. Supp. 3d 921 (N.D. Cal. 2024) ........ 6, 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 18

*Zeichner v. Nord Sec. Inc.*,
No. 24-CV-02462-JSC, 2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ........ 6, 9

**Statutes, Rules, and Regulations**

18 U.S.C. § 2511(1) ........ 21

18 U.S.C. § 2511(2)(d) ........ 21, 22

42 U.S.C. § 1320 ........ 22

Fed. R. Civ. P. 4(k)(1)(A) ........ 6

Cal. Civ. Code § 56.05(i) ........ 10, 12

Cal. Civ. Code § 56.05(j) ........ 12

Cal. Civ. Code § 56.10(a) ........ 10

Cal. Civ. Code § 56.35 ........ 13

Cal. Civ. Proc. Code § 340 ........ 14

Cal. Penal Code § 631(a) ........ 13, 15

Wash. Rev. Code ch. 19.86 § 20 ........ 21

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

This lawsuit arises from Defendant SkinSpirit Essential LLC's ("SkinSpirit Essential") alleged integration on www.skinspirit.com (the "Website") of widely used analytical and advertising tools that LinkedIn and Google provide to businesses. According to Plaintiffs, by using these tools on its Website, SkinSpirit Essential enabled LinkedIn and Google to collect "click event" data related to Plaintiffs' online booking of consultations for one or more of the pre-defined cosmetic procedures SkinSpirit Essential features on its Website. Plaintiffs do not allege that LinkedIn and Google intercepted any further data reflecting whether Plaintiffs actually went to their appointments, what cosmetic consultations or treatments they may have received, if any, or the treatment notes, provider communications, or any other information personal to Plaintiffs.

Plaintiff Rusow initially sued only SkinSpirit Essential—the sole owner and operator of the Website—asserting violations of the Electronic Communications Privacy Act ("ECPA"), the California Confidentiality of Medical Information Act ("CMIA"), the California Invasion of Privacy Act ("CIPA"), and the California Constitution. However, shortly after SkinSpirit Essential moved for dismissal, Rusow filed an amended complaint (the "FAC") adding a new plaintiff, T.S.,[1] a new claim under My Health My Data Act ("MHMDA"), and two new defendants, SkinSpirit Holdings LLC ("SkinSpirit Holdings") and Dean Vistnes M.D., Inc. (the "Vistnes Entity").

Despite asserting claims against SkinSpirit Holdings and the Vistnes Entity, Plaintiffs failed to make even a single factual allegation connecting them to the Website. Plaintiff does not allege that either entity owns or operates the Website, was involved in some manner with the installation of LinkedIn's or Google's tools on the Website, or otherwise had any influence on SkinSpirit Essential's operation of the Website. Instead, Plaintiffs attempt to attribute all of SkinSpirit Essential's alleged actions related to the Website to the two new defendants based solely on conclusory allegations that (1) SkinSpirit Holdings, as SkinSpirit Essential's parent company, necessarily exerted control over the Website, and (2) SkinSpirit Essential is a business associate of

[1] To date, T.S. has not sought the Court's approval to proceed under pseudonym.

the Vistnes Entity. Under black letter law, this amounts to impermissible group pleading and requires dismissal of Plaintiffs' claims against the newly added defendants.

Plaintiffs' claims against SkinSpirit Holdings must be independently dismissed for lack of personal jurisdiction under Rule 12(b)(2). SkinSpirit Holdings is neither "at home" in California, nor has it had any case-related contacts with the State that would be sufficient under the Due Process Clause to hail it into a California court.

Even assuming Plaintiffs properly added SkinSpirit Holdings and the Vistnes Entity as defendants, their claims are still subject to dismissal because the FAC fails to cure the substantive deficiencies SkinSpirit Essential raised in its earlier motion to dismiss. Rusow's CMIA claim still fails because she has not, and cannot, sufficiently allege that the information intercepted meets the statutory definition of "medical information" or that she suffered cognizable damages as a result. Rusow's CIPA claim still fails because: (1) it is time barred; and (2) her allegations do not establish that Defendants had the requisite knowledge or intent to aid and abet a wiretapping violation. Rusow's invasion of privacy claim still fails because she does not have a reasonable expectation of privacy in the alleged data collection and, even if she did, SkinSpirit's use of ubiquitous tracking tools was not "highly offensive." And finally, her ECPA claim still fails because SkinSpirit was a party to the alleged "communications" at issue, and Plaintiffs cannot state facts necessary to invoke the ECPA's narrowly construed crime-tort exception.

T.S.'s new MHMDA claim does not fare any better; she has not alleged facts sufficient to establish the necessary elements of injury or causation. Thus, all claims in the FAC should be dismissed.

## FACT STATEMENT[2]

### A. The Defendants

SkinSpirit Essential is a Washington limited liability company that maintains its principal place of business in California. *See* FAC ¶ 11. It is a wholly-owned subsidiary of SkinSpirit Holdings, a Delaware limited liability company that maintains its principal executive office in

[2] For purposes of this motion, Defendants accept as true all non-conclusory factual allegations in the FAC.

Washington. Heublein Decl. ¶¶ 4, 6; *see also* FAC ¶ 12.

SkinSpirit Holdings does not have any meaningful connection to California. *See* Heublein Decl. ¶¶ 6–11. It is not registered to do business in this State, it does not maintain offices, real estate, or bank accounts in the State, and it does not have any employees here. *Id.*

The Vistnes Entity is a California corporation headquartered in Washington. FAC ¶ 13.

**B. LinkedIn, Google, and Plaintiffs**

Google and LinkedIn are both leading players in the advertising and marketing industry. *See* FAC ¶¶ 23, 29, 49, 55. They both publically offer a "simple" piece of code that businesses can add to their websites to get access to certain widely adopted business tools, like Google Analytics and the LinkedIn Insight Tag, which are capable of, among other things, analyzing a website's traffic, uncovering insights, and optimizing performance. *See id.* ¶¶ 23, 29–31, 54–57, 61.

Google and LinkedIn also provide products and services directly to consumers. *See id.* ¶¶ 6, 9, 38. Plaintiffs Rusow and T.S. have, at all relevant times, been Google and LinkedIn accountholders. *Id.* ¶¶ 6, 9. They created their accounts subject to Google's and LinkedIn's user agreements, privacy policies, and cookie policies. *See id.* ¶¶ 38–40. In the process of creating their accounts, Plaintiffs provided Google and LinkedIn information about themselves, including their full legal names, dates of birth, and genders. *Id.* ¶¶ 6, 9. Additionally, each time Plaintiffs accessed their Google accounts, Google collected information related to their devices' IP addresses and other electronic device information and stored it in "a profile maintained by Google for targeted advertising purposes." *Id.* LinkedIn captured similar device information by placing a cookie on Plaintiffs' web browsers when they logged into their LinkedIn accounts. *Id.* ¶¶ 32–35.

**C. SkinSpirit Essential's Use of Google and LinkedIn Tools on Its Website**

SkinSpirit Essential owns, controls, and operates the Website. FAC ¶ 11. The Website offers visitors the option of clicking and choosing from a series of predefined options to "schedule both virtual and in-person consultations" for "cosmetic" services, including "injectables, laser treatments, body contouring, and laser hair removal procedures." *Id.* ¶¶ 1–3, 11, 76. Plaintiffs Rusow and T.S. visited the Website on May 12, 2023, and December 6, 2024, respectively, to book consultations for the cosmetic services SkinSpirit Essential provides. *Id.* ¶¶ 6–7, 9–10, 38.

As Plaintiffs were able to ascertain using publicly-available developer tools, *see id.* ¶¶ 78–83, Figs. 2–6, SkinSpirit Essential used Google Analytics and the LinkedIn Insight Tag on its Website at the time Plaintiffs booked consultations. *See id.* ¶¶ 7, 10. Plaintiffs allege that, as a result of SkinSpirit Essential using these tools, Google and LinkedIn were able to collect information about their interactions with the Website for advertising purposes. *See id.* ¶¶ 36, 56, 63.

Specifically, Plaintiffs allege that LinkedIn and Google collected the following "click events": (1) the state in which a user would like to receive services; (2) the type of procedure in which the user would be interested; (3) the specific procedure the user would want to have completed; (4) the provider the user would wish to see; and (5) the user's desired date and time for an appointment (collectively, "Booking Data"). *See id.* ¶¶ 7, 81, 83, 87.

Plaintiffs do ***not*** allege that SkinSpirit Essential's use of Google Analytics or LinkedIn's Insight Tag enabled either of those companies to intercept their names, ages, addresses, telephone numbers, social security numbers, insurance details, or any other information from the Website that might itself be used to correlate the Booking Data with each Plaintiff. Rather, Plaintiffs allege that Google and LinkedIn were able to use information they independently collected about Plaintiffs to "make a probabilistic match" of their identity using browser-fingerprints. *See id.* ¶¶ 34–35, 64–73, 84, 166.

## ARGUMENT

To survive a motion to dismiss, a plaintiff must plead facts from which a court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678; *see also Ass'n of Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (holding it is improper to assume plaintiff "can prove facts that it has not alleged" or that laws were violated in ways not alleged).

### I. Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim Against Either SkinSpirit Holdings or the Vistnes Entity.

All of Plaintiffs' claims arise from the Website's alleged use of Google's and LinkedIn's

tracking technologies. *See* FAC at pp. 33–44. Logically, Plaintiff Rusow initially brought those claims solely against SkinSpirit Essential, the owner and operator of the Website. *See* Dkt. 1 (Compl.) ¶ 8; FAC ¶ 11. Later, in response to SkinSpirit Essential's motion to dismiss, Plaintiffs amended the Complaint to assert those same claims against not just SkinSpirit Essential, but also SkinSpirit Holdings and the Vistnes Entity.

Despite joining these two new defendants, Plaintiffs do not allege that either of them engaged in any conduct even tangentially relates to the Website. Plaintiffs do not allege, for example, that SkinSpirit Holdings or the Vistnes Entity have a direct ownership interest in or role operating the Website. Nor do Plaintiffs allege that those entities were involved with or influenced SkinSpirit Essential's alleged installation of LinkedIn's or Google's tools on the Website. Instead, Plaintiffs attempt to attribute all of SkinSpirit Essential's alleged actions related to the Website to SkinSpirit Holdings based solely on its parent-subsidiary relationship with SkinSpirit Essential, and to the Vistnes Entity based on Plaintiffs' conclusory allegation that SkinSpirit Essential is one of the Vistnes Entity's "business associates." FAC ¶¶ 12–13. Lumping Defendants together in this manner, *see id.* at p. 1, amounts to impermissible group pleading.

Under black letter law, courts do not permit plaintiffs "to proceed on a complaint that groups defendants together, attributing acts performed by one to all defendants without some explanation as to why those acts are so attributable." *Dawson v. One Call Med., Inc.*, No. 3:20-CV-01188-LAB-KSC, 2021 WL 5513516, at *2 (S.D. Cal. Sept. 21, 2021); *see also Webb v. Rejoice Delivers LLC*, No. 22-CV-07221-BLF, 2025 WL 974996, at *3 (N.D. Cal. Apr. 1, 2025) ("[G]roup pleading does not provide Defendants fair notice of the claims against them." (quoting *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1019 (S.D. Cal. 2018))); *Desfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) (upholding dismissal where plaintiff made "'everyone did everything' allegations"). Indeed, just last year, a court in this District dismissed a similar set of claims for improper group pleading when the plaintiffs asserted against two entities that, aside from being affiliated with the website's owner and operator, had no other discernible connection to the website. *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *5 (N.D. Cal. Apr. 11, 2024); *see also Lee v. Plex, Inc.*, No. 24-CV-02386-EKL,

2025 WL 948118, at *7 (N.D. Cal. Mar. 28, 2025) ("[C]omplaint cannot 'engage[ ] in undifferentiated pleading that fails to make clear what allegations are being made against' each defendant." (quoting *Beluca Ventures v. Aktiebolag*, 622 F. Supp. 3d 806, 816 (N.D. Cal. 2022))).

Because Plaintiffs have engaged in improper group pleading, here, the Court should dismiss all of their claims against SkinSpirit Holdings and the Vistnes Entity as neither of those entities engaged in any of the Website-related conduct on which Plaintiffs base their claims.

**II. All Claims Against SkinSpirit Holdings Should Be Dismissed for Lack of Personal Jurisdiction.**

In assessing personal jurisdiction, a district court must consider the "'the law of the state in which the district court sits'" and the federal Constitution's Due Process requirements. *Hukui Tech, Inc. v. Intelligent Sols., LLC*, No. 5:23-CV-00991-PCP, 2024 WL 4876951, at *2 (N.D. Cal. Nov. 22, 2024) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)); Fed. R. Civ. P. 4(k)(1)(A). Because California's statute is coextensive with the federal Due Process limitations on personal jurisdiction, the court's jurisdictional analysis merges into one: Whether, consistent with due process, a non-consenting, out-of-state defendant has "minimum contacts" with the forum "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Zeichner v. Nord Sec. Inc.*, No. 24-CV-02462-JSC, 2024 WL 4951261, at *1 (N.D. Cal. Dec. 2, 2024) (quoting *Schwarzenegger*, 374 F.3d at 801(cleaned up)).

When jurisdiction is challenged under Rule 12(b)(2), "'the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.'" *See Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 1083214, at *1 (N.D. Cal. Apr. 10, 2025) (quoting *Schwarzenegger*, 374 F.3d at 800). "[B]are bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 933 (N.D. Cal. 2024) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)). In determining whether a plaintiff has satisfied this burden, the court "may consider evidence presented in affidavits or order discovery on jurisdictional issues." *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280,

1285 (9th Cir. 1977)). Although uncontroverted allegations are taken as true, a court may not "assume the truth of allegations in a pleading which are contradicted by affidavit." *Id.*

There are two types of jurisdiction: general and specific. *See, e.g.*, *Ingram v. Money Map Press, LLC*, No. 23-CV-05802-CRB, 2024 WL 3540993, at *2 (N.D. Cal. July 24, 2024). Here, Plaintiffs' FAC fails to allege facts sufficient to make a prima facie case of either general or specific jurisdiction over SkinSpirit Holdings, and therefore all of Plaintiffs' claims against SkinSpirit Holdings should be dismissed under Rule 12(b)(2).

*A. SkinSpirit Holdings Is Not Subject to the Court's General Jurisdiction.*

A defendant is subject to general jurisdiction only in states where it is essentially "at home." *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *X Corp.*, 724 F. Supp. 3d at 934. "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business." *BNSF*, 137 S. Ct. at 1558 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014)). Over the past decade, courts have been hesitant to expand general jurisdiction beyond the "paradigm" articulated by the Supreme Court. *See, e.g.*, *Hukui Tech*, 2024 WL 4876951 at *3.

Here, Plaintiffs allege that the Court has personal jurisdiction "because the parties reside in California" and "Defendants have, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and intentionally availed themselves of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its services to residents within this District and throughout California[.]" FAC ¶ 15. These conclusory allegations are not enough to meet the high bar of establishing general jurisdiction over SkinSpirit Holdings.

To start, Plaintiffs do not allege facts sufficient to support their contention that SkinSpirit Holdings resides in California. To the contrary, Plaintiffs plead only that SkinSpirit Holdings's place of incorporation is Delaware—while omitting any allegation concerning that entity's principal place of business. *See id.* ¶¶ 12, 16. Indeed, elsewhere in the FAC, where Plaintiffs specifically allege that SkinSpirit Essential and the Vistnes Entity maintain their principal places of business in California, they do not allege the same for SkinSpirit Holdings. *See id.* ¶¶ 12, 16.

And for good reason: SkinSpirit Holdings maintains its principal place of business in ***Washington***, not California. Heublein Decl. ¶ 6. Because SkinSpirit Holdings does not reside in California, Plaintiffs' allegations fall short of establishing general jurisdiction.

Plaintiffs' allegation that the "Defendants" have "systematically and continually conducted business in California," *see* FAC ¶ 15, such that SkinSpirit Holdings should be deemed at home there, does not alter the outcome. The FAC identifies only one connection between SkinSpirit Holdings and California: its ownership interest in SkinSpirit Essential, which happens to maintain its principal offices in this State. *See id.* ¶ 12. Ninth Circuit precedent is clear that the parent-subsidiary relationship between two defendant entities, alone, is not enough "to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015); *see also infra* pp. 8–10. Accordingly, SkinSpirit Holdings is not subject to general jurisdiction in California.

### *B. Plaintiffs Do Not Satisfy the High Bar of the Alter Ego Test for Specific Jurisdiction.*

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). In determining whether specific jurisdiction exists, courts in the Ninth Circuit consider whether (1) the "non-resident defendant purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the asserted claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice, i.e., [is] reasonable." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

In this case, Plaintiffs attempt to establish that the Court has personal jurisdiction over SkinSpirit Holdings based on its ownership of SkinSpirit Essential and their unfounded assumption that, "[a]s the parent company, Defendant SkinSpirit Holdings LLC exerts control over the operating decisions of its subsidiary, including over the operation of the Website." *See* FAC ¶ 12. However, as noted above, personal jurisdiction over a company cannot be based on a

parent-subsidiary relationship alone. *See, e.g.*, *Ranza*, 793 F.3d at 1070. Rather, for purposes of establishing contacts sufficient to support jurisdiction, a plaintiff must satisfy the Ninth Circuit's "alter ego" test by demonstrating that the parent and subsidiary are "not really separate entities." *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1058–60 (N.D. Cal. 2022). To satisfy this test, "the plaintiff must make out 'a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Id.* (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). The bar for satisfying this test is high because attributing a subsidiary's contacts to a parent for purposes of establishing jurisdiction "is an extreme remedy, sparingly used." *Theodorakis v. DFINITY Stiftung*, No. 23-CV-02280-AMO, 2025 WL 822978, at *4 (N.D. Cal. Mar. 14, 2025) (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000)); *Dutrisac v. STMicroelectronics, Inc.*, No. 23-CV-06639-BLF, 2024 WL 3646949, at *5–7 (N.D. Cal. Aug. 2, 2024) (noting that "courts will only pierce the corporate veil in 'exceptional circumstances'").

Plaintiffs have failed to allege facts sufficient to meet either element of the alter-ego test. Aside from their generalization about the level of control parent entities have over their subsidiaries, Plaintiffs have not alleged any specific facts that would be sufficient to establish that SkinSpirit Holdings actually exercises the kind of "pervasive control" over SkinSpirit Essential that other courts have required to find a unity of interest. *See, e.g.*, *Mimi's Rock*, 632 F. Supp. 3d at 1058–60; *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 828 (N.D. Cal. 2023) (rejecting alter-ego theory based on alleged operation of a shared website); *Corcoran v. CVS Health Corporation*, 169 F. Supp. 3d 970, 982–84 (N.D. Cal. 2016). Nor have Plaintiffs alleged that SkinSpirit Holdings exerts any meaningful control over the Website. *Contra* Heublein Decl. ¶¶ 14–16. Moreover, the FAC does not even attempt to provide factual support for the fraud-or-injustice prong of the alter-ego test, which is alone grounds for rejecting its application. *Mimi's Rock*, 632 F. Supp. 3d at 1058–60; *Zeichner*, 2024 WL 4951261, at *1–4.

Because Plaintiffs have failed to allege facts sufficient to satisfy the alter-ego test, they cannot attribute SkinSpirit Essential's connections to this State or the lawsuit to SkinSpirit

Holdings for purposes of satisfying their burden of establishing purposeful direction or availment or a nexus between Plaintiffs' claims and SkinSpirit Holdings's forum-related activities. Accordingly, Plaintiffs' claims against SkinSpirit Holdings should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

### III. Plaintiff Rusow Has Not Stated a Viable CMIA Claim Against SkinSpirit.[3]

Rusow claims SkinSpirit violated Section 56.10 of CMIA. *See* FAC, Count III. Section 56.10 provides, in pertinent part, that "[a] provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining" proper authorization. CAL. CIV. CODE § 56.10(a). "Medical information" is defined as "any individually identifiable information . . . regarding a patient's medical history, . . . physical condition, or treatment." CAL. CIV. CODE § 56.05(i); *see also Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4–5 (S.D. Cal. Oct. 18, 2021) ("It is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include 'a patient's medical history, mental or physical condition, or treatment.'" (quoting *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014))).

Here, Rusow alleges that she "navigated to Defendants' Website to book a medical consultation for Botox and laser treatment" at one of SkinSpirit's locations and, "[d]uring the booking process," clicked certain pre-defined options to indicate "the state she wished to book the appointment in, the type of procedure she was interested in, the specific procedure she wanted to have completed, the reason for the procedure, the provider she wished to see, the day, and time for her appointment." FAC ¶ 7; *see also id.* ¶ 81, Fig. 4. Rusow's formulaic recitation of the CMIA elements aside, she does not allege facts sufficient to establish that any of the information either LinkedIn or Google intercepted qualifies as "medical information" under CMIA.

[3] As set forth above, Plaintiffs' claims against SkinSpirit Holdings and the Vistnes Entity fail for lack of jurisdiction or improper group pleading. Accordingly, the remainder of this motion uses the term "SkinSpirit" to refer to the only properly named defendant, SkinSpirit Essential. If the Court does not dismiss Plaintiffs' claims against SkinSpirit Holdings and the Vistnes Entity, those entities hereby adopt and join all of SkinSpirit's arguments for dismissal, which apply equally to them given the manner in which Plaintiffs chose to plead their claims.

A. *Rusow Fails to Allege Disclosure of Her Medical History, Mental or Physical Condition, or Treatment.*

Rusow alleges that she used the Website to book appointments by clicking on categories of procedures "she was interested in" or "wanted to have completed" based on SkinSpirit's pre-defined summaries of what those services may typically address. FAC ¶ 81, Fig. 4. But, as a matter of law, expressing interest in a service by booking an appointment through the provider's website—the modern day equivalent of walking into a specialty clinic and signing up to receive a consultation with a specialist who offers a specific kind of procedure—is not the equivalent of a patient providing information about her medical history, treatments, or physical condition to the provider. *See, e.g.*, *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 435 (noting that "an individual's name" on "a list released by doctor X or clinic Y" is not "medical information"); *Gibson v. Planned Parenthood Fed'n of Am., Inc.*, No. 3:23-cv-04529-JD, 2024 WL 4251892, at *1 (N.D. Cal. July 2, 2024) (finding plaintiff's research about "Women's Services" on defendant's website and appointment bookings not to be "medical information").

Further, although Rusow refers to the Website as a "portal," she does not allege facts sufficient to support a finding that the Website does anything more than enable visitors to book appointments. Rusow does not allege that she or her cosmetic service provider inputted any information about her medical history, treatment, or condition into the Website during or after any of her appointments. Nor does she allege that she used the Website to communicate with her provider, or that the Website is even capable of facilitating such communications.

Indeed, the Complaint does not even allege that the Website collected (let alone disseminated) Rusow's **historical** booking data, meaning that Rusow has pled, at most, that the Website collected (and purportedly enabled Google or LinkedIn to intercept) the fact that she had booked an appointment, without any further indication about whether she actually attended the appointment and was seen. Courts have been clear that appointment booking information of this nature is not "medical information" under CMIA. *See Gibson*, 2024 WL 4251892, at *1 (scheduling of medical appointments not "medical information"); *Rater8*, 2021 WL 4865930, at *4–5 (plaintiff's contact information and medical appointment date not "medical information");

*Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (fact that plaintiff sought appointment with physician not "medical information"); *Tamraz v. Bakotic Pathology Assocs.*, No. 22-cv-0725-BAS-WVG, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022) (holding appointment information was not "medical information"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-cv-2904, 2021 WL 5937742, at *34 (D.N.J. Dec. 16, 2021) (finding "dates of service and referring doctor" were not "medical information").

### *B. Rusow Fails to Allege That The Intercepted Booking Information "Included or Contained" Personally Identifying Information.*

The CMIA applies only to the dissemination of "individually identifiable" regarding a patient's a patient's medical history, physical condition, or treatment. CAL. CIV. CODE § 56.05(i). For medical information to be "individually identifiable," it must "include[] or contain[] any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." CAL. CIV. CODE § 56.05(j). Thus, even if SkinSpirit had disclosed Rusow's medical history, medical treatments, or physical condition, her CMIA claim would still fail because nowhere in the FAC does she allege that SkinSpirit disclosed such information ***together with*** information that, alone or in combination with other publicly available information, would reveal her identity.

Rusow does not allege that she inputted her name, address, telephone number, or social security number anywhere on the Website—let alone that LinkedIn or Google intercepted such information. Nor does Plaintiff allege that SkinSpirit maintained other personally identifiable information about her that was disclosed by the Website to LinkedIn or Google. To the contrary, Rusow specifically alleges that she had previously provided her identifying information to LinkedIn and Google, and that, with such information, those companies could use browser-fingerprinting techniques and/or cookies they placed on Rusow's web browser to associate data they intercepted from the Website with Rusow. *See* FAC ¶¶ 36, 53, 65–66, 73, 84, 88. However, the data that LinkedIn or Google may have previously collected from Rusow or cookie identifiers

that those companies assigned to her web browser are not publically available information. They are, at best, privately-held pieces of information that those companies might be able to use to identify their own accountholders across platforms. Accordingly, Rusow's CMIA claim fails.

*C. Rusow Fails to Allege Economic or Personal Injury.*

To plausibly state a claim under Section 56.10 of CMIA—the only CMIA claim Rusow brings[4]—she must also adequately allege that she "has sustained economic loss or personal injury." CAL. CIV. CODE § 56.35. Unlike violations under other sections of CMIA, *see id.* § 56.36(b) (providing additional remedies for claims arising from negligent release of confidential information), a patient seeking relief under Section 56.10 is not entitled to nominal damages.

Here, Rusow does not allege that she suffered any economic loss or personal injury as a result of SkinSpirit's alleged disclosure of her information. For this independent reason, her CMIA claim must be dismissed.

**IV. Plaintiff Rusow Has Not Stated a Viable CIPA Claim.**

Rusow asserts a claim against SkinSpirit under CIPA § 631(a), which prohibits: (1) intentional wiretapping; (2) willfully reading the "contents or meaning" of a communication in transit over a wire without all parties' consent; (3) attempting to use or communicate information obtained as a result of engaging in either of the previous two activities; or (4) aiding in one of those three actions. CAL. PENAL CODE § 631(a); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Her claim fails for two independent reasons: it is time barred, and she has not alleged facts sufficient to meet the applicable aiding and abetting standard.

*A. Rusow's CIPA Claim Is Time Barred.*

CIPA claims are subject to a one-year statute of limitations. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (citing CAL. CIV. PROC. CODE § 340). A plaintiff who raises her claim outside of this limitations period bears the burden of pleading facts to establish

[4] Although Rusow cites Section 56.101 in a footnote, *see* FAC ¶ 22 n.3 she does not purport to bring a claim against SkinSpirit under that specific section, *see id.* at Count III, and she does not allege facts sufficient to support a claim for any negligent release of confidential information.

tolling under the delayed discovery doctrine. *Id.* To do so, a plaintiff must plead both "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (Cal. 2005). Even when applicable, the delayed discovery doctrine "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* at 920; *Javier*, 649 F. Supp. 3d at 901. A plaintiff has inquiry notice "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988).

There is no dispute that Rusow failed to bring her CIPA claim before the applicable one-year statute of limitations expired. *See* FAC ¶ 7 (alleging Rusow visited the Website in May 2023). Thus, for Rusow's CIPA claim to survive, she must allege facts sufficient to establish tolling.

In the FAC, Rusow added boilerplate tolling allegations, but these fall far short of her pleading burden. *See id.* ¶¶ 107–14. Indeed, Rusow still has not alleged sufficient facts to establish that she was somehow precluded from discovering that the Website incorporated the LinkedIn Insight Tag or Google Analytics. To the contrary, the FAC itself shows that both pieces of code were, at all relevant times, ascertainable through publicly-available developer tools. *See id.* at pp. 18–24, Figs. 2–7 (alleging, in screenshot descriptions, that existence of pixel overlay "confirmable with developer tools"). Accordingly, she is precluded from invoking the equitable tolling doctrine.

Rusow is also precluded from invoking the delayed discovery doctrine because her allegations establish that she had constructive knowledge that at least one of the alleged interceptors, LinkedIn, provided its tracking technologies to companies, like SkinSpirit, for the very purpose of collecting the information Rusow complains of here. Rusow alleges that, as a LinkedIn user, she "agree[d] to [LinkedIn's] User Agreement," available at https://www.linkedin.com/legal/user-agreement, FAC ¶ 38 n.27. She also alleges that, "[b]y using or continuing to use LinkedIn's Services, [she] agree[d] to two additional agreements: the Privacy Policy and the Cookie Policy[,] *id.* ¶ 38, which are available at https://www.linkedin.com/legal/privacy-policy and https://www.linkedin.com/legal/cookie-policy, respectively, *id.* ¶ 38 n.28–29. Under those terms and policies, Rusow was put on notice of,

and agreed to, LinkedIn's "use of cookies and similar technologies" and acknowledged that LinkedIn or "third parties may . . . place cookies in [her] browser when [she] visit[ed] non-LinkedIn sites that . . . host [LinkedIn's] plugins or tags," such as SkinSpirit's Website. Thus, at the time Rusow visited the Website, she had constructive notice of—and, indeed, had already consented to—the interception of her data on the Website by LinkedIn.[5]

Because Rusow has failed to adequately allege facts sufficient to avail herself of the delayed discovery doctrine, her CIPA claim must be dismissed as time-barred.

### *B. Rusow Fails to Allege That SkinSpirit Knowingly Aided and Abetted a CIPA Violation.*

Section 631(a) applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). Because it is undisputed, here, that SkinSpirit was a party to Rusow's allegedly intercepted communications, *see* FAC ¶¶ 7, 10, Rusow can only state a viable CIPA claim if she alleges facts sufficient to establish that SkinSpirit aided, abetted, or conspired with a third party to violate the statute. *See* CAL. PENAL CODE § 631(a); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024); *Graham*, 533 F. Supp. 3d at 831.

To state a claim for aiding and abetting under Section 631(a), a plaintiff must specifically allege facts establishing (1) an underlying violation by a third party (here, Google or LinkedIn), (2) that the alleged aider and abettor (here, SkinSpirit) both had "knowledge of" the third-party's unlawful conduct, and (3) that it "act[ed] with the third party ***in order to*** have the third party perform acts that violate the statute." *YETI Coolers*, 754 F. Supp. 3d at 942 (emphasis in original); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) (holding that the plaintiff must establish that the

[5] The latest date on which Rusow could have plausibly had constructive notice of LinkedIn's interception of her data was the date on which she claims she first saw a SkinSpirit advertisement. *See* FAC ¶ 7. Because Plaintiff does not specify the date on which she first saw such ads, she has failed to plead the time and place she first had information sufficient to discover the alleged violation, and thus she is precluded from invoking the delayed discovery doctrine. *See Javier*, 649 F. Supp. 3d at 901 (noting that "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (citing *Fox*, 110 P.3d at 914)).

defendant "act[ed] with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense" (emphasis in original)); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025) (affirming Section 631(a)'s scienter requirement). Rusow has failed to allege facts sufficient to satisfy any of these elements.

*1. Rusow Fails to Allege Facts Sufficient to Establish That Google or LinkedIn Committed an Underlying Violation of Section 631.*

Rusow's aiding and abetting claim against SkinSpirit is, by its very nature, derivative—meaning that, in the absence of non-conclusory allegations sufficient to establish that Google or LinkedIn committed one of the acts proscribed by Section 631(a)'s first three provisions, there is simply no unlawful conduct for SkinSpirit to aid and abet. *See Graham* 533 F. Supp. 3d at 833 (holding the defendant not liable for aiding and abetting the third party advertiser's wrongdoing "because there [was] no wrongdoing."); *Cody v. Boscov's LLC*, No. 8:22-cv-01434, 2024 WL 2228973, at *2 (C.D. Cal. May 6, 2024) ("In order to sustain [an aiding and abetting] claim, Plaintiff must adequately plead that [the third party] itself engaged in conduct falling under one of the first three prongs of the statute."); *Cody v. Lacoste USA, Inc.*, No. 8:23-cv-00235, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024) (same).

While Rusow repeatedly declares in the FAC that SkinSpirit's use of tracking technologies on its Website was "unlawful," she does not allege facts establishing the illegality of either LinkedIn's or Google's violation of Section 631(a). In fact, the allegations in the FAC demonstrate the contrary—that as an accountholder subject to its terms of use and privacy policy, Rusow knew about and consented to LinkedIn's use of tracking technologies to collect data from third party websites (like SkinSpirit), *see* FAC. ¶¶ 38–40,[6] which renders CIPA inapplicable to LinkedIn's alleged interception of her data from SkinSpirit's Website as a matter of law. *See, e.g.*, *YETI Coolers*, 754 F. Supp. 3d at 940–42 (noting that "absence of consent" is required to

[6] *See, e.g.*, *Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2022 WL 4913347, at *1 (N.D. Cal. Oct. 3, 2022) (noting that "Meta's relationship with the users—including Plaintiff—is governed by its Terms of Service . . . , to which all users must agree to create a Facebook account."), *aff'd,* 2024 WL 3325389 (9th Cir. July 8, 2024).

establish a CIPA violation). Because Rusow has not and cannot establish that LinkedIn or Google violated CIPA, her aiding and abetting claim against SkinSpirit is necessarily foreclosed.

*2. Rusow Fails to Allege That SkinSpirit Acted With Knowledge of Google's or LinkedIn's Purported Criminal Acts.*

As multiple federal and state courts have held in this precise context, generalized allegations that a defendant installed and benefited from tracking technologies on its website are not enough to satisfy the knowledge requirement for an aiding and abetting claim under Section 631(a). *See, e.g., YETI Coolers*, 754 F. Supp. 3d at 942 ("By its plain terms, that statutory language does not cover, for example, a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute."); *Graham*, 533 F. Supp. 3d at 833; *Licea v. Finish Line*, No. 23STCV22390 (Cal. Super. Jul. 10, 2024) (dismissing Section 631(a) claim for failure to allege requisite knowledge and intent) (attached as Exhibit A).

Indeed, the mere fact that a business has utilized ubiquitous tracking technologies on its website, provided by some of the biggest, most heavily scrutinized tech companies in the world, cannot—as a matter of law—allow for a plausible inference that the business acted with the knowledge required to maintain a claim for criminal aiding and abetting. *See YETI Coolers*, 754 F. Supp. 3d at 943 ("the Court cannot plausibly infer from Defendant's use of [a third party's] services alone that Defendant knew [the third party's] services were based on its allegedly illegal interception of financial information, collected during [third party's] online processing of customers' purchases."); *Finish Line*, No. 23STCV22390, at 5–6 (holding that plaintiff's allegations that third party touted the technology's capabilities to the public was not sufficient to demonstrate that the defendant "knew, let alone facilitated, the purported misconduct").

Here, Rusow bases her CIPA claim on the exact kind of generalized allegations that courts have found to be insufficient as a matter of law—namely, that SkinSpirit used Google's and LinkedIn's tracking technologies on its Website to get access to analytical tools and enhance its advertising capabilities. *See* FAC. ¶¶ 30, 56, 61. Indeed, Rusow does not allege that SkinSpirit knew that Google or LinkedIn were going to use tracking technologies unlawfully. To the contrary,

Rusow alleges Google and LinkedIn simply wanted to use data collected from the Website for "targeted advertising purposes." *Id.* ¶ 139. As other courts have found, such allegations are insufficient to maintain a claim under Section 631(a).

*3. Rusow Fails to Allege That SkinSpirit Acted With Requisite Intent.*

Separate and apart from the knowledge element, Rusow must also allege facts sufficient to establish that SkinSpirit installed the tracking technologies on its Website "***in order to***" enable Google's or LinkedIn's violation of CIPA. *See Kidron v. Movie Acquisition Corp*., 40 Cal. App. 4th 1571, 1582 (1995) (holding that "[a]ctual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim" but rather that knowledge "must be combined with intent to aid in its commission"); *see also Finish Line,* No. 23STCV22390, at 5–6 (dismissing CIPA claim because plaintiff failed to show defendant "facilitated" the misconduct).

In the FAC, Rusow does not allege that SkinSpirit installed the tracking technologies on its Website with the intent to enable to Google or LinkedIn to engage in any such unlawful conduct. To the contrary, Rusow alleges only that SkinSpirit installed those companies' tracking tools on its Website to enhance its ability to optimize its advertising campaigns and learn more about its audiences. *See* FAC ¶¶ 30, 56, 61. As other federal courts have found, such allegations are simply not enough to state a viable claim for aiding and abetting a third party's alleged violation of Section 631(a) of California's criminal code. *See, e.g.*, *YETI Coolers*, 754 F. Supp. 3d at 944 (reaffirming that to state CIPA claim the plaintiff must plead facts sufficient to establish defendant knew of violation and "had an intent or purpose of aiding it substantially").

## V. Rusow Fails to Allege a Viable Claim for Invasion of Privacy.

To allege a violation of privacy under California's constitution, a plaintiff must demonstrate that: (1) she has a reasonable expectation of privacy under the circumstances; and (2) the defendant's conduct was "highly offensive." *See Hammerling v. Google*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024) ("*Hammerling II*"); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). Rusow fails to adequately allege either element.

*A. Rusow Does Not Have a Reasonable Expectation of Privacy in the Allegedly Collected*

*Information.*

The Ninth Circuit has held that a web user does not have a reasonable expectation of privacy when an applicable privacy policy expressly discloses that the data at issue is subject to collection. *Hammerling II*, 2024 WL 937247 at *1. Indeed, the Ninth Circuit has specifically held that because a privacy policy "unambiguously disclose[d] Google's collection of user activity data in third-party apps[,]" the plaintiffs did not have a reasonable expectation of privacy in that data—even when plaintiffs alleged that defendants surreptitiously collected their personal information by tracking and using that data for purposes other than those contemplated by the privacy policy. *Id.* at *3.

In this case, Rusow alleges that SkinSpirit used LinkedIn's and Google's tracking technologies to capture her interactions with the Website. *See* FAC ¶¶ 137–38, 157. However, Rusow admits that prior to visiting the Website, she became a LinkedIn accountholder, and that like other LinkedIn users, when "first signing up" for LinkedIn, she "agree[d] to the User Agreement," which specifically provides that "[b]y using or continuing to use LinkedIn's Services, users agree to . . . the Privacy Policy and the Cookie Policy[,]" *id.* at pp. 11–12 n.26–29. As pertinent here, those agreements require users, including Rusow, to agree to LinkedIn's "use of cookies and similar technologies" and that "third parties may . . . place cookies in your browser when you visit non-LinkedIn sites that . . . host our plugins or tags." *Id.* at p. 11 n.28.

Thus, as a matter of law, Rusow cannot plausibly allege that she visited the Website with a reasonable expectation of privacy in her communications because she knew about and consented to LinkedIn's use of tracking technologies—including on non-LinkedIn websites she visited. *See Hammerling II*, 2024 WL 937247 at *3.

*B. Rusow Fails to Allege Facts That Satisfy the "Highly Offensive" Standard.*

To state a constitutional invasion of privacy claim, a plaintiff must also plead facts sufficient to establish that "the intrusion was highly offensive." *Id.*; *see also Hernandez v. Hillsides*, 47 Cal. 4th 272, 295 (2009) (internal citations and quotations omitted). "This District sets a high bar when assessing the 'highly offensive' requirement." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) ("*Hammerling I*").

Determining whether a defendant's actions were "highly offensive" requires "a holistic

consideration of factors[,]" such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive[;]" the analysis "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Hammerling I*, 615 F. Supp. 3d at 1090 (internal quotations omitted). Courts undertaking this analysis have held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy"—especially in the context of ubiquitous cookie practices on commercial websites. *Id.*; *see also*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browser history not highly offensive); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (same); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same); *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *6 (N.D. Cal. Aug. 18, 2023) (same). Even disclosure of sensitive personal information, including social security numbers, does not automatically constitute an "'egregious breach of the social norms' to establish an invasion of privacy claim." *Low*, 900 F. Supp. 2d at 1025.

Further—and especially in the context of website analytics—courts look to "what specifically Plaintiff is alleging Defendant knew" when determining whether a defendant's conduct is highly offensive. *Id.* Thus, dismissal is particularly appropriate when a plaintiff does not allege facts sufficient to allow a plausible inference that the third-party was using the defendant's customer's information for additional purposes beyond standard commercial advertising. *Id.*

Rusow's allegations come nowhere near meeting the high bar necessary to state a viable invasion of privacy claim. Rusow does not allege that she communicated any highly sensitive information while visiting the Website, or that she was deceived by any of SkinSpirit's statements about how it would use her data. At most, Rusow alleges that SkinSpirit intercepted "click events" about cosmetic services Rusow was interested in receiving from SkinSpirit and her desire to book an appointment at a SkinSpirit location for a consultation about such services. The collection of such information is the type of "routine commercial behavior" that numerous courts have held is not highly egregious under the law. *YETI Coolers*, 754 F. Supp. 3d at 946 (noting that "where the conduct [at issue] amounts to 'routine commercial behavior,'" a defendant's conduct cannot be so

egregious as to constitute a serious invasion of privacy).

Further, Rusow does not allege that SkinSpirit knew it was doing anything other than using some of the most common business advertising tools. Under established precedent, she cannot meet her burden of demonstrating "highly offensive" conduct to maintain her claim.

**VI. The MHMDA Claim Fails Because T.S. Fails to Allege Injury or Causation.**

T.S. brings a claim against SkinSpirit under Washington's recently-enacted My Health My Data Act (MHMDA). To seek relief for an alleged violation of the MHMDA, a plaintiff must bring a claim under the Washington Consumer Protection Act ("CPA"). *See* WASH REV. CODE ch. 19.86 § 20. To state a viable CPA claim, a plaintiff must allege facts sufficient to establish not only that a defendant engaged in "an unfair or deceptive act or practice," but also that, as a result of such act or practice, plaintiff suffered "injury to . . . their business or property." *Scott v. Amazon.com, Inc.*, 559 P.3d 528, 544–45 (Wash. App. 2024), review granted, 566 P.3d 90 (Wash. 2025) (quoting *Mason v. Mortg. Am., Inc.*, 114 Wash.2d 842, 852 (1990)).

In this case, T.S.'s allegations fail to support a viable CPA claim for at least two reasons. First, T.S. does not allege that she suffered any injury to her "business or property" as a result of SkinSpirit's alleged unfair or deceptive act or practice. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *15 (W.D. Wash. Mar. 4, 2025) (dismissing CPA claim for lack of damages caused by defendant's alleged use of tracking technologies on website). Second, even if T.S. had alleged a cognizable injury, she does not allege that SkinSpirit's conduct was the but-for cause of that injury. *See Scott*, 559 P.3d at 544–45. Accordingly, T.S.'s MHMDA/CPA claim fails.

**VII. Plaintiffs Fail to Allege Facts Sufficient to Sustain Their ECPA Claim.**

The ECPA, 18 U.S.C. § 2510 *et seq.*, prohibits the intentional and unauthorized interception of "any wire, oral, or electronic communication." *See* 18 U.S.C. § 2511(1). A "party" to a communication is exempt from liability under the ECPA unless that party intercepted the communication "for the purpose of committing any criminal or tortious act," referred to as the crime-tort exception. 18 U.S.C. § 2511(2)(d).

Courts in the Ninth Circuit have held that, to assert a viable ECPA claim against a party to a communication based on the crime-tort exception, a plaintiff must plead sufficient facts to establish that the defendant: (1) committed a tortious or criminal act; (2) "intercepted the communication for the purpose of a tortious or criminal act," and (3) the tortious or criminal act was "independent of the intentional act of recording or interception itself." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024) (quoting *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064–65 (C.D. Cal. 2024) (internal quotations omitted)). Plaintiffs fail to allege facts sufficient to establish any of these three prongs.

*A. Plaintiffs Fail to Plead That SkinSpirit Committed a Crime or Tort.*

Plaintiffs attempt to invoke the crime-tort exception based on SkinSpirit's alleged violation of the CMIA, HIPPA, and the FTC Act. *See* FAC ¶¶ 142–46. All three fail.

*First*, for the reasons discussed above, *supra* pp. 10–13, Plaintiffs' allegations do not support a plausible CMIA claim.

*Second*, Plaintiffs allege that SkinSpirit's use of Google's and LinkedIn's tracking technologies on its Website violated Section 1320d-6(a)(3) of the Health Insurance Portability and Accountability Act (HIPAA). FAC ¶ 143. However, HIPAA does not regulate all companies that collect and process personal health information. Nor does Section 1320d-6(a)(3) impose a criminal penalty for knowingly disclosing individually identifiable health information (IIHI) in all contexts. Rather, Section 1320d-6(a)(3) provides that "a person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in violation of this part ***if*** the information is maintained by a covered entity (as defined in the HIPAA privacy regulation described in section 1320d–9(b)(3) of this title) . . . ." 42 U.S.C. § 1320 (Emphasis added). In this case, Plaintiffs have failed to allege facts sufficient to establish that SkinSpirit is a covered entity.

Of the three types of "covered entities" that are subject to HIPAA, Plaintiffs seem to assume (incorrectly[7]) that SkinSpirit is a "health care provider[] who transmit[s] any health information in

[7] Plaintiffs frame their legal conclusion as a factual allegation, but since they fail to support this conclusion with any specifically pleaded facts, the Court should not accept their conclusion as

electronic form in connection with a [covered] transaction." 45 C.F.R. § 160.103 (defining "covered entity"). Although Plaintiffs allege that SkinSpirit provides healthcare, *see* FAC ¶ 164, they do not (and cannot) allege that SkinSpirit electronically transmits protected health information within the meaning of HIPAA, as part of a covered transaction, such as when engaging with a health plan through electronic media by sending an electronic bill for services to a health insurer. *See* 45 C.F.R. § 162.1101. Because Plaintiffs do not allege—and cannot in good faith amend their complaint to allege—that SkinSpirit bills or otherwise engages with health plans in a manner that would subject it to HIPAA's electronic transaction standards, SkinSpirit is not a "covered entity" and could not have violated HIPAA.[8]

Finally, Plaintiffs allege that SkinSpirit's use of Google's and LinkedIn's tracking technologies on its Website violated the FTC Act. However, they fail to allege what conduct SkinSpirit engaged in that would constitute a crime or tort under the FTC Act, let alone what section of the FTC Act SkinSpirit purportedly violated. *See* FAC ¶ 143*; see also McKinney v. Misico Invs., LLC*, No. 11-10467, 2011 WL 5244956, at *5 (E.D. Mich. Nov. 3, 2011) (holding that plaintiff failed to state a claim for violation of the FTC Act when he failed to allege how any of the defendants violated the Act or which sections the defendants allegedly violated). Nor can they, as the FTC Act is not a criminal statute and it does not provide a private right action to Plaintiffs. *See id.*

Absent facts sufficient to establish that SkinSpirit committed a crime or tort, Plaintiffs' ECPA claim fails.

### *B. Plaintiffs Fail to Allege That SkinSpirit Acted "for the Purpose" of Committing a Tortious or Criminal Act.*

Even if Plaintiffs could plausibly allege that SkinSpirit committed a crime or tort, they must also allege that the "primary motivation" or "determining factor" of the defendant's was to

---

true. *Ott v. Home Savings & Loan Ass'n*, 265 F.2d 643, 648 n.8 (9th Cir. 1958).

[8] Even if SkinSpirit were a covered entity, Plaintiffs' argument would still fail because the bulletin on which they base their argument was—as noted in the bulletin itself, *see* FAC ¶ 94 n.44—vacated by a federal district court in *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 789 (N.D. Tex. 2024).

tortiously injure the plaintiff. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)); *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." (quoting *Payne v. Norwest Corp.*, 911 F. Supp. 1299, 1304 (D.Mont.1995)); *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining the crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) ("Section 2511(2)(d)'s legislative history and case law make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort."). Nowhere in the FAC do Plaintiffs allege that SkinSpirit used the Google or LinkedIn tracking technologies on its Website "for the purpose of" committing any such crime or tort, let alone with the "primary motivation" of injuring Plaintiffs.

To the contrary, just as in *Allen v. Quicken Loans*, where the plaintiff admitted that defendants' interception was for marketing or promotional reasons, No. 17-cv-12352 (ES) (MAH), 2018 WL 5874088, at *7 (D.N.J. Nov. 9, 2018), here the Plaintiffs admit that SkinSpirit used the Google and LinkedIn tracking technologies on its Website to enhance its website analytics and advertising capabilities, *see* FAC. ¶¶ 30, 56, 61, and that Google and LinkedIn, in turn, used the allegedly intercepted data to bolster their advertising capabilities, *see id.* ¶¶ 24, 51. *See also Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (holding that use of tracking technologies by defendant to "increase its own profits through sophisticated and targeted advertising" and for "marking purposes" are "non-criminal, non-tortious purpose[s]"). Since neither purpose is inherently criminal or tortious, Plaintiffs cannot invoke the ECPA's crime-tort exception as a matter of law.

*C. None of the Crimes or Torts Plaintiffs Claim SkinSpirit Committed Are Independent From the Interception on Which They Base Their ECPA Claim.*

Even assuming Plaintiffs could establish that SkinSpirit committed a crime or tort with the requisite intent, they are still precluded from invoking the ECPA's crime-tort exception for yet another, independent reason: They have not alleged that SkinSpirit engaged in any crime or tort that arose from acts ***secondary to*** SkinSpirit's alleged use of Google's and LinkedIn's tracking technologies on its Website, which, according to Plaintiffs, enabled Google and LinkedIn to intercept their communications. *See Okash v. Essentia Health*, No. 23-cv-482, 2024 WL 1285779, at *3–5 (D. Minn. Mar. 26, 2024) (holding that, to invoke the crime-tort exception, "the bad acts must be 'secondary to the acquisition of the communication' and involve 'tortious or criminal use of the interception's fruits'" (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015)); *see also Cohen v. Casper Sleep Inc.*, No. 17-cv-9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) ("[T]he intended tort must be independent of the act of recording itself—the tort cannot be the act of interception.") (internal quotations omitted).

Indeed, it is for this reason that numerous courts have rejected other plaintiffs' attempts rely on alleged HIPAA or similar violations as grounds for invoking the ECPA's crime-tort exception. *See, e.g.*, *Kaiser Found. Health Plan*, 2024 WL 1589982, at *8–10 (rejecting application of ECPA's crime-tort exception based on alleged violation of HIPAA); *Okash*, 2024 WL 1285779, at *3–5 (same); *Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *3–4 (E.D. Pa. 2024) (same); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363–64 (E.D.N.C. July 24, 2024) (same).

Here, all of the crimes or torts Plaintiffs assert in the FAC arise from and are premised on that same exact conduct they claim violated the ECPA. *See* FAC ¶¶ 94, 143–46. Accordingly, the crime-tort exception does not apply, and Plaintiffs' ECPA claim should be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss all of the claims in the FAC, with prejudice, and award them any costs and fees recoverable by law.

DATED: June 3, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ Scott S. Humphreys*
Scott S. Humphreys
Gregory P. Szewczyk
J. Matthew Thornton
Brianna R. Howard
Alexia C. Chapman

*Attorneys for Defendants*