**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KOURTNEY RUSOW and T.S., individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

SKINSPIRIT ESSENTIAL LLC, SKINSPIRIT HOLDINGS LLC, and DEAN VISTNES M.D., INC.,

Defendants.

Case No. 3:24-cv-09317-CRB

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: August 1, 2025
Time: 10:00 a.m.
Dept: Courtroom 6, 17th Fl.
Judge: Hon. Charles R. Breyer

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. PLAINTIFFS SUFFICIENTLY STATE A CLAIM AGAINST SKINSPIRIT HOLDINGS LLC AND DEAN VISTNESS M.D., INC. ..... 3

II. THE COURT HAS PERSONAL JURISDICTION OVER SKINSPIRIT HOLDINGS ..... 5

III. PLAINTIFF RUSOW STATES A CLAIM UNDER THE CIPA ..... 6

A. Plaintiff Rusow's CIPA Claim is Timely ..... 6

B. Plaintiff Rusow Alleges That Defendants Knowingly Aided A CIPA Violation ..... 8

i. Plaintiff alleges facts sufficient to establish that LinkedIn and Google committed an underlying violation of Section 631 ..... 8

ii. By Assisting LinkedIn and Google's interceptions, Defendants acted unlawfully. ..... 9

iii. Plaintiff Rusow alleges that Defendants acted with requisite intent. ..... 10

IV. PLAINTIFF RUSOW STATES A CLAIM FOR INVASION OF PRIVACY ..... 12

A. Plaintiff Rusow Had a Reasonable Expectation of Privacy ..... 12

B. Plaintiff Rusow Alleges Facts That Satisfy the "Highly Offensive" Standard ..... 13

V. PLAINTIFFS STATE A CLAIM UNDER THE ECPA ..... 15

A. Defendants Committed a Tort When They Intercepted And Disclosed Information Related to Plaintiffs' Medical Appointments ..... 15

B. Defendants Intercepted Plaintiffs' Communications For A Tortious Purpose ..... 15

C. Defendants' Disclosure of Plaintiffs' Confidential Information is Independent From the Interception ..... 16

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 3

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 7

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) .......... 10

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .......... 5

*Blue Source Grp., Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) .......... 3

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) .......... 5

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 16

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 8, 14

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......... 5

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 7, 8

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 5

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 11

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 14

*E-Fab, Inc. v. Accountants, Inc. Serv.*,
64 Cal. Rptr. 3d 9 (2007) .......... 7

*Fox v. Ethicon End-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 7

*Friedman v. Zimmer*,
2015 WL 6164787 (C.D. Cal. July 10, 2015) .......... 4

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 7

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) .......... 10

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) .......... 14

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .......... 5

*Heller v. NBCUniversal, Inc.*,
2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) .......... 4

*Hines v. Wells Fargo Home Mortg., Inc.*,
2015 WL 351818 (E.D. Cal. Jan. 26, 2015) .......... 7

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 3

*In re Ambry Genetics Data Breach Litig.*,
567 F.Supp.3d 1130 (C.D. Cal. 2021) .......... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 12

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 10

*In re Google, Inc. Privacy Policy Litig.*,
58 F.Supp.3d 968 (N.D. Cal. 2014) .......... 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 14

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......... 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 8, 13, 15

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) .......... 7

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 11

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 7

*Laub v. U.S. Dept. of Interior*,
342 F.3d 1080 (9th Cir. 2003) .......... 6

*Lawrence v. Finicity Corp.*,
716 F. Supp. 3d 851 (E.D. Cal. 2024) .......... 7

*Lee v. Plex, Inc.*,
2025 WL 948118 (N.D. Cal. Mar. 28, 2025) .......... 5

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 3

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 14

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 12

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal 2014) .......... 12, 16, 17

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 9

*Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 6, 16

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 16, 17

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .......... 12, 14, 15

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 2

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 12, 13, 14

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 3

*Stasi v. Inmediata Health Group Corp.*,
501 F.Supp.3d 898 (S.D. Cal. 2020) .......... 14

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 16

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) .......... 10

*United States ex rel. Osinek v. Kaiser Permanente*,
2023 WL 4054279 (N.D. Cal. June 15, 2023) .......... 3

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 10

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 10

*Williams v. DDR Media, LLC.*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .......... 14

*Williams v. TMC Health,*
2024 WL 4364150 (D.Az. Sept. 30, 2024) .......... 16

*X Corp. v. Ctr. For Countering Digital Hate Ltd.*,
724 F. Supp. 3d 921 (N.D. Cal. 2024) .......... 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp 3d. 1073 (C.D. Cal. 2021) .......... 9

**RULES**

Fed. R. Civ. P. 8 .......... 3, 4

## INTRODUCTION

This case concerns serious violations of patient privacy by Defendants SkinSpirit Essential LLC, SkinSpirit Holdings LLC, and Dean Vistnes M.D., Inc. (collectively, "Defendants"), who operate a national chain of medical clinics under the under the SkinSpirit brand. *See* First Amended Complaint ¶ 2 (ECF No. 14) ("FAC"). Defendants offer cosmetic medical treatments including body contouring and injectables – all heavily regulated medical procedures that must be performed by a trained medical professional. *See id.* ¶ 76. Without informing or obtaining consent from patients, Defendants embedded tracking technologies from LinkedIn and Google on their appointment-booking website, www.skinspirit.com (the "Website") —technologies that intercepted, collected, and disclosed sensitive health-related information to third-party advertisers. These disclosures were made not to provide care, but to fuel targeted advertising and increase Defendants' marketing reach and revenue.

Plaintiffs Rusow and T.S. (collectively, "Plaintiffs") each used Defendants' website to book medical procedures. *Id.* ¶¶ 8-9. In doing so, they communicated private health-related information, including the procedures they were seeking and the symptoms they wished to address. *See, e.g., id.* Figure 4. Plaintiffs reasonably expected their interactions with a medical provider's website to remain private. Yet, unbeknownst to them, and without their authorization, Defendants enabled third-party advertising companies to surveil these interactions in real time. To accomplish this, Defendants affirmatively installed tracking codes on their website, including the LinkedIn Insight Tag and Google tracking technology. Defendants' actions demonstrate a blatant disregard for their duties as medical providers, as well as their patients' privacy interests.

Defendants now move to dismiss Plaintiffs' claims, relying on a series of factual misrepresentations and overly narrow interpretations of the law. *See* Defendants' Motion to Dismiss (ECF No. 29) ("MTD"). They assert that Plaintiffs consented to the interceptions merely by maintaining LinkedIn accounts — ignoring the fact that the LinkedIn privacy policy they rely on provides no constructive notice of the nature or extent of the disclosures. Defendants also attempt to avoid liability under the California Invasion of Privacy Act (CIPA) by contending that no unlawful interception occurred, that no aiding or abetting was plausible, and that the claims are

time-barred — all contrary to the allegations in the First Amended Complaint, and inconsistent with controlling precedent. They argue that Plaintiffs fail to allege a constitutional privacy violation, even though the intrusion at issue involves the unauthorized disclosure of patient communications with a licensed medical provider — precisely the type of conduct California's privacy laws were designed to prevent.

Finally, Defendants seek to dismiss claims against SkinSpirit Holdings and the Vistnes entity based on a misplaced "group pleading" theory, despite specific allegations that these entities oversee and benefit from the Website's configuration and jointly operate the SkinSpirit enterprise. These arguments raise fact questions that cannot be resolved on the pleadings.

This case is not about ordinary commercial data collection or the collection of generalized web analytics. It is about a medical provider betraying patient trust by allowing advertising platforms to surreptitiously collect and exploit health-related information disclosed in the course of seeking medical care. Plaintiffs have plausibly alleged violations of CIPA, the Electronic Communications Privacy Act (ECPA), and the California Constitution. Defendants' motion should be denied in its entirety.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the

pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT[1]

### I. PLAINTIFFS SUFFICIENTLY STATE A CLAIM AGAINST SKINSPIRIT HOLDINGS LLC AND DEAN VISTNESS M.D., INC.

Defendants argue that the claims against SkinSpirit Holdings and the Vistness entity should be dismissed because "Plaintiffs do not allege that either of them engaged in any conduct even tangentially relate[d] to the Website." MTD at 5. That is wrong.

To meet the pleading standard of FRCP 8(a), a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In other words, the purpose of Rule 8's liberal pleading standard is merely to put the defendants on adequate notice as to the general roles played by the parties. *United States ex rel. Osinek v. Kaiser Permanente*, 2023 WL 4054279, at *9–10 (N.D. Cal. June 15, 2023). This is because "when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.'" *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015). (quoting *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)); *see also Friedman v. Zimmer*, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (collecting cases where courts have "found that lumping defendants together can render a claim infirm, even under Rule 8's liberal pleading standard," and determining that courts have done so only in situations where the pleadings are largely incomprehensible").

However, at the pleading stage, without the benefit of discovery, "Plaintiff has no reasonable means of determining the roles that [each defendant] played" in assisting with

[1] Plaintiff Rusow withdraws her claim brought under the CMIA and Plaintiff T.S. withdraws her claim brought under the My Health My Data Act.

LinkedIn's and Google's interceptions. *Friedman v. Zimmer*, 2015 WL 6164787, at *2. Plaintiffs' claims involve the interception of communications from a health care provider's Website, and each Defendant is fully aware of its role in that process. Defendants' arguments are particularly hypocritical, considering SkinSpirit Essential specifically represents on its Website that the terms of use governing users access and use of the Website is between the user and "SkinSpirit Essential LLC, a Washington Limited Liability Company, along with its affiliates and subsidiaries, including SkinSpirit Holdings LLC, Dean Vistnes M.D., Inc., Dean Vistnes M.D. Texas, P.A., Dean Vistnes MD New York, P.C., and Dean Vistnes M.D., P.A. (collectively, 'SkinSpirit,' 'Company,' 'we,' 'us,' or **'our'**)." *See* Declaration of Sarah Westcot ("Westcot Decl."), Ex. A. (emphasis added). It continues by stating that the terms "govern your access to and use of . . . **our** website." *Id.* (emphasis added). According to their own representations, all three defendants are responsible for the Website. Further, the FAC alleges that "as the parent company [of SkinSpirit Essential LLC], Defendant SkinSpirit Holdings LLC exerts control over the operating decisions of its subsidiaries, including over the operation of the Website." FAC ¶ 12. The FAC clearly alleges that both SkinSpirit Essential LLC and SkinSpirit Holdings LLC are responsible for the operation of the Website. That, along with SkinSpirit's own representations on the Website, is sufficient at this stage. *See Friedman*, 2015 WL 6164787, at *2 (dismissal based on group pleadings should only be permitted "in situations where the pleadings are largely incomprehensible"); *Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (lumping satisfied pleading standards because defendants "cannot reasonably contend that these allegations leave them in the dark as to the conduct at issue" and discovery on each defendant's role was necessary).

The authority relied upon by Defendants in support of their arguments is misplaced. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *5 (N.D. Cal. Apr. 11, 2024) (finding impermissible group pleading where documents attached to the FAC contradicted allegations that the website and mobile application are owned and/or operated by all three defendants); *Lee v. Plex, Inc.*, 2025 WL 948118, at *7–8 (N.D. Cal. Mar. 28, 2025) (finding improper group pleadings where the complaint did not allege any facts that the defendant

purposefully directed its activities to California or that it had a hand in the operations within California).

## II. THE COURT HAS PERSONAL JURISDICTION OVER SKINSPIRIT HOLDINGS

Defendant SkinSpirit Holding LLC claims that it is not subject to this Court's general personal jurisdiction. MTD at 7. "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A prima facie showing is established if the plaintiff produces admissible evidence that, if believed, would be sufficient to establish personal jurisdiction. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010). In assessing whether personal jurisdiction exists, the court is not limited to a plaintiff's complaint and may consider evidence presented in affidavits or order discovery on jurisdictional issues. *X Corp. v. Ctr. For Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 933 (N.D. Cal. 2024) (citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

SkinSpirit Holding primarily relies on the Declaration of Lynn Heublein, claiming that "SkinSpirit Holdings does not publish, own, control or operate any website, including www.skinspirit.com (the "Website")." Heublein Decl. ¶ 15. However, these statements are directly contradicted by the very terms on the Website: "SkinSpirit Essential LLC, a Washington Limited Liability Company, along with its affiliates and subsidiaries, including SkinSpirit Holdings LLC, Dean Vistnes M.D., Inc., Dean Vistnes M.D. Texas, P.A., Dean Vistnes MD New York, P.C., and Dean Vistnes M.D., P.A. (collectively, 'SkinSpirit,' 'Company,' 'we,' 'us,' or **'our'**) . . . . [these terms] govern your access to and use of . . . **our** website." *See* Westcot Decl., Ex. A. (emphasis added). The Heublein Declaration also states that "SkinSpirit Holdings does not have employees in California." Heublein Decl. ¶ 10. But, Lynn Heublein (the CEO of both SkinSpirit Essential and SkinSpirit Holdings - not just a "manager" as stated in her declaration) resides in

Paolo Alto, California. *See* Westcot Decl., Ex. B & C. SkinSpirit Holdings, in some part, owns and operates the Website, according to the Website's own terms, and, as alleged in the FAC, the Website directs its business to "consumers seeking to procure medical procedures can schedule both virtual and in-person consultations for medical procedures, including at clinics located within California." *See* Westcot Decl., Ex. A.; FAC ¶ 11. Further, SkinSpirit Holdings has at least its primary employee in California. While the mere fact of a parent-subsidiary relationship alone may be insufficient to establish personal jurisdiction, the connection with SkinSpirit Holdings goes beyond that. By assisting in maintaining and operating the Website, which directs its business towards the people of California, and maintaining at least one employee within the State of California, its contacts have gone beyond just the parent-subsidiary relationship.[2]

## III. PLAINTIFF RUSOW STATES A CLAIM UNDER THE CIPA

### A. Plaintiff Rusow's CIPA Claim is Timely

Defendants argue that the delayed discovery doctrine does not apply to Plaintiff Rusow's claims. MTD at 14. That is wrong.

As a threshold matter, questions concerning the delayed discovery doctrine raise factual issues that are not appropriately resolved at the pleading stage. *See Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al*, 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025) (Holding that "the question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discover rule is a question of fact unless the evidence can support only one reasonable conclusion.") (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023)) (internal quotations omitted); *E-Fab, Inc. v. Accountants, Inc. Serv.*, 64 Cal. Rptr. 3d 9, 17 (2007); *Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 892 (E.D. Cal. 2024). Moreover, Defendants may only raise a time-barred claim on a motion to dismiss "if the running of the statute is apparent on the face of the complaint." *Jablon v. Dean*

[2] Should the Court find that Defendant SkinSpirit Holdings is not subject to personal jurisdiction as currently pleaded, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery and/or amend their complaint. *See Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)("[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

*Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Hines v. Wells Fargo Home Mortg., Inc.*, 2015 WL 351818, at *2 (E.D. Cal. Jan. 26, 2015) (a court may only grant a motion to dismiss if "it is clear from the face of the complaint that the statute has run and that no tolling is possible"); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *3 (C.D. Cal. Mar. 2, 2025) (holding that "dismissal of Plaintiff's claims as time-barred would be premature," where "Plaintiff allege[d] that he did not know and had no way of knowing that his personally identifiable information … was intercepted and unlawfully disclosed to Meta … because Defendant kept this secret"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) ("Plaintiffs' delayed discovery argument poses another barrier to dismissal where Defendants secretly incorporated Meta Pixel into their Web Properties . . .) (internal quotations omitted).

Nonetheless, Plaintiff Rusow has adequately alleged facts to support the application of the delayed discovery rule. To properly assert the delayed discovery doctrine, Plaintiff must "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon End-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal citations omitted). Plaintiff has adequately alleged both elements. *See* FAC ¶¶ 107-114 (Plaintiff only became aware of Defendants' conduct shortly before filing of the initial complaint in this matter, and was unable to have made an earlier discovery due to the fact that the tracking technologies are entirely invisible to website visitors). These allegations are sufficient to invoke the discovery rule. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (finding that plaintiff's clear statement that "the earliest" plaintiff could have known of her injury was shortly before filing was enough to invoke the discovery rule given defendant's sue of highly technical software).

Defendants argue that Plaintiff is "precluded from invoking the equitable tolling doctrine" because "both pieces of code were, at all times relevant, ascertainable through publicly-available developer tools." MTD at 14. Yet, Defendants fail to cite any authority to support their contention that a reasonable consumer would be aware of developer tools, let alone know how to operate the tools, understand the complex network traffic, and uncover the unauthorized disclosures at issue here. That is because no reasonable consumer could be expected to do so.

Defendants contend that Plaintiff Rusow somehow vicariously consented to Defendants' disclosure of her sensitive and private health information through her purported consent to LinkedIn's privacy policy, and that Plaintiff is "precluded from invoking the delayed discovery doctrine because her allegations establish she had constructive knowledge that at least one of the alleged interceptors LinkedIn, provided tracking technologies to companies like, SkinSpirit for the very purposes of collecting [information]." *Id*. That is wrong. Defendants cannot establish Plaintiff Rusow consented to tracking on their Website through the LinkedIn privacy policy, because any notice meant to obtain consent must *explicitly* give users notice of the practice at issue. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)). "The test is whether a reasonable user who viewed [the] disclosures would have understood that [the party providing the disclosure] was collecting the information at issue." *Meta Pixel*, 647 F. Supp. 3d at 793 The LinkedIn privacy policy does not do so.

LinkedIn's privacy policy states that "we will only collect and process personal data about you where we have a lawful basis." *Id*. ¶ 41. This broad sweeping statement does nothing to advise Plaintiff of the tracking technologies installed on Defendants' Website or the types of sensitive and private health information being disclosed. As such, Plaintiff had no meaningful notice of the nature and the extent of the wiretapping alleged, and did not consent to such practices. The Court should therefore find Plaintiff Rusow's claim is not time-barred because the delayed discovery rule applies.

### B. <u>Plaintiff Rusow Alleges That Defendants Knowingly Aided A CIPA Violation</u>

#### *i. <u>Plaintiff alleges facts sufficient to establish that LinkedIn and Google committed an underlying violation of Section 631.</u>*

Defendants argue that Plaintiff Rusow "does not allege facts establishing the illegality of either LinkedIn's or Google's violation of Section 631(a)." MTD at 16. Defendants are wrong. The FAC is riddled with allegations that LinkedIn and Google illegally intercepted Plaintiff's PII and PHI from Plaintiff's communications with Defendants via Defendants' Website. Once again, Defendants attempt to argue that Plaintiff consented to Defendants' disclosures by agreeing to

LinkedIn's privacy policy. *Id*. As mentioned above, Plaintiff's consent to LinkedIn's privacy policy does not cover Defendants' unlawful disclosures. LinkedIn only asserts to intercept personal data where they have a lawful basis. FAC ¶ 41. Here, neither LinkedIn nor Google had a lawful basis to intercept Plaintiff's confidential personal and healthcare information. Such allegations are sufficient to establish a violation of CIPA, and Defendants are liable for their conduct in aiding LinkedIn and Google in the alleged CIPA violation. *See Yoon v. Lululemon USA, Inc*. 549 F. Supp 3d. 1073, 1083 (C.D. Cal. 2021) ("a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (same).

Defendants' reliance on *YETI*, *Graham*, and *Licea v. Finish Line* is misplaced, as those cases involved either no plausible allegations that third-parties intercepted communications in real time, or a situation where only pageview or analytical metadata was shared – not user-entered content.

*ii.* *By Assisting LinkedIn and Google's interceptions, Defendants acted unlawfully.*

Defendants argue that Plaintiff fails to "allege that [Defendants] knew that Google or LinkedIn were going to use tracking technologies unlawfully," and that the use of "ubiquitous" tracking tools cannot give rise to knowledge or intent. MTD at 17. That is wrong.

In the FAC, Plaintiff sufficiently alleges Defendants' involvement (¶¶ 7, 36, 59, 72, 82) and knowledge (¶¶ 30, 60, 111, 155) in Google and LinkedIn's illegal schemes. Plaintiff specifically alleges that Defendants had the ability to monitor, select, and adjust the types of data being collected and transmitted – a level of engagement that supports an inference of knowledge. Courts consistently find such pleadings enough to establish derivative liability under the CIPA. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("Whether the third party's use was purely for Nationwide's benefit, rather than for its own benefit, is immaterial under the statute. Allowing a third party to listen in makes the third party liable for a violation of Section 631. Section 631 makes clear that **aiding** a third party is also a violation.

Nationwide may be liable for its conduct to **aid** Akamai's alleged violation.") (emphasis added) (internal citations omitted).

*iii. Plaintiff Rusow alleges that Defendants acted with requisite intent.*

Defendants argue that Plaintiff "does not allege that SkinSpirit installed the tracking technologies on its Website with the intent to enable Google or LinkedIn to engage in any such unlawful conduct." MTD at 18. Defendants are wrong. Under the Wiretap Act, the "intent requirement of § 2511 requires the interception to have been 'purposeful[ ] and deliberate[ ]' and not 'a result of accident or mistake.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)) (alteration in original). "[I]nterceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *Id.; see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (collecting cases). The intent requirement under CIPA § 631(a) is governed by the same standard. *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

As a threshold matter, "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *10 (W.D. Wash. July 2, 2024). Regardless, Plaintiff alleges that Defendants acted with intent to intercepting Plaintiffs' communications by installing the LinkedIn Insight Tag and Google tracking technology. Plaintiff alleges that "by installing the LinkedIn Insight Tag [and Google tracking technology] on the Website, Defendants disclosed its patients PII and PHI to LinkedIn [and Google] related to their medical appointments in order to monetize that data for targeted advertising." FAC ¶ 82, 88. "By utilizing and embedding the LinkedIn Insight Tag and Google tracking technologies on its Website, Defendants intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members." *Id.* ¶ 137. In the Ninth Circuit, allegations that a system was implemented by a defendant to record conversations are sufficient to demonstrate intent. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (Finding that allegations that platform supplied

certain code for the collection of user's data to intercept electronic communications were sufficient at the motion-to-dismiss stage to allege the intent element of users' claim against platform); *James v. Walt Disney Co.*, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) (Finding that it could be "reasonably inferred" that defendant intended to intercept information because it contracted with a third-party software to collect that information) (dismissed on separate issue of third-party liability). Notably, "Plaintiff and Class members did not authorize Defendants to acquire the content of their communications for purposes of invading Plaintiff's and Class members' privacy through the LinkedIn Insight Tag and Google tracking technologies. Plaintiff and Class members had a reasonable expectation that Defendants would not intercept or assist in the interception of their private and confidential information would their knowledge or consent." *Id.* ¶ 146. Therefore, Plaintiff sufficiently alleges that Defendants had an intent to aid LinkedIn and Google intercept Plaintiff's protected information.

Defendant argues that because Defendant used the tools to "enhance advertising," it cannot also be said to have facilitated unlawful interception. But this is a false dichotomy. The intent to facilitate LinkedIn's and Google's conduct can coexist with the intent to derive advertising value. In fact, they are inextricably linked—because the advertising value Defendants sought came from enabling the very interception at issue.

That is precisely the point of Plaintiff Rusow's allegations: Defendant entered into a relationship with third-party interceptors, knowing they would extract user data unlawfully, and enabled it because the resulting insights were financially valuable. That is facilitation with purpose, not incidental consequence.

Defendants' reliance on *Smith v. YETI* is misguided. The court in *Smith* held that the plaintiff did not allege sufficient information that "Defendant's use of Ayden's fraud prevention services alone [allowed] Defendant [to know that] Ayden's services were based on its allegedly illegal interception and storage of financial information, collected during Ayden's online processing of customers' purchases." *Smith*, 754 F.Supp.3d at 943. Unlike here, Yeti had a lawful basis to send consumers' financial information to Ayden—to utilize Ayden's payment processing and fraud prevention services. Here, there is no lawful basis for Defendants to send Plaintiff

Rusow's PHI and PII to LinkedIn and Google. *See R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 886 (C.D. Cal 2014) (Holding that Defendant unlawfully disclosed consumers' PII and PHI to third parties, such as Meta Pixel and Google.). Unlike *Yeti*, "Defendants intercepted Plaintiff's and Class members' electronic communications through the LinkedIn Insight Tag and Google tracking technologies, which tracked, stored, and *unlawfully* disclosed Plaintiff Rusow's and Class members' private and confidential information to third parties, such as LinkedIn and Google." FAC ¶ 138.

## IV. PLAINTIFF RUSOW STATES A CLAIM FOR INVASION OF PRIVACY

Defendants argue that Plaintiff Rusow's invasion of privacy claim fails because (1) Plaintiff "does not have a reasonable expectation of privacy in the alleged collected information," and (2) Plaintiffs "failes to allege facts that satisfy the highly offensive standard." MTD at 18-19. That is wrong.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiff Rusow satisfies both elements. Moreover, "[i]t is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024).

### A. <u>Plaintiff Rusow Had a Reasonable Expectation of Privacy</u>

Defendants state that "the Ninth Circuit has held that a web user does not have a reasonable expectation of privacy when an applicable privacy policy expressly discloses that the data at issue is subject to collection." MTD at 19 (internal citation omitted). This is incorrect. Plaintiff does have a reasonable expectation of privacy in her private, personal health information. Defendants failed to provide an applicable privacy policy that expressly discloses that they share Plaintiff's PII and PHI to LinkedIn and Google. Once again, Defendants attempt to rely on LinkedIn's privacy policy to claim that Plaintiff knew and consented to the use of tracking technologies. MTD at 19. This argument is far-fetched. Mere agreement to LinkedIn's generalized privacy policy – buried in

pages of legalese and never presented in the context of Defendants' website – did not equate to informed knowing consent to the egregious violations of privacy that occurred here by the disclosure of private confidential medical information. As mentioned above, LinkedIn's privacy policy does not establish that Plaintiff consented to Defendants' unlawful disclosure of her health data. *See In Re Meta Pixel*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2014) (finding that the plaintiffs had a reasonable expectation of privacy "in their communications with their medical providers" and noting that the defendant's argument that the Facebook privacy policy detailing Facebook's data collection and tracking practices "support[ed], rather than diminish[ed], the likelihood that a user has an objectively reasonable expectation of privacy" over health data since the privacy policy did not "adequately disclose that Meta collects" health data).

**B. <u>Plaintiff Rusow Alleges Facts That Satisfy the "Highly Offensive" Standard</u>**

Whether a digital intrusion is "highly offensive" is a fact-specific inquiry that cannot be resolved at the pleading state unless the complaint fails to allege any intrusion beyond routine data collection. *Carbon Health*, 2024 WL 4369675, at *12. Only where allegations reveal no reasonable expectation of privacy or only an insubstantial impact on privacy interests should the question of whether an alleged invasion of privacy is serious or highly offensive be decided as a matter of law. *Id.* As discussed above, Plaintiff has a significant privacy interest in her medical information, and even more so for information related to cosmetic medical treatments which are inherently personal and involve intimate details about an individual's health, history, physical appearance, and struggles with body image. This Court should follow the decisions of numerous other courts that have refused to dismiss complaints alleging invasion of privacy based on nonconsensual disclosures of medical information. *Id*. at *13; *see also Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Ambry Genetics Data Breach Litig.*, 567 F.Supp.3d 1130, 1143 (C.D. Cal. 2021) (even negligent disclosure of medical information is "more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi v. Inmediata Health Group Corp.*, 501 F.Supp.3d 898, 926 (S.D. Cal. 2020) (disclosure of medical information "constitutes a serious invasion of

privacy"); see *also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 531 (N.D. Cal. 2021) (surreptitious collection of data contrary to representations is highly offensive).

Defendants do not cite a single case to support the proposition that unauthorized disclosure of medical information is not a serious invasion of privacy. Rather, SkinSpirit relies on unpersuasive case law not in line with the facts here. Five of the cases SkinSpirit relies on do not even involve the disclosure of medical information. See *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1091 (N.D. Cal. 2022) (did not involve the disclosure of detailed medical information, but rather involved data showing how long users used a mobile app; *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968 (N.D. Cal. 2014) (involved neither an invasion of privacy claim under the California Constitution nor the disclosure of medical information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (did not involve the disclosure of medical information); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (did not involve disclosure of detailed health information, but rather one's LinkedIn browsing history); *Williams v. DDR Media, LLC*. No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) (did not involve the disclosure of medical information). Defendants attempt to minimize the seriousness of their egregious behavior by analogizing to cases involving disclosures of device data and browsing history—nowhere near as private as the medical information at issue here.

Again, Defendants inaccurately rely on *Smith,* 754 F. Supp 3d at 933 to argue that collective of highly sensitive healthcare information is "routine commercial behavior." MTD at 20. However, as discussed *supra*, the alleged disclosures in *Yeti* involved routine payment information being sent to payment processing company –not the highly sensitive medical information at issue here. *See Id*. at 938. Health information is much more sensitive given that it contains detailed information, including the state the patient is booking the appointment in, the type of procedure they were interested in, the specific procedure they wanted to have completed, the reason for the procedure, the provider they wished to see, the day, and time for the patient's appointment. FAC ¶ 81. Moreover, the alleged disclosures here involve "communications made in the context of a patient-medical provider relationship." *See Meta Pixel*, 647 F. Supp. 3d at 800. Given the medical nature of the data at issue, this case is readily distinguishable from cases

assessing the reasonable expectation of privacy of general online communications. *Id.* Plaintiff has adequately pled that she had an objectively reasonable expectation of privacy over the health data that Defendants disclosed to LinkedIn and Google.

## V. PLAINTIFFS STATE A CLAIM UNDER THE ECPA

### A. Defendants Committed a Tort When They Intercepted And Disclosed Information Related to Plaintiffs' Medical Appointments

Defendants argue that Plaintiffs fail to invoke the crime-tort exception "based on SkinSpirit's alleged violation of the CMIA, HIPAA, and the FTC Act." MTD at 22. However, Defendants ignore Plaintiffs' allegation that "Defendants intentionally intercepted or intentionally assisted in the interception of the contents of Plaintiffs' and Class members' electronic communications for the purpose of committing a…tortious action in violation of the…laws of the United States…***namely, invasion of privacy***." FAC ¶ 142 (emphasis added). Plaintiffs also specifically allege that "[s]uch disclosures are an invasion of privacy, lead to harassing targeted advertising, and violate…state law." *Id.* ¶ 93. By intercepting and disclosing Plaintiffs' confidential communications through the tracking technologies, Defendants intentionally committed the tort of invasion of privacy.

### B. Defendants Intercepted Plaintiffs' Communications For A Tortious Purpose

Defendants argue that Plaintiffs fail to allege that Defendants "used the Google or LinkedIn tracking technologies on the Website for the purpose of committing any…crime or tort[.]" MTD at 24. This ignores Plaintiffs' allegations.

The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted). Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort laws, namely, invasion of privacy. Courts within the Ninth Circuit have found a claim for invasion of privacy to be sufficient to trigger the crime-tort exception. *See R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 901 (C.D. Cal. May 9, 2024) ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state privacy claims."); *Brown v.*

*Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (finding the crime-tort exception applied because plaintiffs had "adequately alleged that [defendants'] association of their data with preexisting user profiles violated state law, including…invasion of privacy."); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) ("Because Defendant's actions are allegedly tortious, the 'one-party consent exemption' does not apply when the party acts for the purpose of committing a tort."). The in-circuit authority relied upon by Defendants is distinguishable, as the *Saedi* court found that the plaintiffs "failed to sufficiently state a claim for intrusion upon seclusion. This, therefore, cannot serve as the basis for the Crime-Tort Exception to apply." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025). Similarly, in *Williams v. TMC Health*, the court found the plaintiffs' allegations to be insufficient, as is was unclear "what 'content'…was 'disclosed' or 'used.'" 2024 WL 4364150, at *5 (D.Az. Sept. 30, 2024).

### C. Defendants' Disclosure of Plaintiffs' Confidential Information is Independent From the Interception

Finally, Defendants argue that Plaintiffs ECPA claim fails because Plaintiffs "have not alleged that SkinSpirit engaged in any crime or tort that arose from acts secondary to SkinSpirit's alleged use of Google's and LinkedIn's tracking technologies[.]" MTD at 25. This misconstrues Plaintiffs' allegations. Defendants did not invade Plaintiffs privacy by merely intercepting their communications, but by *disclosing* the contents of their confidential communications to LinkedIn and Google. FAC ¶ 140. Such allegations are sufficient to state a claim under the ECPA. *See Walgreen Co.*, 733 F.Supp.3d at 901 (finding invasion of privacy sufficient to plead tortious intent); *Capital One Fin. Corp.*, 768 F.Supp.3d at 1053 (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated: July 1, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Sarah N. Westcot_*
Sarah N. Westcot

Sarah N. Westcot (SBN 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*Counsel for Plaintiffs*