Scott S. Humphreys (SBN 298021)
humphreyss@ballardspahr.com
Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

J. Matthew Thornton (*pro hac vice*)
thorntonj@ballardspahr.com
**BALLARD SPAHR LLP**
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.371.3211
Facsimile: 612.371.3207

Gregory P. Szewczyk (*pro hac vice*)
szewczykg@ballardspahr.com
Alexia C. Chapman (*pro hac vice*)
chapmana@ballardspahr.com
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.299.7354
Facsimile: 303.296.3956

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOURTNEY RUSOW and T.S. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKINSPIRIT ESSENTIAL LLC, SKINSPIRIT HOLDINGS LLC, and DEAN VISTNES M.D., INC.<br><br>Defendants. | Case No. 3:24-cv-09317-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>Hearing:</u>**<br>Judge: Hon. Charles R. Breyer<br>Dept: Courtroom 6, 17th Floor<br>Date: August 1, 2025<br>Time: 10:00 a.m. |

## TABLE OF CONTENTS


I. Plaintiffs Have Abandoned Their Defective Health-Specific Privacy Claims ..... 1

II. Plaintiffs Fail to Justify Their Impermissible Use of Group Pleading ..... 1

III. Personal Jurisdiction Is Lacking Over SkinSpirit Holdings. ..... 3

IV. Plaintiff Rusow Has Not Stated a Viable CIPA Claim. ..... 5

A. Rusow's CIPA Claim Is Time Barred ..... 5

B. Rusow Has Failed to State a Claim for Aiding and Abetting a CIPA Violation ..... 7

V. Rusow Fails to Allege a Viable Claim for Invasion of Privacy. ..... 10

VI. Plaintiffs' Newfound ECPA Theory Fails Under The Law. ..... 13

Conclusion ..... 15

# TABLE OF AUTHORITIES

**Cases** **Page No.**


*Allen v. Quicken Loans*,
No. 17-cv-12352 (ES) (MAH), 2018 WL 5874088 (D.N.J. Nov. 9, 2018) .......................... 15

*BBA Aviation PLC v. Superior Ct.*,
190 Cal. App. 4th 421 (2010)..........................................................................................3

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)...........................................................................11, 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......................................................................... 14

*Cody v. Boscov's, Inc.*,
No. 8:22-cv-01434, 2024 WL 2228973 (C.D. Cal. May 6, 2024) ..........................................7

*Cody v. Lacoste USA, Inc.*,
No. 8:23-cv-00235, 2024 WL 2228971 (C.D. Cal. May 2, 2024) ..........................................7

*Cohen v. Casper Sleep Inc.*,
No. 17-cv-9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) ............................................ 15

*Dawson v. One Call Medical*,
No. 3:20-cv-01188, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021)........................................3

*Doe v. Fullstory, Inc.*
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......................................................................... 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..........................................................................10

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 3:23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)........................................2

*Doe v. Regents of the Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ............................................................................12

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
153 Cal. App. 4th 1308 (2007)........................................................................................ 5

*Friedman v. Zimmer*,
No. 2:15-cv-00502, 2015 WL 6164787 (C.D. Cal. Jul. 10, 2015).......................................1, 2

*Gaige v. Exer Holding Co.*,
No. 2:24-cv-06099, 2025 WL 559719 (C.D. Cal. Feb. 30, 2025)........................................... 7

*Heller v. NBCUniversal, Inc.*,
No. 2:15-cv-09631, 2016 WL 6573985 (C.D. Cal. Mar. 30, 2016)........................................2

*In re Ambry Genetics*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)...........................................................................12

*Informix Software, Inc. v. Oracle Corp.*,
927 F. Supp. 1283 (N.D. Cal. 1996) ...............................................................................2

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................10

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023).................... 5, 6

*J.C. v. Catholic Health Sys. Inc.*,
No. 1:23-cv-00796, 2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) .................... 6

*Jurgens v. Build.com, Inc.*,
No. 4:17-cv-00783, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017).................... 6, 7

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014)....................4

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014) ....................1

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................15

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
No. 5:22-cv-01057, 2022 WL 18228249 (C.D. Cal. Nov. 29, 2022)....................13

*Okash v. Essentia Health*,
No. 23-cv-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................10

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. July 24, 2024) .................... 15

*Saedi v. SPD Swiss Diagnostics GmbH d/b/a Clearblue et al.*,
No. 2:24-cv-06525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025).................... 5, 6

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .................... 14

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................9, 10

*Sonora Diamond Corp. v. Superior Ct.*,
83 Cal. App. 4th 523 (2000)....................3

*St. Aubin v. Carbon Health Techs. Inc.*,
No. 24-cv-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................12, 13

*Stasi v. Inmediata Health Grp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ....................12

*Sussman v. Am. Broadcasting Cos.*,
186 F.3d 1200 (9th Cir. 1999) .................... 14

*Tovar v. City of San Jose*,
No. 5:21-cv-02497-EJD, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021)....................1

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ........ 9

*Valenzuela v. Nationwide Mut. Ins. Co.*,
No. 16-cv-001598, 686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 8

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
724 F. Supp. 3d 921 (N.D. Cal. 2024) ........ 5

Plaintiffs' Opposition underscores the fundamental flaws in their First Amended Complaint ("FAC") and confirms that dismissal is warranted. Plaintiffs do not dispute—or even respond to—SkinSpirit's arguments seeking dismissal of their health-related privacy claims, and they explicitly abandon their CMIA and MHMDA claims. They fail to identify any allegations in the FAC tying SkinSpirit Holdings or the Vistnes Entity to the conduct at issue and attempt to defend their improper use of group pleading based on a speculative theory that discovery might eventually justify it—an argument courts have repeatedly rejected. Plaintiffs likewise fail to establish that personal jurisdiction exists over SkinSpirit Holdings, relying instead on mischaracterizations of jurisdictional facts and the law to sidestep their burden.

Plaintiffs' last-ditch effort to salvage their ECPA claim by repackaging their deficient invasion of privacy allegations fares no better. Nor does Plaintiff Rusow's lack luster attempt to save her time-barred and meritless CIPA claim. Because further amendment would be futile, the Court should dismiss Plaintiffs' claims in their entirety, with prejudice.

## I. Plaintiffs Have Abandoned Their Defective Health-Specific Privacy Claims.

Plaintiffs did not rebut or raise any opposition to SkinSpirit's request for the dismissal of their health-related claims or theories, including their claims under the CMIA (Count III) and MHMDA (Count V). The Court should dismiss Plaintiffs' abandoned claims with prejudice. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) ("[W]here a plaintiff 'simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.'" (internal citation omitted)); *Tovar v. City of San Jose*, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (plaintiffs' failure to respond to defendant's request for dismissal of certain claims constituted concession that claims should be dismissed).

## II. Plaintiffs Fail to Justify Their Impermissible Use of Group Pleading.

Plaintiffs do not dispute that group pleading is, as a general matter, improper. *See* Opp. at 3. Instead, they argue that they should be allowed to engage in group pleading here because, without discovery, they have "no reasonable means of determining the roles that [each defendant] played' in assisting with LinkedIn's and Google's interceptions." *Id.* at 3–4 (quoting *Friedman v. Zimmer*, 2015 WL 6164787, at *2 (C.D. Cal. Jul. 10, 2015)). Plaintiffs' argument fails.

First, Plaintiffs' argument is premised on an alleged asymmetry of information that almost always exists pre-discovery. Thus, to adopt their blanket exception here would effectively eviscerate the prohibition on group pleading and undermine the purposes of Rule 8's pleading requirements. *See* Mot. at 5–6. It would also condone what amounts to presumptive veil piercing.

Second, the case on which Plaintiffs primarily rely (*Friedman*) involved a type of group pleading that is categorically different from the one Plaintiffs employ in the FAC. Unlike in this case, the complaint in *Friedman* was chock-full of defendant-specific allegations. *See* Case No. 2:15-cv-00502, Dkt. 17. The defendants raised a "group pleading" objection in that case not because the plaintiff had attempted to attribute the conduct of one defendant to others based solely on those entities' ownership interests or affiliations, as Plaintiffs do here, but rather because the plaintiff had failed to sufficiently identify each defendant's "specific infringing conduct." *See Friedman*, 2015 WL 6164787, at *2; *see also Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (addressing similar objections).

In cases like this, where plaintiffs seek to group defendants together based solely on ownership or affiliation, courts have held that absent allegations establishing those entities "have the same exact role vis-à-vis the website . . . that [the primary defendant] does," group pleading is improper. *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *6 (N.D. Cal. Apr. 11, 2024). The FAC is devoid of any such allegations.

Third, Plaintiffs have failed to meaningfully distinguish this case from the numerous cases Defendants cited in their Motion. Mot. at 5–6. Plaintiffs argue in a parenthetical that *Kaiser Foundation Health* is distinguishable because, in that case, the website's privacy policy specified that only one of the defendants owned and operated the website. Opp. at 4. They claim that, here, the Website's terms of use establish that SkinSpirit Holdings and the Vistnes Entity owned or operated the Website "in some part," justifying their use of group pleading.

This argument is deeply flawed. To start, Plaintiffs did not reference the Website's Terms of Use in their FAC and, thus, to interject them here is improper. *See Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1287 (N.D. Cal. 1996). In any event, their argument is not supported by a plain reading of the Terms of Use, pertinent portions of which Plaintiffs failed to

attach to their brief.[1] Nowhere in the Terms of Use does SkinSpirit purport to attribute ownership or control of its Website to one of its affiliates or subsidiaries. To the contrary, the Terms expressly state that "[t]he owner of the Website"—singular—is "based in the State of Washington," a clear reference to SkinSpirit Essential. Further, because the Terms govern all "products or services offered on or through . . . any other website, product or feature that may link to this Policy," it is logical—and, indeed, standard business practice—that the Terms would apply to the entire SkinSpirit corporate family even though the Website is owned and operated only by SkinSpirit Essential.

Courts have recognized the commonsense reason for this widespread business practice and have found that it does not amount to an admission that those entities collectively own or control the website. *See BBA Aviation PLC v. Superior Ct.*, 190 Cal. App. 4th 421, 432 (2010) (holding that "[t]he use of 'we' or 'the Company' or 'BBA' does not prove that BBA and Ontic were a single entity in practice and does not turn a holding company into an operating company"); *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 550 (2000) (holding that "the use of 'we' or 'the Company' or 'Diamond'" in company documents "did not prove that Diamond and Sonora Mining were, in actual practice, a single entity.").

Moreover, Plaintiffs' argument that they are entitled to "lump together" multiple entities as one just because those entities purportedly "lump[ed] themselves together" is effectively the same argument that was raised and rejected in *Dawson v. One Call Medical*. 2021 WL 5513516, at *2 (S.D. Cal. Sept. 21, 2021) (defendants' self-lumping based on common "ownership, overlapping officers, and shared offices" is "not enough to make a defendant liable for the acts of a separate limited liability entity").

Plaintiffs' claims against SkinSpirit Holdings and the Vistnes Entity should be dismissed.

### III. Personal Jurisdiction Is Lacking Over SkinSpirit Holdings.

Plaintiffs do not dispute that SkinSpirit Holdings is a Delaware LLC or that it maintains its principal place of business in Washington. Nor do they point to any facts in the FAC that would

[1] A complete copy of the Website's terms of use are available at https://www.skinspirit.com/about/terms-of-use.

support a finding that SkinSpirit Holdings has systematic and continuous contacts with California sufficient to render it "at home" there. Thus, Plaintiffs have failed to satisfy their burden of establishing that this Court has general jurisdiction over SkinSpirit Holdings.

Plaintiffs have also failed to identify facts sufficient to support specific jurisdiction, effectively conceding that the only alleged connection between SkinSpirit Holdings and the at-issue conduct is found in Paragraph 12 of the FAC, which merely establishes that SkinSpirit Holdings is the parent of SkinSpirit Essential. *See* Opp. at 6. Despite conceding that jurisdiction cannot be based on this parent-subsidiary relationship alone, *id.* at 5, Plaintiffs make no effort to address—let alone identify facts sufficient to refute—SkinSpirit's argument that neither the alter ego nor agency doctrines apply here. *See* Mot. at 7–9. This precludes Plaintiffs from relying on the contacts of SkinSpirit Holdings's subsidiary to establish sufficient contacts with California.

Plaintiffs focus, instead, on trying to discredit two of the statements in SkinSpirit's founder's declaration. Opp. at 5–6. Plaintiffs first argue that the Website's terms of use contradict Ms. Heublein's statement that SkinSpirit Holdings "does not publish, own, control or operate any website, including www.skinspirit.com (the 'Website')." This argument is baseless. *See supra* pp. 2–3. But even if the Website's terms were to be construed as Plaintiffs suggest, they admit it establishes, at most, that SkinSpirit Holdings owns and operates the Website "in some part," Opp. at 6, which is still not sufficient to establish that SkinSpirit Holdings's involvement has any connection to either Plaintiffs' claims or California, as required to establish specific jurisdiction.

Plaintiffs next argue that Ms. Heublein's declaration inaccurately states that SkinSpirit Holdings does not have employees in California. Opp. at 5–6. This argument fails for at least two reasons. First, as one of SkinSpirit's founders, Ms. Heublein's title—whether as officer or manager—does not necessarily make Ms. Heublein an employee. And second, whether Ms. Heublein was, at any relevant time, an employee of SkinSpirit Holdings and a California resident is irrelevant because "[a]n officer of a corporation is not the corporation, even when the officer acts on the corporation's behalf." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014). In other words, Ms. Heublein's residence has no bearing on whether this Court has jurisdiction over SkinSpirit Holdings, regardless of her title or employment status.

In a footnote, Plaintiffs request jurisdictional discovery. The Court should reject Plaintiffs' request because they have come nowhere close to establishing that there is a "reasonable probability" such discovery will support their bid to hail SkinSpirit Holdings into California court for the alleged actions of its subsidiary. *See, e.g.*, *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 947 (N.D. Cal. 2024) (denying request for jurisdiction discovery).

**IV. Plaintiff Rusow Has Not Stated a Viable CIPA Claim.**

**A. Rusow's CIPA Claim Is Time Barred.**

Rusow argues that SkinSpirit "may only raise a time-barred claim on a motion to dismiss 'if the running of the statute is apparent on the face of the complaint.'" Opp. at 6. Rusow does not dispute that her CIPA claim arose on May 12, 2023, *see* FAC ¶ 7, or that she filed suit more than a year later. Thus, on the face of the FAC, her claim is time barred.

Rusow also does not dispute that invoking the delayed discovery exception requires her to "specifically plead facts" sufficient to establish "(1) the time and manner of discovery ***and*** (2) the inability to have made earlier discovery despite reasonable diligence." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007) (emphasis in original) (cited in Opp. at 7). "[C]onclusory allegations" will not suffice. *Id.* Rusow has not satisfied her pleading burden.

Rusow argues that the delayed discovery doctrine "raise[s] factual issues that are not appropriately resolved at the pleading stage." Opp. at 6. Yet, to support this argument, Rusow cites *Saedi*—a case in which the court held ***at the pleading stage***, under a substantially similar set of facts, that the plaintiff had failed to meet her burden of establishing tolling. *Id.* (citing *Saedi v. SPD Swiss Diagnostics GmbH d/b/a Clearblue et al.*, 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025)).

Rusow argues, in the alternative, that the allegations in paragraphs 107–114 of the FAC are sufficient to invoke the delayed discovery doctrine. Opp. at 7. But those are all boilerplate tolling allegations; they fail to plead any facts that could establish the time and manner in which Rusow discovered her injury or her inability to discover it earlier despite reasonable diligence—a critical omission given that the doctrine "only delays accrual until the plaintiff has, or should have, inquiry notice" of her injury. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023).

Rusow contends it was enough for her to generically allege that she could not have reasonably

discovered her alleged injury until "shortly before the filing of the initial complaint in this matter." Opp. at 7 (citing FAC ¶ 114). *Saedi* squarely refutes Rusow's contention. The *Saedi* court held that where, as here, the allegations establish that the plaintiff visited a website with "general knowledge" that it would be collecting her information,[2] and subsequently saw ads indicating such information may have been disclosed, the plaintiff must allege, at a minimum, the date on which they saw the ad to invoke the delayed discovery rule. *See* 2025 WL 1141168 at *10 ("[E]ven assuming that Plaintiff did not have inquiry notice [of her claim] at the exact moment she visited the Website, she surely had inquiry notice when she began seeing ads."). Here, Rusow alleges that after visiting the Website she "received advertisements," FAC ¶ 7, but she does not allege when. Thus, she cannot claim the benefit of tolling.

Further undermining Rusow's bid to invoke the delayed discovery rule is her admission in the FAC that when she signed up for a LinkedIn account she agreed to the terms of LinkedIn's privacy policy. *See* FAC ¶ 38. Rusow argues the privacy policy's terms are not specific enough to establish that she consented to the use of LinkedIn's tracking technology on the Website. But, as related to tolling, SkinSpirit does not need to establish consent. It need only establish that Rusow had inquiry notice that LinkedIn may collect her data when she visited the Website, which it has sufficiently done. *See Javier*, 649 F. Supp. 3d at 902.

Rusow next argues that the Court should accept her boilerplate tolling allegations because no reasonable consumer could have discovered that the Website used the tracking technologies. Setting aside that the FAC claims to provide evidence that the Website used such technologies from "publicly available" developer tools, as well as Rusow's disingenuous argument that using such tools is somehow outside a reasonable user's competency,[3] at least two courts have held that "a plaintiff's lack of technical expertise cannot toll a statute of limitations." *J.C. v. Catholic Health Sys. Inc.*, 2024 WL 5136236, at *9 (W.D.N.Y. Aug. 29, 2024); *Jurgens v. Build.com, Inc.*, 2017 WL 5277679, at *7

[2] *Compare* FAC ¶ 176, *with Saedi*, 2025 WL 1141168 at *10 (imputing general knowledge to the plaintiff based on similar allegations)

[3] There are numerous publicly available and easy-to-use tools for determining what tracking technologies are on a particular website. *See, e.g.*, www.ghostery.com.

(E.D. Mo. Nov. 13, 2017).

Rusow's reliance on *Gaige* and *Fullstory* is misplaced. In *Gaige*, the defendant allegedly took affirmative steps to fraudulently conceal tracking technology by "deliberately design[ing]" them "to operate without users' knowledge or consent." 2025 WL 559719, at *4 (C.D. Cal. Feb. 30, 2025). No such allegations are present here, as SkinSpirit did not design the technologies at issue—Google and LinkedIn did. And in *FullStory*, the plaintiff did not allege that after visiting the website she saw ads that would have put her on inquiry notice of her alleged injury, *see* 712 F. Supp. 3d 1244, 1256 n.8 (N.D. Cal. 2024), unlike the allegations in this case, which are closer to those in *Saedi*.

**B. Rusow Has Failed to State a Claim for Aiding and Abetting a CIPA Violation.**

Rusow does not dispute that she must allege facts sufficient to establish that LinkedIn or Google violated CIPA to state a derivative aiding and abetting claim against SkinSpirit. She argues, instead, that the FAC is "riddled with allegations" sufficient satisfy her pleading burden. Opp. at 8. Tellingly, Rusow cites not a single one—because, conclusory allegations aside, none exist. Accordingly, as the court held in *Boscov's* and *Lacoste*—opinions Rusow neither attempts to dispute nor distinguish—her aiding and abetting claim fails.

Rusow's claim fails for the independent reason that she acknowledges in the FAC that she is subject to LinkedIn's privacy policy, which defeats any contention that LinkedIn violated CIPA. *See* Mot. at 14–15. In response, Rusow argues that LinkedIn's privacy policy covers only the **lawful** collection of personal data, and that LinkedIn's collection here was **unlawful**. But that argument is both conclusory and circular: Rusow claims LinkedIn's collection was unlawful because it resulted from SkinSpirit's allegedly unlawful disclosure, and she simultaneously claims SkinSpirit's disclosure was unlawful because it allegedly aided and abetted LinkedIn's unlawful collection. Such circular reasoning cannot support a plausible CIPA claim and should be rejected.

Rusow does not dispute that, even if she had adequately alleged a direct CIPA violation by LinkedIn or Google, she must also allege facts sufficient to establish that SkinSpirit implemented the tracking technologies on its Website with knowledge of Google's or LinkedIn's criminal acts. She claims she has done that, citing paragraphs 7, 30, 36, 59–60, 72, 82, 111, and 155 of the FAC. But none of those allegations actually support her assertion, and some even directly contradict it.

*See* FAC ¶ 30 (reflecting LinkedIn's marketing of the tool's lawful business benefits).

Rusow claims, next, that she "specifically allege[d]" SkinSpirit "had the ability to monitor, select, and adjust the types of data being collected and transmitted," which "supports an inference of knowledge." Again, no such "specific" allegations exist in the FAC. The FAC generically alleges, at most, that Google's technology "enables" any company or advertiser using it "to customize the processing of the data, such as applying filters." FAC ¶ 60. Generic allegations about the purported capabilities of a third party's tracking technology are not enough to plausibly support a criminal aiding and abetting violation of CIPA. *See* Mot. at 16.

Rusow argues (albeit in passing and under the wrong section of her brief) that SkinSpirit's reliance on "*YETI*, *Graham*, and *Licea v. Finish Line* is misplaced" because those cases did not involve allegations that the defendant intercepted the same type of data at issue here. Opp. at 9. However, SkinSpirit cited those cases as support for the general legal rule applicable to Rusow's aiding and abetting claim and thus any purported differences in the facts are irrelevant.

Rusow's attempt to construe this case as factually similar to *Valenzuela* should be rejected. In that case, the plaintiff alleged that Nationwide paid a third party (Akamai) to "embed code" into the website that would "enable[] Akamai to secretly intercept in real time, eavesdrop upon, and store transcripts" of messages sent via a chat feature. 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023). Here, in contrast, Rusow alleges that SkinSpirit itself incorporated publicly available code touted by LinkedIn and Google as providing legitimate business benefits, not that SkinSpirit paid to have either of those entities add website code specifically designed to secretly record conversations. In any event, the *Valenzuela* court did not reach the issue of whether the plaintiff had pled facts sufficient to satisfy the separate knowledge or intent elements and thus its holding has no value here.

Rusow also improperly conflates the intent requirement applicable to claims asserting direct liability under the federal Wiretap Act with the intent requirement applicable to derivative liability claims for aiding and abetting a CIPA violation, arguing they are "governed by the same standard." Opp. at 10. While courts have held that the analysis of ***direct liability*** claims under the federal

Wiretap Act and CIPA are in many respects the same,[4] the federal Wiretap Act does not have an express aiding and abetting provision similar to CIPA's. Thus, cases interpreting the requirements of direct liability under Wiretap Act provide little, if any, guidance here.

As made clear by the cases that actually do address claims under CIPA's aiding and abetting provision, it is not enough that a defendant intentionally installed tracking code on its website (*i.e.*, that it was not the result of an accident or mistake), contrary to what Rusow suggests. Rather, a plaintiff asserting a CIPA aiding and abetting claim must plead that the defendant installed the code "***in order to*** have the third party perform acts that violate the statute." Mot. at 15 (quoting *YETI Coolers*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis in original)). Conclusory allegations of intent do not meet this standard, nor do allegations that a defendant installed tracking technologies on its website to help monetize the data for targeted advertising or for other legitimate commercial purposes, *see* Mot. at 18, which is all that is alleged in the FAC.

To satisfy the intent requirement of her aiding and abetting claim, Rusow needed to actually allege that, at the time SkinSpirit implemented the tracking technologies on its Website, it knew about and intended to facilitate LinkedIn's or Google's violation of CIPA. *See id.* Attempting to distract from the absence of such allegations, Rusow formulates a strawman argument—claiming that SkinSpirit is taking the position that Rusow's inclusion of allegations that the tracking tools at issue were used to "enhance advertising" precludes her from establishing that SkinSpirit "facilitated unlawful interception." Opp. at 11. That is not at all what SkinSpirit is arguing. SkinSpirit does not dispute that a defendant can, in theory, have both a non-criminal and criminal purpose for implementing tracking technologies on its website. But here, Rusow—who was alerted of this shortcoming by SkinSpirit's initial motion and has already had an opportunity to amend—alleges only that SkinSpirit implemented the tracking code on its Website for non-criminal purposes, not to knowingly aid and abet a third party's violation of CIPA. This defeats her claim.

Rusow also argues that intent can be satisfied where a defendant is merely "aware of the

[4] The statement Rusow references in *Underhill* was made in the context of interpreting a direct liability claim under CIPA, not an aiding and abetting claim. It is based on cases equivocate "[that] section of [CIPA]"—i.e., the direct liability section—to "its federal counterpart." *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

defect causing interception and takes no remedial action." Opp. at 10. Again, that rule is derived from cases addressing direct liability claims under the federal Wiretap Act, not derivative claims under CIPA. Regardless, Rusow has not alleged here that SkinSpirit was aware that its use of tracking technologies on the Website was aiding and abetting Google's or LinkedIn's purported violation of CIPA and still took no remedial action, and thus Rusow's argument still fails.

The cases Rusow cites to support her intent argument are inapposite. *Doe v. Meta Platforms, Inc.* and *R.C. v. Walgreen Co*. both addressed the intent requirement applicable to a direct violation of CIPA, not an aiding and abetting claim. *James v. Walt Disney Co.* is distinguishable because, unlike in this case, the plaintiff alleged that "Disney entered into a 'contractual arrangement' with Oracle 'to intercept communications between [Disney] and visitors to the [ESPN.com] website.'" 701 F. Supp. 3d 942, 946 (N.D. Cal. 2023). That contractual connection between Walt Disney and Oracle was enough to satisfy the court that Walt Disney incorporated the tracking technologies on its website to aid and abet Oracle's allegedly unlawful interception of customer data. No contractual connection is alleged between SkinSpirit and Google or LinkedIn here.

SkinSpirit cited numerous cases in its Motion to refute the notion that merely alleging that a defendant installed tracking technologies on its Website is enough to establish intent to aid and abet a CIPA violation, including *YETI*. Rusow claims *YETI* is distinguishable because, in that case, "Yeti had a lawful basis to send consumers' financial information to Ayden." Opp. at 11. But that's not the reason the *YETI* court dismissed plaintiffs' CIPA claim. The *YETI* court dismissed plaintiff's claim because, like in this case, the plaintiff alleged merely that the defendant used a third party's tracking technology on its website to intercept consumers' sensitive information and benefited from it. 754 F. Supp. 3d at 943. The court held that those "conclusory allegations [did] not contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute" and dismissed plaintiff's claim. The same result is warranted here.

## V. Rusow Fails to Allege a Viable Claim for Invasion of Privacy.

All of the arguments Rusow raises as grounds for denying SkinSpirit's motion to dismiss her invasion of privacy claim hinge on her ability to identify allegations in the FAC sufficient to

support her self-serving and conclusory assertion in the Opposition that the information the Website intercepted and disclosed to Google and LinkedIn qualifies as "medical information" under the law. SkinSpirit tackled this exact issue head on in the section of its Motion seeking dismissal of Rusow's CMIA claim, *see* Mot. at 11–12, and Rusow never responded to that argument, thereby conceding it. Indeed, ***Rusow has abandoned all of her medical-specific claims***, including not only under the CMIA, but also under the MHMDA and HIPAA. Having conceded that SkinSpirit's use of her information did not violate any of the statutes specifically designed to protect the privacy of medical information, her argument that the same use is a "highly egregious" invasion of privacy lacks all credibility. *See, e.g.*, *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing invasion of privacy claim because plaintiffs "fail[ed] to plead that any medical information was disclosed).

In any event, for the same reasons Rusow's medical-specific claims fail, her invasion of privacy claim fails. Rusow does not allege that she or her cosmetic service provider ever inputted any information about her medical history, treatment, or condition into the Website during or after any of her appointments; she does not allege she used the Website to communicate with her cosmetic service provider; and she does not allege that the Website collected or maintained any of Plaintiffs' historical booking information, such that one might able to discern whether she actually appeared for or was treated by a cosmetic service provider. Rusow also does not allege that SkinSpirit maintained (let alone disclosed to Google or LinkedIn) any of her personally identifiable information, such as her name, address, telephone number, or social security number, together with other information allegedly gathered from her interactions with the Website.

Even if Rusow had pled that SkinSpirit maintained and transmitted personally identifiable information to Google or LinkedIn that could be correlated to her website activity, Rusow's allegations establish that the Website discloses, at most, that she visited the Website and expressed her interest in one of SkinSpirit's predefined set of services by booking an appointment. Under the law, expressing interest in a service by booking an appointment through the provider's website is not the equivalent of a patient providing information about her medical history, treatments, or physical condition to the provider. Mot. at 11 (listing cases). Thus, contrary to what Rusow

represents, the FAC's allegations do not establish that Website intercepted and disclosed her "medical information," or that it disclosed specific "details about [her] health, history, physical appearance, and struggles with body image."

Rusow does not dispute that a major consideration for courts when considering whether a disclosure was highly offensive is the defendant's knowledge at the time of a disclosure. *See* Mot. at 20. Nor does Rusow dispute that that the FAC lacks any plausible support for finding that SkinSpirit believed its use of the tracking technologies on the Website would somehow result in the invasion of a user's privacy. This alone is grounds for dismissal.

Also absent from the FAC are allegations that SkinSpirit made "representations that [Rusow's] sensitive information would not be disclosed," which is just one of the ways in which this case is distinguishable from the *Carbon Health* and *Calhoun* cases Rusow cites. The other cases Rusow relies upon are also materially distinguishable. *Regents of Univ. of California* involved the disclosure of what the court held was properly classified as "medical information," including information the plaintiff entered into a password protected patient portal "relating to her heart issues and high blood pressure." 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023). *In re Ambry Genetics* involved a data breach implicating "names, dates of birth, Ambry account numbers, health insurance information, confidential medical information, medical diagnoses, billing information including addresses, email addresses, and telephone numbers, and Social Security numbers." 567 F. Supp. 3d 1130, 1138 (C.D. Cal. 2021). *Stasi* involved the negligent posting of medical information on Internet, including plaintiff's "name, address, date of birth, gender, and medical claim information including dates of service, diagnosis codes, procedure codes and treating physician." 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020). SkinSpirit's alleged disclosure comes nowhere close to implicating the privacy concerns present in those cases.

*Carbon Health* is non-binding and factually distinguishable from this case in two material ways. First, the website in *Carbon Health* enabled medical patients to not only book appointments with "medical providers to access medical care" but also to "manage their treatment or diagnosis of medical conditions" and to communicate the "reasons for the appointments they are booking," resulting in the transmission of "information regarding the specific symptoms, physical condition,

or course of treatment of an individual." 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024). The booking information at issue in this case does not reflect a cosmetic service providers treatment or diagnosis of Rusow's purported medical conditions.

Second, the plaintiff in *Carbon Health* alleged that the website disclosed medical information together with other personal identifiers that enabled Facebook and Google to identify the patient. *Id.* at *12. Rusow does not allege that SkinSpirit transmitted appointment booking information together with personally identifying information. On the contrary, Rusow alleges that LinkedIn and Google are able to make the connection using information they independently collected and advanced fingerprinting techniques. *See* FAC ¶¶ 36, 53.

*Ojeda* supports dismissal of Rusow's claim. While the court in that case held that the plaintiff had a reasonable expectation of privacy in her vaccination status, it nevertheless rejected the plaintiff's claim that disclosure of that sensitive information—even to colleagues at work—amounted to a highly offensive conduct. 2022 WL 18228249, at *7. The information disclosed in this case is nowhere near as sensitive as vaccination status and its alleged disclosure resulted only in Rusow—and no other person—seeing ads purportedly reflective of her cosmetic interests.

For these reasons, Rusow's invasion of privacy claim fails.

## VI. Plaintiffs' Newfound ECPA Theory Fails Under The Law.

Plaintiffs argue that the FAC alleges facts sufficient to satisfy each element of the statute's crime-tort exception outlined on page 22 of the Motion. Not so.

To start, as evidenced on the face of the FAC, Plaintiffs originally intended to rely primarily on SkinSpirit's alleged violations of the CMIA, HIPAA, and the FTC Act to support their crime-tort exception argument. *See* FAC ¶ 143. Having completely abandoned those claims, Plaintiffs now seek to rely on their invasion of privacy claim instead. Plaintiffs' sole remaining theory, like the others Plaintiffs correctly abandoned, suffers from major deficiencies.

As an initial matter, only Rusow has asserted an invasion of privacy claim against SkinSpirit, and, as set forth above and in the Motion, that claim fails as a matter of law. However, even if Plaintiffs had asserted a plausible invasion of privacy claim, their FAC is still devoid of allegations sufficient to establish that SkinSpirit intercepted their communications "for the purpose of" invading

their privacy. *Contra* FAC ¶¶ 82, 139 (alleging purpose was to "to monetize that data for targeted advertising"). Plaintiffs' assertion that merely alleging an invasion of privacy supports an application of the crime-tort exception was squarely rejected by a case they cite, *Sussman*, in which the Ninth Circuit expressly held that, absent allegations that the defendant acted with the requisite criminal or tortious purpose, the commission of a crime or tort itself does not give rise to liability under the ECPA. 186 F.3d 1200, 1202–03 (9th Cir. 1999).

The other cases Plaintiffs cite are unavailing. In *Shah v. Capital One Fin. Corp.*, the court dismissed the plaintiffs' invasion of privacy claim, and thus it was not one of the crimes or torts held to be sufficient to invoke the crime-tort exception. 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025). Moreover, in determining whether plaintiffs' other alleged crimes or torts sufficed, the *Shah* court disregarded the governing standard set forth in *Sussman* and summarily held, based on a less stringent (and legally unsupported) standard, that "[b]ecause Defendant's actions [we]re allegedly tortious," the crime-tort exception applied. *Id.* at 1053. The court failed to address the critical question of whether the plaintiffs had adequately alleged that ***the purpose*** of the interception was to facilitate the commission of such crimes or torts, let alone that the crime or tort were sufficiently independent of the alleged wiretapping. The same shortcoming is present in *R.C. v. Walgreen Co.* Tellingly, neither of those cases cited *Sussman*.

Plaintiffs' reliance on *Brown v. Google LLC* is also unpersuasive because the court's holding in that case was not based on an express finding that plaintiffs' allegations satisfied the "purpose" element of the crime-tort exception, but rather on the court's rejection of Google's argument that its consent defense precluded the application of the crime-tort exception altogether. *See* 525 F. Supp. 3d 1049, 1064 (N.D. Cal. 2021).

The paucity of caselaw cited in Plaintiffs' brief is not the only deficiency their argument suffers. SkinSpirit cited numerous cases directly undermining Plaintiffs' argument, and Plaintiffs have attempted to distinguish just two (*Saedi* and *TMC Health*), once again based on differing allegations. However, the general rule statements SkinSpirit cited those cases to support—including that the use of tracking technologies to "increase . . . profits through sophisticated and targeted advertising" and for "marking purposes" are "non-criminal, non-tortious purpose[s]," *see* Mot. at

24—are not fact-dependent and thus any factual differences Plaintiffs claim exist are irrelevant

And then there are all of the cases that squarely support SkinSpirit's position, which Plaintiffs did not even attempt to address or distinguish, like: *Cohen* (crime or tort must be the "primary motivation" or "a determinative factor" behind defendant's conduct); *Eisenhower Med. Ctr.* ("allegedly illegal interception" of plaintiffs' information "for Defendant's commercial advantage" does not support crime-tort exception); *Quicken Loans* (crime-tort exception does not apply where "no facts pleaded to indicate that the interceptions in this case were motivated by anything other than Defendants' desire to monetize Plaintiffs' [use of the Quicken Website]"); and *FastMed Urgent Care, P.C.* (rejecting plaintiff's "legal conclusions" about defendant's "alleged purposes for intercepting and disclosing her data to Meta"). Like in those cases, the Court should reject Plaintiffs' attempt to invoke the crime-tort exception here.

Plaintiffs' ECPA claim fails for yet another reason: there is a lack of independence between the invasion of privacy tort on which their crime-tort argument relies and their wiretap claim, both of which are fundamentally based on same interception and disclosure of information. *Compare* FAC ¶¶ 137–39, *with id.* ¶¶ 154–55, 157–58. Attempting to distance themselves from this reality, Plaintiffs argue "Defendants did not invade Plaintiffs privacy by merely intercepting their communications, but by disclosing the contents of their confidential communications to LinkedIn and Google." Opp. at 16. But the false dichotomy Plaintiffs posit has been rejected in numerous cases, including ones Plaintiffs have made no meaningful effort to dispute or distinguish. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d 1072, 1095 (declining to distinguish between the act of *recording* and the act of *transmitting* for purposes of determining whether alleged crime or tort was independent of the alleged wiretapping itself); *Okash*, 2024 WL 1285779, at *4 (defendant's allege violation of "HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta" and thus are not "independent criminal or tortious conduct").

**CONCLUSION**

For the reasons set forth above and in their Motion, Defendants respectfully request that the Court dismiss all of the claims in the FAC, with prejudice, and award them any costs and fees recoverable by law.

DATED: July 15, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ J. Matthew Thornton*
Scott S. Humphreys
Gregory P. Szewczyk
J. Matthew Thornton
Brianna R. Howard
Alexia C. Chapman

*Attorneys for Defendants*