IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KOURTNEY RUSOW, et al.,

          Plaintiffs,

      v.

SKINSPIRIT ESSENTIAL LLC, et al.,

          Defendants.

Case No. 24-cv-09317-CRB

**ORDER ON MOTION TO DISMISS**

This is a putative class action in which Plaintiffs Kourtney Rusow and T.S. allege that Defendants SkinSpirit Essential and two other companies used third-party data-gathering tools to illegally disclose their private information.  SkinSpirit, a skincare company offering online appointments for dermatological consultations and procedures, allegedly allowed tracking software by Google and LinkedIn to lift user information from its website for third-party advertising.  Plaintiffs allege that this use of third-party tracking software violated various federal and state laws protecting consumers' privacy.  Rusow and T.S. bring one claim together—violation of the federal Electronic Communications Privacy Act (ECPA)—and Rusow brings two on her own—violation of the California Invasion of Privacy Act (CIPA) and invasion of privacy under the California Constitution. The other Defendant companies, SkinSpirit Holdings, LLC, and Dean Vistnes, M.D., Inc., move to dismiss all claims against them because of lack of personal jurisdiction or sufficient notice.  All three Defendants assert that Plaintiffs' three claims are legally insufficient.  Because the Court concludes that Rusow adequately pleaded her constitutional claim, and that Plaintiffs did not adequately plead a claim under CIPA, the

United States District Court
Northern District of California

1    ECPA, or any claim against SkinSpirit Holdings or Vistnes, M.D., the Court GRANTS in

2    part and DENIES in part the motion.

3    **I.    BACKGROUND**

4        **A.    The Parties**

5        SkinSpirit Essential, LLC is the primary defendant in this case.  It is a dermatology

6    practice that offers medical and cosmetic appointments on its website in more than a dozen

7    states.  Am. Compl. (dkt. 14) ¶¶ 1–2.  Rusow and T.S. each used SkinSpirit's website to

8    create an account and book appointments with SkinSpirit.  Id. ¶¶ 7, 10.  Plaintiffs allege

9    that SkinSpirit used LinkedIn's and Google's tracking software on its website to facilitate

10   the third parties' interception of confidential information.  Id.

11       Plaintiffs name two other Defendants: SkinSpirit Holdings, LLC, and Dean Vistnes,

12   M.D., Inc. (the Vistnes Company).  SkinSpirit Holdings wholly owns SkinSpirit Essential.

13   Heublein Decl. (dkt. 29-1) ¶ 4.  Plaintiffs allege that SkinSpirit Holdings controls its

14   subsidiary SkinSpirit Essential, and that such control includes the relevant website.  Am.

15   Compl. ¶ 12.  Plaintiffs allege that SkinSpirit's medical director, M. Dean Vistnes,

16   operates the Vistnes Company and that it serves as SkinSpirit's business associate.

17   Id. ¶ 13.

18       SkinSpirit Essential and the Vistnes Company are allegedly domiciled in California.

19   See id. ¶¶ 11, 13.  SkinSpirit Holdings is domiciled in Delaware and Washington.  See

20   Heublein Decl. ¶ 6.

21       **B.    Third-Party Tracking**

22       Plaintiffs allege all of the following.  Every device capable of accessing websites

23   does so through a web browser, such as Google Chrome or Safari.  Am. Compl. ¶ 43.

24   Websites frequently instruct web browsers to send or receive information via HTTP

25   requests.[1]  Id. ¶¶ 44–45.  These HTTP requests can send and receive certain information

26

27   [1]    The Internet is made up of many resources hosted on different servers.  To access
     content on the Internet, the browser must ask these servers for the resources it wants.
28   Browsers quickly send and receive information from many servers this way.  Hypertext
     Transfer Protocol (HTTP) is the command language used for these requests, so they are

United States District Court
Northern District of California

(like appointment booking information) that is necessary for a booking website to function. Id. ¶ 46.  But they can also send and receive information surreptitiously to and from third parties without a user's knowledge if a website so directs.  Id. ¶ 48.

LinkedIn and Google are major players in the advertising industry, making use of targeted advertising to increase their advertising's efficacy.  Id. ¶¶ 23–24, 49–50. LinkedIn and Google have created data-gathering tools—the LinkedIn Insight Tag and Google Analytics—which some companies implement on their websites to harvest and summarize information about their websites' users.  Id. ¶¶ 25–26, 56–57.

These tools employ a variety of techniques to use available information to match a user's activity to her real identity, thus facilitating targeted advertising.  For example, with Google's so-called browser-fingerprint technique, "developers have found ways to use tiny bits of information that vary between users, such as what device they have or what fonts they have installed to generate a unique identifier which can then be used to match a user across websites." Id. ¶ 68 (footnote omitted).  LinkedIn employs similar techniques.  See id. ¶ 25.

Companies that install either the LinkedIn Insight Tag or Google Analytics receive a useful summary of information but also allow users' information to be transmitted to LinkedIn and Google.  Id. ¶¶ 30–31, 56–57.  These tools work under a website's hood, invisible to a user when they are collecting data and only detectable with technically advanced public developer tools.  See id. at 18–21 figs.2, 3, 4, 5, 6 & 7.

### C.    Allegations as to Plaintiffs

Rusow and T.S. each used SkinSpirit Essential's website to book several medical appointments.  Id. ¶¶ 7, 10.  For example, Rusow booked a consultation for Botox and laser treatment on May 12, 2023, and T.S. booked an appointment for "Derma Filler" on December 6, 2024.  Id.  During the online booking process, Plaintiffs had to create an account and provide information, such as desired location and reason for the appointment.

_____

known as HTTP requests.  See generally HTTP Requests, Sematext (last visited July 23, 2025), https://sematext.com/glossary/http-requests/.

United States District Court
Northern District of California

Id. ¶¶ 78–79, 81.  Because SkinSpirit had installed LinkedIn's and Google's tracking software, those third parties "were tracking [Plaintiffs'] activity [from] the moment they entered the Defendants' Website."  Id. ¶ 80.  LinkedIn and Google intercepted personal information such as the appointment's location, specific procedure, desired provider, date, and time.  Id. ¶¶ 81, 87.  This information, combined with LinkedIn's and Google's probabilistic identity matching techniques, would allow these third parties to link Plaintiffs' information with their identities.  See id. ¶¶ 36, 67.  Google further intercepted Plaintiffs' IP addresses, which would make identity matching even easier for Google.[2]  Id. ¶ 88.

### D.    LinkedIn's Privacy Policy

Rusow maintained an account on LinkedIn "at all relevant times."  Id. ¶ 6.  Creation of that account necessarily means that Rusow accepted, among other contracts, LinkedIn's Privacy Policy, which contains a clause that purportedly assents to LinkedIn's tracking on other websites.  See id. ¶ 38.  The relevant section reads:

> We use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services.  We also allow some others to use cookies as described in our Cookie Policy.

Id. ¶ 40 (citation modified).  Rusow was not presented with this contract on SkinSpirit's website; she separately assented to LinkedIn's Privacy Policy when creating a LinkedIn account sometime before the events in question.  See id. ¶¶ 6, 38.

### E.    Procedural History

Rusow sued SkinSpirit Essential on December 20, 2024.  See Compl. (dkt. 1).  Following SkinSpirit Essential's first motion to dismiss, Rusow amended her complaint to add T.S. as a plaintiff and to add SkinSpirit Holdings and the Vistnes Company as defendants.  See Am. Compl.  Plaintiffs bring three claims: violations of (1) the federal

---

[2]    An Internet Protocol (IP) address is a string of characters that uniquely identifies a computer using the Internet.  See generally IP Address, Britanica (last updated June 21, 2025), https://www.britannica.com/technology/IP-address.

United States District Court
Northern District of California

Electronic Communications Privacy Act (both Plaintiffs), (2) the California Invasion of Privacy Act (Rusow), and (3) the California Constitution's guarantee of privacy (Rusow).[3] See id. ¶¶ 126–60; 173–79.  SkinSpirit Holdings moved to dismiss for lack of personal jurisdiction and all Defendants moved to dismiss for failure to state a claim.  Mot. (dkt. 29) at 4–10, 13–25.

## II.    LEGAL STANDARD

### A.    Lack of Personal Jurisdiction

SkinSpirit Holdings, a Delaware corporation with its principal place of business in Washington, moves to dismiss for lack of personal jurisdiction in California.[4]  "A court may exercise personal jurisdiction over a defendant if such jurisdiction is authorized by applicable law and the exercise of that jurisdiction does not violate federal due process." Doe v. WebGroup Czech Republic, a.s., 93 F.4th 442, 450 (9th Cir. 2024) (citation modified), overruled on other grounds by Briskin v. Shopify, Inc., 135 F.4th 739 (9th Cir. 2025) (en banc).  Here, no applicable federal statute confers personal jurisdiction to this Court, and the applicable California long-arm statute provides for personal jurisdiction to the maximum extent that federal due process allows.  See Briskin, 135 F.4th at 750 (citations omitted); Cal. Civ. Proc. Code § 410.10 (West 2025).  Under the Due Process Clause, a court may exercise personal jurisdiction if the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

---

[3]    Plaintiffs included two other claims based on California and Washington law, see Am. Compl. ¶¶ 161–72, 180–86, but they conceded dismissal of those claims by failing to address them in opposition to this motion.  See Opp'n (dkt. 31) at 3 n.1; Tovar v. City of San Jose, No. 5:21-cv-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (failure to respond to certain claims constitutes conceding dismissal); Tyler v. Travelers Com. Ins. Co., 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) (same), appeal dismissed, No. 20-17365, 2021 WL 2231126 (9th Cir. May 6, 2021).

[4]    SkinSpirit Essential and the Vistnes Company do not dispute the Court's personal jurisdiction.

**B.    Failure to State a Claim**

All defendants assert that Plaintiffs have failed to state a claim.  "Detailed factual allegations" are not required, but a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  A court must accept all factual allegations as true but may ignore "legal conclusions couched as factual allegations."  Id. (citation modified). Additionally, if a complaint "shows that relief is barred by the applicable statute of limitations," it is "subject to dismissal for failure to state a claim" under Rule 12(b)(6). Jones v. Bock, 549 U.S. 199, 215 (2007) (citation modified).

**III.    DISCUSSION**

This order addresses five issues.

First, the Court addresses the SkinSpirit Holdings motion to dismiss for lack of personal jurisdiction, and concludes that the Court indeed lacks personal jurisdiction as currently pleaded.  The Court accordingly dismisses all claims against SkinSpirit Holdings with leave to amend.

Second, the Court addresses the Vistnes Company motion to dismiss for group pleading that fails to provide sufficient notice, and dismisses all claims against the Vistnes Company for that reason with leave to amend.

Third, the Court addresses Rusow's CIPA claim, and concludes that she has not plausibly alleged delayed discovery, making the claim untimely.  The Court dismisses the CIPA claim on that basis with leave to amend.

Fourth, the Court addresses Rusow's constitutional claim, and concludes that it plausibly states a claim.

Fifth, the Court addresses Plaintiffs' ECPA claim, and concludes that their allegations undermine one of the necessary elements, such that the Court dismisses their

6

ECPA claim without leave to amend.

###### A.    Personal Jurisdiction over SkinSpirit Holdings

Personal jurisdiction may be either general or specific.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citation omitted).  General personal jurisdiction allows a court to hear "any and all claims against [defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Id. (quoting Int'l Shoe, 326 U.S. at 317).  Specific jurisdiction, on the other hand, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. (citation modified).  A court must have either general or specific jurisdiction over a defendant.

When a defendant challenges a court's personal jurisdiction, the "plaintiff bears the burden of establishing that jurisdiction is proper." Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1090 (9th Cir. 2023) (citation modified).  On a motion to dismiss, "the plaintiff need only make a prima facie showing of jurisdictional facts." Id. (citation omitted).  Plaintiffs need only present facts that, if true, would be sufficient for jurisdiction—any conflicts between the parties' facts must be resolved in Plaintiffs' favor at this stage. See WebGroup, 93 F.4th at 447 (citation omitted).

###### 1.    General Jurisdiction

The paradigmatic forum for general jurisdiction over a corporation is its place of incorporation and its principal place of business, with rare exceptions. BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017) (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)).  Plaintiffs do not assert that SkinSpirit Holdings is from California, and rightly so—it is incorporated in Delaware and has its principal place of business in Washington. See Heublein Decl. ¶ 6.  Plaintiffs only allege that SkinSpirit Holdings has "systematically and continually conducted business in California" as a basis for general jurisdiction. Am. Compl. ¶ 15.  But SkinSpirit Holdings refutes this conclusory allegation by declaration, see Heublein Decl. ¶¶ 7–11, and in any case, "a corporation's continuous activity of some

sorts within a state is generally not enough to support" an assertion of general jurisdiction. See Williams v. Yamaha Motor Co., 851 F.3d 1015, 1020 (9th Cir. 2017) (citation modified). There is accordingly no general jurisdiction over SkinSpirit Holdings.

### 2. Specific Jurisdiction

To establish specific jurisdiction over a defendant, a plaintiff must meet three requirements: "(1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." Id. at 1023 (citation modified).

SkinSpirit Holding's parent-subsidiary relationship with SkinSpirit Essential (over whom there is certainly personal jurisdiction) cannot alone form the basis for specific jurisdiction here. See Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) (holding that such a relationship is only sufficient where one is an "alter ego" for the other); see also Opp'n at 6 (acknowledging this point). But Plaintiffs allege a greater connection than that. They allege that SkinSpirit Holdings actually operates the relevant website from which this litigation arises, which would mean that SkinSpirit Holdings thereby purposefully avails itself of California's law's. Opp'n at 5–6.

There is a factual dispute here. The SkinSpirit Holdings CEO (who is also the SkinSpirit Essential CEO) declared that SkinSpirit Holdings "does not publish, own, control or operate any website, including" the website in question here. Heublein Decl. ¶ 15. Plaintiffs counter by pointing to the website itself, which explicitly names SkinSpirit Holdings as a party to the website's Terms of Use.[5] Westcot Decl. (dkt. 31-1) Ex. A.

---

[5] Plaintiffs also point to the fact that the CEO lives in California as a basis for specific jurisdiction. Opp'n at 5–6. SkinSpirit Holdings responds that its CEO's physical presence in a state says nothing about the corporation's "presence" for jurisdictional purposes; federal due process requires looking to the corporation's contacts with the forum state. Reply (dkt. 38) at 4. SkinSpirit Holdings is correct. See Martinez v. Aero Caribbean, 764 F.3d 1062, 1068 (9th Cir. 2014) ("An officer of a corporation is not the corporation, even when the officer acts on the corporation's behalf.").

United States District Court
Northern District of California

Plaintiffs argue that the website's inclusion of SkinSpirit Holdings on its Terms of Use refutes the CEO's contention that it does not control the website.  Opp'n at 5.

Because Plaintiffs need only make a prima facie showing, the Court need only decide whether SkinSpirit's inclusion on the website's Terms of Use (taken as true) is sufficient for specific jurisdiction, without deciding the truth of the matter.  See WebGroup, 93 F.4th at 447.  SkinSpirit Holdings cites two relevant California Court of Appeal cases that hold "the use of 'we' or 'the Company'" on corporate documents does not "turn a holding company into an operating company" for jurisdictional purposes.  Mot. at 3; see BBA Aviation PLC v. Superior Ct., 190 Cal. App. 4th 421, 432 (2010) (citation modified); accord Sonora Diamond Corp. v. Superior Ct., 83 Cal. App. 4th 523, 550 (2000).  Federal courts are in accord.  See, e.g., Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (holding that "separate corporate entities presenting themselves as one online" does not mean that one entity exercised control over the other); In re Packaged Seafood Prods. Antitrust Litig., 338 F. Supp. 3d 1118, 1146–47 (S.D. Cal. 2018) (same); Gardner v. Starkist Co., 418 F. Supp. 3d 443, 464 (N.D. Cal. 2019) (same).

Plaintiffs cite no cases to support their contention that inclusion of SkinSpirit Holdings on the website's Terms of Use implies that it "in some part, owns and operates" the website, see Opp'n at 6, and for good reason—the weight of precedent comes out the other way.  Accordingly, SkinSpirit Holdings has not purposefully availed itself of or directed its conduct to California solely by including itself on the website's Terms of Use.

The Court therefore GRANTS the SkinSpirit Holdings motion to dismiss for lack of personal jurisdiction with leave to amend to allow Plaintiffs the chance to plausibly allege facts showing that defendant's involvement with the website.

### 3.    Jurisdictional Discovery

Plaintiffs request the opportunity to conduct jurisdictional discovery.  Id. at 6 n.2.  "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir. 2003)

(citation modified).  As pleaded, the lack of jurisdiction is not based on controverted facts, but an insufficient legal inference based on Plaintiffs' facts.  Plaintiffs point to the inclusion of SkinSpirit Holdings on the website, but even taken as true, this is still insufficient to cure the jurisdictional defect.  Plaintiffs' weak inference does not contradict the CEO's assertion that SkinSpirit Holdings does not control the website, and jurisdictional discovery is not likely to change that conclusion.  As such, the Court will not grant discovery.  See X Corp. v. Ctr. for Countering Digit. Hate Ltd., 724 F. Supp. 3d 921, 947 (N.D. Cal. 2024) (denying jurisdictional discovery for a similar reason).

### B. Failure to State a Claim Against the Vistnes Company for Impermissible Group Pleading

Defendant Vistnes Company argues that Plaintiffs fail to state a claim against it because Plaintiffs base liability solely on a business relationship with SkinSpirit Essential.[6] Mot. at 4–6.  "Undifferentiated group pleading that does not indicate which individual defendant or defendants were responsible for which wrongful act is impermissible" because it fails to provide adequate notice under Rule 8 of the Federal Rules of Civil Procedure.  Russo v. Fed. Med. Servs., Inc., 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024) (citation modified).  Plaintiffs make collective allegations against all three defendants throughout their complaint.  "Yet, so-called group pleading is not fatal as long as the complaint gives defendants fair notice of the claims against them."  EcoHub, LLC v. Recology Inc., No. 3:22-cv-09181-TSH, 2023 WL 6725632, at *6 (N.D. Cal. Oct. 11, 2023) (citation modified).

Courts that have rejected complaints for failure to give adequate notice because of group pleading generally do so when there are many defendants, and lumping them together obscures which defendant allegedly did which act.  See, e.g., Corazon v. Aurora Loan Servs., LLC, No. 3:11-cv-00542-SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (concluding that the plaintiff failed to provide adequate notice where she sued more

---

[6]    SkinSpirit Holdings also advances this argument in the event that the Court concludes that it has personal jurisdiction.  Its arguments parallel those of the Vistnes Company.  Mot. at 4–6.

than fifty defendants and nearly every allegation referred to them collectively).  But where the defendants are more closely related and the complaint "can fairly be read to claim that each defendant participated in the specific wrongful conduct alleged," collective allegations still give adequate notice.  See Tivoli LLC v. Targetti Sankey, S.p.A., No. 8:14-cv-01285-DOC-JCG, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015) (citation modified) (declining to dismiss a complaint with collective allegations where the group of defendants was "much narrower, closely related, and in the same general line of business").

Doe v. Kaiser Foundation Health Plan, Inc., No. 3:23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024), is instructive here.  In that case, the plaintiffs alleged that a group of related corporate healthcare defendants illegally intercepted information on a certain website.  Id. at *2.  But because the plaintiffs did not suggest that "the health care providers had the same exact role vis-à-vis the website," undifferentiated group pleading was insufficient.  Id. at *4 (citation modified).

So too here.  Plaintiffs do not plausibly allege how the Vistnes Company is involved with the website.  They allege that the company is operated by SkinSpirit Essential's "full-time Medical Director" and that the two entities are business associates. Am. Compl. ¶ 13.  But without more, this does not suggest that the Vistnes Company is sufficiently involved with SkinSpirit Essential's website such that the complaint "can fairly be read" as against both entities throughout.  See Tivoli, 2015 WL 12683801, at *4. While it is conceivable that the Vistnes Company (and SkinSpirit Holdings, if the jurisdictional defects are cured) controlled the website, Plaintiffs have not yet plausibly alleged as much.  Accordingly, the Court GRANTS the Vistnes Company's motion to dismiss with leave to amend so that Plaintiffs may have a chance to plead additional facts showing that defendant's involvement.

### C.    California Invasion of Privacy Act

Turning to the claims' sufficiency, Rusow alleges that SkinSpirit violated CIPA. Am. Compl. ¶¶ 149–60.  SkinSpirit Essential argues that Rusow's CIPA claim is

(1) untimely and (2) legally insufficient.  Mot. at 13–18.

### 1.    Timeliness

CIPA claims are subject to a one-year statute of limitations.  See Cal. Civ. Proc. Code § 340(a) (West 2025); Javier v. Assurance IQ, LLC, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023).  Rusow alleges that she visited SkinSpirit's website on May 12, 2023, and she sued Defendants on December 20, 2024—outside her one-year window.  See Am. Compl. ¶ 7.  She therefore relies on California's delayed discovery doctrine.  Opp'n at 6–8.  For the delayed discovery rule to save her otherwise untimely claim, Rusow must plead facts showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005).  Under this rule, Rusow's accrual of her CIPA claim is delayed until she had inquiry notice of the cause of action.  See id. at 807.

Rusow alleges that because of the tracking software's surreptitious nature, she only became aware of the tracking after receiving targeted advertisements for SkinSpirit procedures.  Am. Compl. ¶ 7.  After receiving these advertisements, she alleges that she discovered SkinSpirit's third-party tracking software in November 2024.  Id.

SkinSpirit relies on two cases to argue that Rusow's CIPA complaint does not sufficiently allege delayed discovery.  First, in Javier, the plaintiff sued life insurer Assurance for a similar third-party website-activity tracking claim.  649 F. Supp. 3d at 894. This Court rejected the plaintiff's delayed discovery because he had constructive notice of Assurance's privacy policy, which gave notice of the third-party tracking, more than one year before his suit.  Id. at 902.  Second, in Saedi v. SPD Swiss Precision Diagnostics GmbH, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025), the plaintiff sued defendant SPD for using third-party tracking software.  Id. at *1–2.  The court rejected the plaintiff's delayed discovery allegations because she also had constructive notice of SPD's privacy policy and because she began seeing targeted advertisements more than one year before her complaint.  Id. at *10.

SkinSpirit makes parallel arguments here.  First, while it does not point to its own

privacy policy as providing constructive notice, it argues that LinkedIn's Privacy Policy (to which Rusow had previously assented, see Am. Compl. ¶¶ 6, 38) gave constructive notice of its third-party tracking more than one year before this action.  Reply at 6.  But this case is distinguishable.  Whereas the plaintiffs in Javier and Saedi had constructive notice from the defendants' own privacy policies about specific tracking practices, LinkedIn's Privacy Policy broadly admonishes users that it generally engages in third-party tracking, and "only where [it] has lawful bases."  Am. Compl. ¶ 41 (emphasis omitted).  Rusow received no constructive notice from SkinSpirit, who actually operated the website in question.  See Mot. at 14–15.  This general warning is not sufficient to put a reasonable user on notice of a job-networking site's data tracking everywhere, especially on a healthcare website.  See In re Meta Pixel Healthcare Litig., 647 F. Supp. 3d 778, 793–94 (N.D. Cal. 2022) (expressing skepticism that Meta's similarly phrased privacy policy would have made a reasonable user understand that Meta's data-tracking practices extended to health information).  In contrast to Javier and Saedi, Rusow did not have constructive notice of the tracking from a privacy policy.

Second, SkinSpirit argues that Rusow has not sufficiently alleged delayed discovery because she does not allege when she began seeing targeted advertisements.  Reply at 6.  This argument is persuasive.  Rusow "surely had inquiry notice when she began seeing ads," see Saedi, 2025 WL 1141168, at *10 (citation omitted), but does not allege when she first saw the targeted advertisements, see Am. Compl. ¶ 7.  Rusow's statement that she "did not realize that Defendants disclosed her PII and PHI to LinkedIn and Google until November 2024" cannot suffice unless she specifies when she began seeing ads, for she is charged with inquiry notice at that point, not when she actually made the discovery.  See id.; Fox, 35 Cal. 4th at 807.  Accordingly, the Court dismisses Rusow's CIPA claim with leave to amend this delayed-discovery pleading defect.[7]

---

[7]    Rusow relies on Gaige v. Exer Holding Co., No. 2:24-cv-06099-AH-AJR, 2025 WL 559719 (C.D. Cal Mar. 2, 2025), B.K. v. Desert Care Network, No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024), and Doe v. FullStory, Inc., 712 F. Supp. 3d 1244 (N.D. Cal. 2024), to argue that her November 2024 discovery allegation

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### 2.    Legal Sufficiency

Setting aside the remediable statute-of-limitations defect, Rusow alleges that SkinSpirit violated CIPA's wiretapping provision.  See Am. Compl. ¶¶ 149–60; Cal. Penal Code § 631(a) (West 2025).  Section 631(a) prohibits unauthorized third-party interceptions of communications, or aiding efforts thereto.  Id.  Because section 631(a) concerns third-party interceptions, a party to a communication cannot violate the section except by aiding another's violation.  See Smith v. Google, LLC (Smith), 735 F. Supp. 3d 1188, 1196–97 (N.D. Cal. 2024) (footnote omitted) (first citing Rogers v. Ulrich, 52 Cal. App. 3d 894, 899 (1975) and then Cody v. Boscov's, Inc., No. 8:22-cv-01434-SSS-DTB, 2024 WL 2228973, at *2 (C.D. Cal. May 6, 2024)).

Rusow alleges that SkinSpirit aided LinkedIn's and Google's violation of section 631.  Am. Compl. ¶¶ 149–60.  This is derivative liability—LinkedIn or Google (not defendants) must have violated the statute if SkinSpirit did, otherwise there would be nothing to aid.  See Smith v. YETI Coolers, LLC (YETI), 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024).  To allege that SkinSpirit aided a CIPA violation, Rusow must allege that (a) LinkedIn or Google violated section 631, and that (b) SkinSpirit acted with knowledge of and intent to aid that violation.  See id.

#### a.    The Underlying Violation

Rusow must allege an underlying violation of section 631 by LinkedIn or Google.  Section 631 prohibits "unauthorized" interception of communications through any means.  Rusow has sufficiently pleaded that LinkedIn and Google intercepted her communications with SkinSpirit.  See Am. Compl. ¶¶ 83–89; Smith, 735 F. Supp. 3d at 1197 (holding that

---

should be sufficient on its own because the tracking was not reasonably discoverable earlier.  Opp'n at 7.  These cases all allowed mere allegations of delayed discovery "given the type of case" and alleged injury—one where the plaintiffs inherently could not have, through any reasonable means, discovered their injuries sooner.  See FullStory, 712 F. Supp. 3d at 1255; accord Gaige, 2025 WL 559719, at *3; Desert Care, 2024 WL 1343305, at *5.  But here, Rusow alleges that she saw targeted advertisements, which would have put a reasonable user on inquiry notice, see Saedi, 2025 WL 1141168, at *10 (citation omitted), whereas the plaintiffs in Gaige, Desert Care, and FullStory did not.  Because she has the burden of alleging timely delayed discovery, she must allege that she first saw these ads within one year of her complaint to survive dismissal.  See Javier, 649 F. Supp. 3d at 901.

Google Analytics is a third-party interceptor of communications for purposes of

section 631); Jackson v. LinkedIn Corp., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024)

(holding the same for the LinkedIn Insight Tag).  Rusow must also plead a lack of consent

to show that the alleged interception was "unauthorized."  See Turner v. Nuance

Commc'ns, Inc., 735 F. Supp. 3d 1169, 1177–78 (N.D. Cal. 2024) (citations omitted).

SkinSpirit points to Rusow's prior acceptance of LinkedIn's Privacy Policy as evidence of

her consent.  Mot. at 16–17; see Am. Compl. ¶¶ 6, 38 (noting that Rusow had assented to

LinkedIn's Privacy Policy "at all relevant times").  It makes no argument that Rusow

consented to Google's interception.  So, the only question here is whether LinkedIn's

Privacy Policy constitutes consent to its interceptions of Rusow's health data.  See YETI,

754 F. Supp. 3d at 940 (requiring "absence of consent" to state a section 631 claim).

     LinkedIn's Privacy Policy allegedly states:

> We use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services.  We also allow some others to use cookies as described in our Cookie Policy.

Am. Compl. ¶ 40 (citation modified).

     Courts that have considered similarly broad language in other privacy policies have

found such language to be sufficient to establish consent to third-party tracking on other

websites.  See, e.g., Lakes v. Ubisoft, Inc., No. 3:24-cv-06943-TLT, 2025 WL 1036639, at

*6 (N.D. Cal. Apr. 2, 2025) (holding that the plaintiffs' assent to Ubisoft's similarly

worded privacy policy consented to Ubisoft's disclosure of their video-game-related data

to Meta), appeal docketed, No. 25-2857 (9th Cir. May 2, 2025); Libman v. Apple, Inc.,

No. 5:22-cv-07069-EJD, 2024 WL 4314791, at *7–8 (N.D. Cal. Sept. 26, 2024)

(concluding that Apple's broadly phrased privacy policy established consent to data

collection on Apple's services); Silver v. Stripe, Inc., No. 4:20-cv-08196-YGR, 2021 WL

3191752, at *4 (N.D. Cal. July 28, 2021) (similarly concluding that Instacart's privacy

policy established consent to Stripe's third-party tracking on Instacart's website).

     But courts have not interpreted privacy policies with the same liberality when it

comes to health data.  See, e.g., Meta Pixel, 647 F. Supp. 3d at 793–94 (Orrick, J.) (doubting that a reasonable user would understand Meta's privacy policy as consenting to the surreptitious disclosure of protected health information); Doe v. Microsoft Corp., No. 2:23-cv-00718-JCC, 2023 WL 8780879, at *6 (W.D. Wash. Dec. 19, 2023) (similarly doubting that Kaiser Permanente's general data collection disclosure in its privacy policy would inform a reasonable user that it extended to "personal health information").

The Court follows the Meta Pixel and Microsoft courts in declining to read a general third-party tracking consent as extending to health data lifted from other websites. The Microsoft court even refused to read the privacy policy of Kaiser Permanente—a medical provider—as extending to the disclosure of medical information from Kaiser's website to third parties.  2023 WL 8780879, at *6.  These courts have correctly drawn the line.  Contracts should be interpreted according to their most natural meaning.  A contract consenting to the general disclosure of a user's information can perhaps reasonably extend to what video games he plays or what groceries he buys, but not to his private health information.  See In re Facebook, Inc., Consumer Priv. User Profile Litig., 402 F. Supp. 3d 767, 789–90 (N.D. Cal. 2019) (concluding that a lack of consent allegation is sufficient if a reasonable user "could plausibly have interpreted the contract language as not disclosing" the practice at issue); Am. Compl. ¶ 92 (explicitly alleging a lack of consent).

This is especially true considering LinkedIn's primary function as a job networking site.  A reasonable user would have no occasion to believe that a job networking site would collect health information.  And Rusow's ostensible consent was not given to SkinSpirit, but to a third party at some previous time.  The Court does not construe LinkedIn's general Privacy Policy as reasonably consenting to the disclosure of health information from other websites.

Because a reasonable user would not have understood that she had authorized LinkedIn to intercept her health data by accepting its Privacy Policy, LinkedIn's interception was unauthorized.  Because SkinSpirit makes no argument that Rusow consented to Google's interception, it too was unauthorized.  Accordingly, Rusow has

alleged an underlying violation of section 631 by LinkedIn and Google.

### b.    Knowledge of and Intent to Aid the Violation

Having adequately alleged an underlying violation, Rusow must also allege that SkinSpirit "aided, agreed with, employed, or conspired with" LinkedIn and Google to "do, permit, or cause" the violation.  See Cal. Penal Code § 631(a) (citation modified).  Under the statute, Rusow must allege that SkinSpirit acted "with the third party in order to have the third party perform acts that violate the statute."  See YETI, 754 F. Supp. 3d at 942 (emphasis omitted).  "At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing, or employing the third party to commit those acts."  Id. (emphasis added).  The parties' core dispute is whether SkinSpirit must purposely aid conduct that it knows violates CIPA, or just knowingly and purposely aid the acts that result in the violation.

Courts in this circuit are split on the issue.  Contrast, e.g., Tate v. VITAS Healthcare Corp., 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) (construing CIPA to require only intent to aid, not intent to violate the statute), St. Aubin v. Carbon Health Techs., Inc., No. 4:24-cv-00667-JST, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) (same), and Cousin v. Sharp Healthcare, 681 F. Supp. 3d 1117, 1129–30 (S.D. Cal. 2023) (same), with Rodriguez v. Ford Motor Co., 722 F. Supp. 3d 1104, 1123–24 (S.D. Cal. 2024) (incorporating the common-law "aiding and abetting" standard, which requires knowledge of illegality), and Esparza v. UAG Escondido A1 Inc., 3:23-cv-00102-DMS-KSC, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (same).

Tate and like cases have the better argument.  It is a long-standing rule of construction to adopt a term's common-law definition in the absence of a precise statutory definition.  See City of Long Beach v. Payne, 3 Cal. 2d 184, 191 (1935); People v. Moses, 10 Cal. 5th 893, 903 (2020) (reaffirming this principle).  But the Legislature used the term "aided, agreed with, employed, or conspired with," Cal. Penal Code § 631(a), not the term "aid and abet."  Yet some courts have read the common law's "aid and abet" standard into section 631 anyway.  See, e.g., Rodriguez, 722 F. Supp. 3d at 1123–24.

1    Section 631 does not exist in a vacuum.  The Legislature invoked the "aid and abet"

2   phrase in a neighboring section of CIPA, but not in section 631.  See Cal. Penal Code

3   § 632.01(a)(2) (creating liability for those who "aid and abet" section 632 violations).

4   "One of the fundamental rules of statutory construction is that interrelated statutory

5   provisions should be harmonized."  People v. Partee, 8 Cal. 5th 860, 868 (2020); accord

6   Turkiye Halk Bankasi A.S. v. United States, 598 U.S. 264, 273–74 (2023).  Courts that

7   read section 631's "aid" provision to mean "aid and abet" create an interpretive clash with

8   section 632.01's "aid and abet" provision, rendering the word "abet" superfluous.  See

9   Curle v. Superior Ct., 24 Cal. 4th 1057, 1063 (2001) (recognizing that statutes should not

10   be construed in a manner that renders any part superfluous).  Considering CIPA as a

11   whole, the word "abet" in section 632.01 can only have effect if section 631's "aid"

12   provision does not take the common-law meaning.

13    Some courts in this circuit have taken this approach.  The Tate court, for example,

14   looked to the statute's text to distinguish aiding (merely providing support) from aiding

15   and abetting (knowingly facilitating illegal action).  762 F. Supp. 3d at 959 ("The plain text

16   of section 631(a) is unambiguous on this issue: the statute requires that a party 'aids,

17   agrees with, employs, or conspires' with another party.  § 631(a).  It does not require that a

18   party aid and abet.").  Relying on the statute's text, it rejected the common law's

19   heightened intent standard.  Tate, 762 F. Supp. 3d at 959.

20    Courts that have gone the other way, such as Esparza, decided to apply the

21   common-law standard in the absence of a statutory definition.  See 2024 WL 559241, at

22   *6.  To support this interpolation, the Esparza court cited cases where other courts did the

23   same thing, but for statutes with aiding and abetting provisions.  See Fiol v. Doellstedt, 50

24   Cal. App. 4th 1318, 1325–26 (1996) (incorporating the common-law standard for an aid-

25   and-abet provision in the California Fair Employment and Housing Act); Twitter, Inc. v.

26   Taamneh, 598 U.S. 471, 484–85 (2023) (interpreting the federal Antiterrorism Act's aid-

27   and-abet provision consistently with the common-law standard).  As Tate points out,

28   section 631's text covers not aiders-and-abettors, but mere aiders—this means the common

18

law aid-and-abet standard is inapposite.  See 762 F. Supp. 3d at 959.

The analogous federal Wiretap Act includes the same aid-but-not-abet requirement for intent.  Its intent prong requires a plaintiff to allege that the defendant "acted consciously and deliberately with the goal of intercepting wire communications"—but not necessarily with the goal of violating the statute.  United States v. Christensen, 828 F.3d 763, 791–92 (9th Cir. 2015).  "Intent under CIPA is determined consistently with intent under ECPA [the Wiretap Act]."  Doe v. Meta Platforms, Inc., 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023), interlocutory appeal denied, No. 3:22-cv-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024).  Although SkinSpirit correctly points out that there is no analogous aiding provision of the Wiretap Act, see Reply at 8–9, the Wiretap Act's principles of intent can still apply to CIPA, especially given how freely courts merge the two analyses.  See, e.g., Heerde v. Learfield Commc'ns, LLC, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024) ("The analysis for a violation of the Federal Wiretap act [sic] is the same as under CIPA."); Heiting v. Taro Pharms. USA, Inc., 728 F. Supp. 3d 1112, 1122 n.7 (C.D. Cal. 2024) ("District courts in this circuit frequently apply the federal wiretap analysis to different elements of CIPA claims."); Hammerling v. Google LLC, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (same).[8]

SkinSpirit relies on YETI and other cases to argue that Rusow must allege knowledge and purpose to violate the statute—not just knowledge and purpose to aid the underlying actions.  See Mot. at 17–18; Reply at 9–10 (first citing YETI, 754 F. Supp. 3d at 942–43; then Graham v. Noom, Inc., 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); and then Licea v. Finish Line, Inc., No. 23STCV22390, slip op. at 5–6 (Cal. Super. Ct. July 10, 2024)).  But none of these cases support SkinSpirit's conclusion: each dismissed a CIPA aiding claim because the defendants did not know of the underlying conduct that formed the violation, not because they did not know of the underlying conduct's illegality.  Accordingly, the Court reads section 631 as only requiring intentional conduct, not

---

[8]    SkinSpirit argues that the lack of an exact parallel provision renders useless Wiretap Act cases regarding intent, but it cites no cases to support this proposition.  See Reply at 9.

United States District Court
Northern District of California

knowledge of illegality.

Under that standard, there is little question that Rusow sufficiently alleged that SkinSpirit was aware of and intended to allow LinkedIn and Google to intercept her communications. "At the pleading stage, interception may be considered intentional where a defendant is aware of the defect causing the interception but takes no remedial action." Lopez v. Apple, Inc., 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (citation modified). Rusow alleged that SkinSpirit intentionally embedded the third-party tracking tools on its website, with knowledge that those tracking tools would transmit users' communications to LinkedIn and Google. Am. Compl. ¶¶ 81–82, 86–89. Accordingly, Rusow has sufficiently alleged the substance of a CIPA violation.

Because Rusow's complaint suffers from a statute-of-limitations defect, the Court GRANTS the motion to dismiss her CIPA claim with leave to amend. If Rusow cures that defect, the claim is otherwise sufficient.

### D.  Invasion of Privacy Under the California Constitution

Rusow alleges that SkinSpirit's disclosure of her information violated her right to privacy under the California Constitution. Id. ¶¶ 173–79. To sustain a private right of action under article I, section 1's privacy guarantee, Rusow must allege (1) that she possessed a "legally protected privacy interest," (2) that she maintained "a reasonable expectation of privacy," and (3) that the intrusion is so serious as to constitute an "egregious breach of the social norms" such that the breach is "highly offensive." See In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 601 (9th Cir. 2020) (quoting Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 287 (2009)).

### 1.  Rusow's Legally Protected Privacy Interest

"Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court." Hill v. NCAA, 7 Cal. 4th 1, 40 (1994). "It is clear that patients have a bona fide interest in the confidentiality of their medical information." County of Los Angeles v. Superior Ct., 65 Cal. App. 5th 621, 641 (2021) (citation modified). Rusow alleges that the third parties intercepted confidential

1   information, including "the state the appointment is in, the type of procedure a patient is

2   interested in, the specific procedure they want completed, the reason for the procedure, the

3   provider they wish to see, the day, and time for the appointment."  Am. Compl. ¶ 83;

4   accord id. ¶ 87.  She also alleges that they intercepted sufficient personally identifiable

5   information to link the disclosed data with patients' identities.  Id. ¶ 88.

6       SkinSpirit argues that the intercepted information was not medical information and

7   therefore is subject to a diminished privacy interest.  Reply at 11.  It cites authority holding

8   that "medical information cannot mean just any patient-related information held by a

9   health care provider, but must include a patient's medical history, mental or physical

10  condition, or treatment."  See Reply at 11; Eisenhower Med. Ctr. v. Superior Ct., 226 Cal.

11  App. 4th 430, 435 (2014) (citation modified).  While this definition comes from courts'

12  interpretation of the Confidentiality of Medical Information Act, not the California

13  Constitution, it can nonetheless inform the meaning of "medical information."[9]

14      Medical information (under CMIA) "must be 'substantive,' rather than merely

15  administrative," Tamraz v. Bakotic Pathology Assocs., LLC, No. 3:22-cv-00725-BAS-

16  WVG, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022) (citation omitted), and must

17  be "individually identifiable," Eisenhower, 226 Cal. App. 4th at 434.  While a patient's

18  name, phone number, "treating physician names, medical treatment appointment

19  information, and medical treatment discharge dates and times" are not substantive

20  "medical information" under CMIA, see Wilson v. Rater8, LLC, No. 3:20-cv-01515-

21  DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021), Rusow alleged that the third

22  parties intercepted more than that.  Specifically, Rusow alleged interception of "the

23  specific procedure [patients] want completed" and "the reason for the procedure."  Am.

24  Compl. ¶ 83.

25

26  _____

27  [9]    Rusow does not bring an independent claim under CMIA.  She included a CMIA
    claim in her original complaint, but she waived the claim by failing to address it in her
28  opposition.  See Opp'n at 3 n.1; Tyler, 499 F. Supp. 3d at 701.  SkinSpirit in its reply uses
    courts' definitions of "medical information" under CMIA solely to inform the
    constitutional issue.  Reply at 11.

A patient's desired procedure and its <u>underlying reason</u> are not merely administrative. Whereas "the fact that an individual's name is on a list released by doctor X or clinic Y" is not medical information, <u>see</u> <u>Eisenhower</u>, 226 Cal. App. 4th at 435, "the individual's right to privacy encompasses detailed complaints of [his] physical ills," <u>Los Angeles</u>, 65 Cal. App. 5th at 641 (citation modified); <u>see also</u> <u>id.</u> ("The state of a person's gastro-intestinal tract is as much entitled to privacy from unauthorized public or bureaucratic snooping as is that person's bank account, the contents of his library or his membership in the NAACP."). In that same vein, Rusow surely communicated "complaints of [her dermatological] ills" and the "state of [her skin's health]" when she indicated her specific desired procedure and the underlying medical reason for the procedure on SkinSpirit's website. <u>See</u> <u>id.</u>; Am. Compl. ¶ 83. This is more than merely administrative; it is the substance of her medical needs. Because this information is allegedly tied to her personally identifiable information, <u>see</u> Am. Compl. ¶¶ 88–91, Rusow has alleged a legally recognizable privacy interest under the California Constitution.

### 2.    Reasonable Expectation of Privacy

Next, Rusow must allege that she had a "reasonable expectation of privacy in the circumstances." <u>Hill</u>, 7 Cal. 4th at 40. SkinSpirit again relies on Rusow's acceptance of LinkedIn's Privacy Policy to argue she did not have a reasonable expectation of privacy over the intercepted information. Mot. at 19.

"Whether plaintiff has a reasonable expectation of privacy in the circumstances is [a] mixed question of law and fact." <u>Hill</u>, 7 Cal. 4th at 40 (citation modified). As a matter of law, there is generally no reasonable expectation of privacy over the information communicated on a website. <u>See</u> <u>Thomas v. Papa Johns Int'l, Inc.</u>, No. 3:22-cv-02012-DMS-MSB, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (collecting cases). But there are exceptions to this rule. <u>See, e.g.</u>, <u>Facebook Internet Tracking</u>, 956 F.3d at 601–03 (concluding that a reasonable expectation of privacy existed where Facebook's Privacy Policy indicated that tracking would conclude when users logged out); <u>Brown v. Google LLC</u>, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (concluding that users in private or

1    incognito mode had a reasonable expectation of privacy); Calhoun v. Google LLC, 526 F.

2    Supp. 3d 605, 630 (N.D. Cal. 2021) (recognizing that a defendant's representations can

3    give rise to a reasonable expectation of privacy).

4    　　　Here, the question is whether a reasonable user would expect privacy against

5    unwanted disclosure of her administrative and health information on SkinSpirit's website.

6    Such a reasonable expectation can exist where the third parties "gained 'unwanted access

7    to data by electronic or other covert means, in violation of the law or social norms.'"

8    Facebook Internet Tracking, 956 F.3d at 601–02 (quoting Hernandez, 47 Cal. 4th at 286).

9    Courts frequently hold that patients have a reasonable expectation of privacy over their

10   medical information.  See, e.g., Los Angeles, 65 Cal. App. 5th at 643–45 (recognizing such

11   a reasonable expectation); Lewis v. Superior Ct., 172 Cal. Rptr. 3d 491, 504 (Ct. App.

12   2014) (same), aff'd and superseded, 3 Cal. 5th 561 (2017); L.A. Gay & Lesbian Ctr. v.

13   Superior Ct., 194 Cal. App. 4th 288, 308 (2011) (same).  This Court also recognizes the

14   same reasonable expectation between a prospective or current patient and her medical

15   provider, notwithstanding the general rule about websites.

16   　　　SkinSpirit does not contest this point.  It only argues that Rusow gave up this

17   reasonable expectation by assenting to LinkedIn's Privacy Policy, and it makes no

18   argument as to Google.  See Mot. at 19.  But just as LinkedIn's broadly phrased third-party

19   policy does not constitute consent under CIPA, it also does not mitigate Rusow's

20   otherwise reasonable expectation of privacy over the information she input on SkinSpirit's

21   website.  See Meta Pixel, 647 F. Supp. 3d at 800 (holding that Meta's general privacy

22   policy, which did not disclose Meta's collection of health data, did not affect the plaintiffs'

23   reasonable expectation of privacy); Microsoft, 2023 WL 8780879, at *9 (rejecting a

24   nonparty's broadly phrased privacy policy as evidence against a reasonable expectation).

25   　　　Accordingly, the Court rejects SkinSpirit's argument and concludes that Rusow has

26   alleged a reasonable expectation of privacy.

27   　　　　　**3.    Highly Offensive Invasion of Privacy**

28   　　　Finally, Rusow must allege that SkinSpirit's intrusion was "highly offensive."

United States District Court
Northern District of California

23

Facebook Internet Tracking, 956 F.3d at 601.  Because this question is fact-intensive, "courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious [a] privacy intrusion is."  Facebook Consumer Priv., 402 F. Supp. 3d at 797 (citation omitted).  In determining the "offensiveness" of an invasion of a privacy interest, courts may consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."  Hill, 7 Cal. 4th at 26 (citation omitted).

It is true that "courts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms."  Meta Pixel, 647 F. Supp. 3d at 801 (citation modified).  But Rusow alleges that SkinSpirit disclosed more than mere "basic digital information"—she alleges that third parties intercepted her medical information.  Am. Compl. ¶¶ 83, 89.

In response, SkinSpirit cites no cases where the disclosure of medical information was not a serious invasion of privacy—and the authorities it does cite do not support its position.  Hammerling, Low v. LinkedIn Corp., 900 F. Supp. 2d 1010 (N.D. Cal 2012), In re Google, Inc. Privacy Policy Litigation, 58 F. Supp. 3d 968 (N.D. Cal. 2014), In re iPhone Litigation, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), and Williams v. DDR Media, LLC, No. 3:22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023), did not involve medical information.  All involved browsing history or similar information.

In re Ambry Genetics Data Breach Litigation, 567 F. Supp. 3d 1130 (C.D. Cal 2021), is more on point.  There, the plaintiffs alleged that defendant Ambry Genetics disclosed "names, dates of birth, Ambry account numbers, health insurance information, confidential medical information, medical diagnoses, billing information including addresses, email addresses, and telephone numbers, and Social Security numbers."  Id. at 1138.  The court held that the allegations sufficiently stated a "highly offensive" breach of social norms because of the sensitive nature of the data involved.  Id. at 1143 (citation omitted); see also Stasi v. Inmediata Health Grp. Corp., 501 F. Supp. 3d 898, 926 (S.D.

United States District Court
Northern District of California

24

1  Cal. 2020) (holding that similar allegations of unwanted disclosures of medical

2  information plausibly alleged a "serious invasion of privacy").

3      Rusow's allegations mirror those of <u>Ambry Genetics</u> and <u>Stasi</u>, though with slight

4  factual differences. Although Rusow does not allege disclosure of actual diagnoses or

5  Social Security numbers, at this early stage of litigation on such a fact-based inquiry, the

6  Court need not take a position on the offensiveness of SkinSpirit's disclosure. At this

7  point, Rusow has plausibly alleged a highly offensive disclosure.

8      Accordingly, Rusow plausibly states a claim for relief under the California

9  Constitution. The Court DENIES SkinSpirit's motion on this claim.

### E.    Electronic Communications and Privacy Act (Wiretap Act)

11      Rusow and T.S. allege that SkinSpirit violated the ECPA. Am. Compl. ¶¶ 126–48.

12  The ECPA creates a cause of action against any defendant who intercepts communications

13  without consent. 18 U.S.C. §§ 2511(1), 2520(a). Unlike CIPA, a party to a

14  communication (like SkinSpirit) cannot be liable under § 2511 as an accomplice.

15  § 2511(2)(d). A party can only be liable if he intercepts the communication "for the

16  purpose of committing any criminal or tortious act" (the crime-tort exception). <u>Id.</u> So, the

17  principal question here is whether Plaintiffs have alleged "sufficient facts to support an

18  inference that the offender intercepted the communication <u>for the purpose</u> of a tortious or

19  criminal act that is <u>independent</u> of the intentional act of the recording or interception

20  itself." <u>B.K. v. Eisenhower Med. Ctr.</u>, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (first

21  emphasis added) (citation omitted), <u>reconsideration granted in part on other grounds</u>, No.

22  5:23-cv-02092-JGB-DTB, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024).

23      The crime-tort exception's "focus is upon whether the <u>purpose</u> for the

24  interception—its intended use—was criminal or tortious." <u>Sussman v. Am. Broad. Cos.</u>,

25  186 F.3d 1200, 1202 (citation modified). SkinSpirit points to Plaintiffs' allegations that

26  undermine any assertion that its <u>purpose</u> in intercepting data was criminal or tortious.

27  Reply at 13–14 (citing Am. Compl. ¶¶ 82, 139). These paragraphs allege that SkinSpirit's

28  purpose was "to monetize that data for targeted advertising." Am. Compl. ¶ 82; <u>accord id.</u>

¶ 139.  Even if SkinSpirit in fact committed an invasion of privacy tort, as Rusow alleges, Plaintiffs do not allege that it did so for the express purpose of committing that tort.  See Sussman, 186 F.3d at 1202–03 ("Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.").

Allen v. Quicken Loans Inc., No. 2:17-cv-12352-ES-MAH, 2018 WL 5874088 (D.N.J. Nov. 9, 2018), is on point and persuasive here.  There, defendant Quicken Loans installed third-party tracking software on its website to obtain useful summaries of user activity.  Id. at *1–2.  The court rejected application of the crime-tort exception because Quicken Loans did not have the "purpose of facilitating some further impropriety, such as blackmail."  Id. at *5 (quoting Sussman, 186 F.3d at 1203).  Unlike CIPA's aiding liability, which does not require an accomplice to know his acts are illegal, the ECPA requires exactly that knowledge and purpose.  Plaintiffs' own allegations acknowledge that such knowledge is lacking here.

Furthermore, Plaintiffs' arguments "plainly fail because the alleged tortious or criminal activities are not independent from the intentional act of intercepting; they are the interception itself."  See id. at *6 (citing In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 145 (3d Cir. 2015)).  For the crime-tort exception to apply, Plaintiffs must allege that SkinSpirit had an "independent criminal or tortious purpose at the time" the interceptions were made.  See Planned Parenthood Fed'n of Am., Inc. v. Newman, 51 F.4th 1125, 1135–36 (9th Cir. 2022).  Here, Plaintiffs allege no independent criminal or tortious intent; they accordingly fail to state a valid claim under the ECPA.

The Court accordingly GRANTS Defendants' motion to dismiss the ECPA claim, with prejudice.

### F.    T.S.'s Use of a Pseudonym

Finally, Defendants correctly note that T.S. has not sought leave of the Court to proceed under a pseudonym.  Mot. at 1 n.1.  Anonymous plaintiffs must seek the district court's approval to use a pseudonym or fictitious name.  See Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067–68 (9th Cir. 2000) (citing Fed. R. Civ.

P. 10(a)).  T.S. brings only an ECPA claim, which the Court dismisses with prejudice.
Accordingly, this issue is moot.

## IV.    CONCLUSION

In summary, the Court GRANTS IN PART AND DENIES IN PART Defendants'
motion as follows:

- The Court <u>dismisses with leave to amend</u>: (1) all three claims against
  SkinSpirit Holdings for lack of personal jurisdiction, (2) all three claims
  against the Vistnes Company for group pleading, and (3) Rusow's CIPA
  claim against all Defendants as untimely.  Plaintiffs must amend <u>within thirty
  days</u>.  Failure to do so could result in dismissal with prejudice.

- The Court <u>dismisses without leave to amend</u> Plaintiffs' ECPA claim against
  all Defendants, as Plaintiffs' allegations undermine a necessary element.

- Finally, the Court <u>denies</u> Defendants' motion to dismiss Rusow's
  constitutional claim against SkinSpirit Essential.

**IT IS SO ORDERED.**

Dated: October  15 , 2025

CHARLES R. BREYER
United States District Judge