**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOURTNEY RUSOW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>SKINSPIRIT ESSENTIAL LLC,<br><br>Defendant. | Case No. 3:24-cv-09317-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: February 20, 2026<br>Time: 10:00 a.m.<br>Dept: Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD ............................................................................................................2

ARGUMENT .........................................................................................................................3

I. PLAINTIFF'S CIPA CLAIMS ARE TIMELY .........................................................3

II. PLAINTIFF STATES A CLAIM UNDER SECTION 632 OF THE CIPA ............6

    A. Plaintiff Alleges That The Tracking Software is a "Device" Under Section 632. ..................................................................................................6

    B. The Internet Communications at Issue Are "Confidential" For Purposes of Section 632. ..........................................................................7

    C. CIPA Section 632 Provides for SkinSpirit's Derivative Liability .............9

III. PLAINTIFF HAS SUFFICIENTLY PLEADED THIRD PARTIES INTERCEPTED THE CONTENTS OF HER COMMUNICATION "WHILE IN TRANSIT" ......10

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 2

*B.K. v. Desert Care Network*,
    2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .............................................................................. 3

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................................... 7, 8

*Byars v. Goodyear Tire & Rubber Co.*,
    654 F. Supp. 3d 1020 (C.D. Cal. 2023) ................................................................................... 11

*Cody v. Boscov's Inc.*,
    2024 WL 2228973 (C.D. Cal. May 6, 2024) ........................................................................... 11

*Cody v. Lacoste USA, Inc.*,
    2024 WL 3761288 (C.D. Cal. July 30, 2024) ......................................................................... 11

*Doe v. Call-On DOC, Inc.*,
    2025 WL 1677632 (S.D. Cal. June 13, 2025) ......................................................................... 11

*Doe v. Eating Recovery Ctr., LLC*
    2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ......................................................................... 11

*Doe v. GoodRx Holdings, Inc.*,
    2025 WL 2052302 (N.D. Cal. July 22, 2025) ....................................................................... 8, 9

*Doe v. Meta Platforms, Inc.*,
    2023 WL 5837443 (N.D. Cal. Sept 7, 2023) ............................................................................. 6

*Doe v. Microsoft Corp.*,
    2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ...................................................................... 7

*Doe v. Tenet Healthcare Corp.*,
    789 F. Supp. 3d 814 (E.D. Cal. 2025) ....................................................................................... 3

*Flanagan v. Flanagan*,
    41 P. 3d 575 (Cal. 2002) ........................................................................................................... 8

*Gabrielli v. Motorola Mobility LLC*,
    2025 WL 1939957 (N.D. Cal. July 14, 2025) ......................................................................... 11

*Gaige v. Exer Holding Co.*,
    2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......................................................................... 3, 4

*Gladstone v. Amazon Web Services, Inc.*,
    739 F. Supp. 3d 846 (W.D. Wash. 2024) .............................................................................. 6, 7

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ...................................................................................................... 3

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................................... 6

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ...................................................................................... 7

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................................... 8

*Jameson Beach Prop. Owners Ass'n v. United States*,
    2014 WL 4925253 (E.D. Cal. Sept. 29, 2014) ........................................................................ 6

*Javier v. Assurance IQ, LLC*,
    649 F. Supp. 3d 891, 901 .......................................................................................................... 5

*Khan v. K2 Pure Sols., L.P.*,
    2013 WL 6503345 (N.D. Cal. Dec. 4, 2013) .......................................................................... 6

*L.B. v. LinkedIn Corp.*,
    2025 WL 899514 (N.D. Cal. Oct. 10, 2025) ........................................................................... 6

*Mikulsky v. Bloomingdale's, LLC*,
    2025 WL 1718225 (9th Cir. 2025) ......................................................................................... 11

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
    2017 WL 6387764 (N.D. Cal. 2017) ........................................................................................ 7

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
    135 F.3d 1260 (9th Cir. 1998) ............................................................................................. 1, 8

*People v. Nakai*,
    183 Cal. App. 4th 499 (Cal. Ct. App. 2010) .......................................................................... 8

*Rodriguez v. Bytedance, Inc.*,
    2025 WL 672951 (N.D. Ill. Mar. 3, 2025) .............................................................................. 7

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
    2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .................................................................. 3, 4, 5

*Shah v. Capital One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ................................................................................ 11

*Smith v. Google, LLC*,
    735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................... 8

*Smith v. Rack Room Shoes, Inc.*,
   2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................................................................. 9, 10

*Smith v. YETI Coolers, LLC*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024) ................................................................................ 9

*United States v. Hutchins*,
   361 F. Supp. 3d 779 (E.D. Wis. 2019) ............................................................................... 6

*Vaccaro v. Altais*,
   2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .................................................................... 9

*Vahora v. Valley Diagnostics Lab. Inc.*,
   2017 WL 2572440 (E.D. Cal. June 14, 2017) .................................................................... 6

*Valenzuela v. Nationwide Mutual Ins. Co.*,
   686 F. Supp. 3d 969 (C.D. Cal. Aug. 14 2023) ................................................................ 11

*Vera v. O'Keefe*,
   791 F. Supp. 2d 959 (S.D. Cal. 2011) ................................................................................ 9

*Yockey v. Salesforce, Inc.*,
   745 F. Supp. 3d 945 (N.D. Cal. 2024) ................................................................................ 6

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................................................. 3

**STATUTES**

Cal. Penal Code § 31 ..................................................................................................................... 9

Cal. Penal Code § 632 ........................................................................................................ 6, 7, 8, 9

Cal. Penal Code § 632(a) .............................................................................................................. 6

Cal. Pen. Code § 632(c) ................................................................................................................ 8

**RULES**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................. 2

Fed. R. Civ. P 12(b)(6) ................................................................................................................. 2

**INTRODUCTION**

"Few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). This case concerns the unauthorized exploitation of precisely that kind of deeply sensitive information. Defendant surreptitiously violated the privacy rights of users of its website by covertly deploying tracking technologies from LinkedIn and Google to intercept patients' personally identifiable information ("PII") and sensitive medical data for Defendant's own commercial benefit without users' knowledge, consent, or authorization. *See* Second Amended Complaint ("SAC") (ECF No. 45) ¶ 7.

Unbeknownst to its patients, Defendant installed hidden tracking code that transmitted detailed medical and appointment-related information to third-party advertising platforms in real time. The intercepted data included, among other things, patients' status, the city and state associated with the procedure, the type and reason for the procedure, the identified provider, and the date and time of the patients' appointment. *See id.* ¶¶ 84, 86, 89–91. This information is plainly medical in nature and falls squarely within the core privacy interests protected by California law.

Rather than meaningfully contest these facts, Defendant seeks dismissal by advancing legally unsound arguments that ignore both the allegations in the SAC and controlling authority. Defendant first contends that Plaintiff's claims are time-barred, asserting that Plaintiff was on "inquiry notice" simply because she later received online advertisements. That argument ignores the concealed nature of the interceptions and is flatly inconsistent with the delayed discovery doctrine as applied by courts in this District in nearly identical healthcare tracking cases. Plaintiff plausibly alleges that she had no way to discover Defendant's unlawful disclosures until counsel's investigation revealed them. *See* SAC ¶¶ 8–10, 120–128.

Defendant next argues that Plaintiff fails to state claims under the California Invasion of Privacy Act ("CIPA") because software allegedly cannot constitute a "device," internet communications supposedly lack confidentiality, and Defendant purportedly cannot be held derivatively liable for third-party interceptions. Each contention is wrong. Courts routinely

recognize that software-based tracking tools qualify as "devices" under CIPA § 632, that communications involving medical information are confidential, and that website operators who knowingly embed tracking code may be held liable for aiding and abetting unlawful interceptions.

Finally, Defendant asserts that Plaintiff has not adequately alleged that her communications were intercepted "while in transit," as required under CIPA § 631. But Plaintiff alleges precisely how LinkedIn's and Google's JavaScript-based tracking tools intercepted her communications in real time, before those communications reached their intended destination. These allegations mirror (and in many respects exceed) those found sufficient by numerous courts in this District and the Ninth Circuit.

In short, Defendant's Motion does not identify any pleading deficiency. Instead, it asks the Court to excuse the covert interception of medical communications by redefining confidentiality and imposing discovery obligations on consumers that are technologically impossible to meet. The SAC more than satisfies Rule 8 and states viable claims under CIPA §§ 631 and 632. Defendant's Motion should be denied in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by

any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

**ARGUMENT**

**I.      PLAINTIFF'S CIPA CLAIMS ARE TIMELY**

Defendant argues that Plaintiff's CIPA claims are untimely and not salvageable under California's delayed discovery doctrine because Plaintiff had "inquiry notice" of her injury when "she began seeing ads." Motion at 6; citing Order at 13 (quoting *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *10 (C.D. Cal. Feb. 27, 2025)). This is a red herring. Whether Plaintiff received targeted advertisements is immaterial to the Court's analysis because the advertisements she saw did not alert her that any of her private information was unlawfully disclosed. Indeed, there are several lawful ways that Defendant could have implemented advertising technology that would have fulfilled Defendant's marketing purposes without violating consumers' privacy rights. Because this advertising technology is invisible, consumers have no way of knowing why they are receiving advertisements. The weight of authority supports the application of the delayed discovery doctrine in this scenario. *See, e.g., Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 852 (E.D. Cal. 2025) (applying delayed discovery doctrine to toll the statute of limitations for the plaintiffs' wiretapping claims), *Gaige v. Exer Holding Co.*, 2025 WL 559719, at *3 (C.D. Cal. Mar. 2, 2025) (same), *B.K. v. Desert Care Network*, 2024 WL 1343305 at * 5 (C.D. Cal. Feb. 1, 2024) (same). This Court should do the same.

Plaintiff does not contest that the statute of limitations for a claim under CIPA is one year. However, a plaintiff may "allege [the] application of the delayed discovery rule to toll the statute of limitations." *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 852. As conceded by Defendant, a plaintiff may toll the statute of limitations is she can "plead facts which show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Gaige*, 2025 WL 559719, at *3 (quoting *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010)).

*Gaige v. Exer Holding Co.* is instructive. *Gaige* concerned the unlawful disclosure of PII and PHI on a healthcare website. There, the court determined that the:

> Plaintiff alleges that he did not know and had no way of knowing that his personally identifiable information ("PII") and/or personal health information ("PHI") was intercepted and unlawfully disclosed to Meta, Google, and potentially other third parties because Defendant kept this secret. Compl. ¶ 186. Plaintiff became aware of the disclosure of this information in June 2024. *Id.* The Court finds these allegations sufficient to allege tolling under the delayed discovery rule, as they allege the inability to have made the discovery earlier than June 2024 despite reasonable diligence.

*Gaige*, 2025 WL 559719, at *3. That is precisely what Plaintiff alleges here. For example, Plaintiff alleges that:

> [D]ue to the surreptitious nature of the interceptions at issue, Plaintiff did not know (and had no way to know) the reason why she was receiving such targeted advertisements until contacting undersigned counsel in November 2024. Because the data interceptions occurred covertly and in real time while Plaintiff Rusow was navigating Defendant's website, Plaintiff had no viability into, nor any reasonable method of discovering the fact that her medical information was being simultaneously transmitted to third-party advertising platforms LinkedIn and Google. These transmissions were executed through hidden tracking tools that operate silently in the background of a webpage, without any meaningful disclosure to the user and without any affirmative action by the user that would reveal their presence. As a result, although Plaintiff eventually observed that she was being served advertisements related to cosmetic medical procedures, it was impossible for her to discern the causal link between those ads and Defendant's unlawful disclosures.

SAC ¶¶ 8-9. Despite these well-pled allegations, Defendant argues that Plaintiff's failure to establish when she first saw targeted advertisements is "fatal" to her CIPA claims. *See* Motion at 7. Defendant relies upon this Court's Order, where the Court made the determination that Plaintiff "had inquiry notice when she began seeing ads." Order at 13 (quoting *Saedi*, 2025 WL 1141168, at *10). In support of this position, the Court distinguished Plaintiff's cited authorities based on her allegations of receiving targeted advertisements. *See id.* at 13–14 n.7 ("Rusow alleges that she saw targeted advertisements, which would have put a reasonable user on inquiry notice, whereas the plaintiffs in *Gaige*, *Desert Care*, and *Fullstory* did not.") (cleaned up). However, while not discussed in the published orders, the operative complaints for these cases reveal that plaintiffs ***did*** allege they saw targeted advertisements. *See* Compl. ¶ 181, *Gaige*, No. 2:24-cv-06099 ("As a

result, Plaintiff Gaige received targeted ads on Facebook or Instagram related to his specific medical conditions"); FAC ¶ 218, *Desert Care*, No. 2:23-cv-05021 ("As a result of Defendants' use of the Meta Pixel, Plaintiff B.K. began receiving ads on Facebook"); *Id.* ¶ 234 ("Plaintiff N.Z. began receiving advertisements on Facebook"); *see also* FAC ¶¶ 275, 283, 290, 295, *Tenet Healthcare*, No. 1:23-cv-1106 (stating that each of the four named plaintiffs began receiving targeted advertisements). The fact that the plaintiffs received advertisements did not alter the courts' application of the delayed discovery doctrine to their claims. Such a result is unsurprising, as the average consumer does not know why they receive online advertisements.

As such, Plaintiff has satisfied her burden of alleging the time and manner of discovery and her inability for earlier discovery despite her due diligence. *See* SAC ¶¶ 8–10, 120–128. The average consumer, like Plaintiff, lacks the sophisticated, technological knowledge to decipher invisible network traffic. *See id.* ¶ 125. In other words, Plaintiff was not alerted by Defendant's advertisements that her PHI was unlawfully disclosed nor was she able to discover Defendant's unlawful disclosures because she lacked the technical expertise required to uncover such unlawful activity. Plaintiff only learned that her health information had been disclosed "due to the investigation of undersigned counsel just prior to filing her complaint." *Id.* ¶ 123.

Defendant's cited authorities are distinguishable. In each of Defendant's cited cases, the plaintiffs alleged that they were aware that their information was being collected by host websites. *See Javier*, 649 F. Supp. 3d at 901 ("Javier clarifies that [he] assumed that Assurance collected his information during his website visit") (internal quotations omitted); *Saedi*, 2025 WL 1141168, at *10 ("[J]ust as in *Javier*, [p]laintiff does allege general knowledge that the Website collected information visitors shared with it"). Defendant also makes the conclusory argument that by seeing advertisements Plaintiff must have been aware that "the information she provided to the Website was not kept private." Motion at 6-7. However, Defendant fails to explain why it would be reasonable for Plaintiff to think that her private PHI was disclosed just by virtue of seeing an advertisement online. Indeed, there are countless reasons why Plaintiff could be seeing an advertisement for Defendant's services, none of which have anything to do with the disclosure of her PHI.

## II. PLAINTIFF STATES A CLAIM UNDER SECTION 632 OF THE CIPA[1]

### A. Plaintiff Alleges That The Tracking Software is a "Device" Under Section 632.

Defendant argues that Plaintiffs section 632 CIPA claim fails, in part, because "software does not constitute a 'device' under the CIPA." Motion at 8 (citation omitted). This is wrong.

Section 632 of CIPA imposes liability on anyone (1) who, without consent, "uses an electronic amplifying device to eavesdrop upon or record" a (2) "confidential communication." *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953–54 (N.D. Cal. 2024) (quoting Cal. Penal Code § 632(a)). "CIPA does not define 'device,' and few courts have squarely addressed the issue." *Gladstone v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024). However, "[t]he majority of courts to consider this issue" under the Federal Wiretap Act and analogous state wiretapping laws, including CIPA § 632, "have entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also Gladstone*, 2024 WL 3276490, at *8 ("[T]he Court finds that 'device,' as used in Section 632, can include software."); *L.B. v. LinkedIn Corp.*, 2025 WL 899514, at *18 (N.D. Cal. Oct. 10, 2025) ("[T]he Court finds the software in this case [the LinkedIn Insight Tag] qualifies as a 'device' for purposes of Section 632."); *Doe v. Meta Platforms, Inc.* 2023 WL 5837443, at *7 (N.D. Cal. Sept 7, 2023) ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act.").

---

[1] Defendant notes that Plaintiff's Section 632 claim should be struck for failing to seek leave from the Court to add a claim. However, "[e]xceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof." *Khan v. K2 Pure Sols., L.P.*, 2013 WL 6503345, at *11 (N.D. Cal. Dec. 4, 2013); *see also Vahora v. Valley Diagnostics Lab. Inc.*, 2017 WL 2572440, at *2 (E.D. Cal. June 14, 2017) ("[T]he Court finds that striking the infringing portions of this pleading is premature."). Moreover, the language of the Order was not as explicit with regards to amendment as in other cases where motions to strike were granted. *See, e.g.*, *Jameson Beach Prop. Owners Ass'n v. United States*, 2014 WL 4925253, at *4 (E.D. Cal. Sept. 29, 2014) (granting motion to strike where the court granted "leave to amend as to [p]laintiffs' claim for inverse condemnation and . . . ***without leave to amend as to all other claims***.") (emphasis added).

1    Here, Plaintiff clearly alleges both how the Tracking Technologies on Defendant's Website operate and that they record/intercept Plaintiff and putative class members' protected information. *See* SAC ¶ 34 ("LinkedIn's current iteration of its Insight Tag is a JavaScript-based code which allows . . . to track users"); *Id.* ¶ 60 ("Google Analytics . . . immediately intercepts a user's interaction with the webpage every time the user visits it"); *see also id.* ¶¶ 35–40, 61–64 (further explaining how the Tracking Technologies eavesdrop/record).

The authority relied upon by Defendant does not compel a different result. Defendant cites to *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023), which found "software does not constitute a 'device' under the CIPA." *See* Motion at 8. However, the court in *Doe* referenced two decisions concerning CIPA Section 637.7. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. 2017). As courts have recognized, "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone*, 2024 WL 3276490, at *9. Defendant's reliance on *Rodriguez v. Bytedance, Inc.*, 2025 WL 672951, at *8 (N.D. Ill. Mar. 3, 2025) is also unpersuasive. In *Rodriguez*, the plaintiffs' 632 claim failed because the allegations were "conclusory" and "lack[ed] sufficient detail." *Id.* Plaintiff's allegations do not possess the same defect. *See generally* SAC.

    **B.**    **The Internet Communications at Issue Are "Confidential" For Purposes of Section 632.**

Defendant recognizes that Plaintiff has "adequately alleged a reasonable expectation of privacy in her 'medical information.'" Motion at 10; quoting Order at 23. And yet, Defendant claims that Plaintiff lacked an objectively reasonable expectation of confidentiality because there exists a "general presumption that Internet communications are not confidential." *Id.* That is wrong.

At the outset, there is no presumption that internet-based communications are not confidential. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not

confidential under Section 632."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (same). A communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002). The proper inquiry "is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Brown*, 685 F. Supp. 3d at 938 (citing Cal. Pen. Code § 632(c)).

Here, Plaintiff clearly and repeatedly alleged that she reasonably expected her communications with Defendant to remain confidential. *See* SAC ¶¶ 24–25, 95, 153 ("Plaintiff never consented, agreed, authorized, or otherwise permitted LinkedIn or Google to intercept her confidential health information."). Additionally, courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (finding communications concerned PHI were confidential); *Smith*, 735 F. Supp. 3d 1188, 1199–1200 (N.D. Cal. 2024) ("[T]he cases Google relies on involved internet chats and emails, not sensitive financial information submitted to a tax preparation website. … Google intercepted communications that were confidential under Section 632."). Nowhere is this more apparent than in the context of medical information. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform – by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms – constitute confidential communications.") (collecting cases); *see also Norman-Bloodsaw*, 135 F.3d at 1269 ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."). Here, Plaintiff clearly alleges that information at hand is medical information. *See* SAC ¶¶ 2–4, 7, 12, 24, 78–97. As discussed, this Court in its prior Order concluded that "Rusow has alleged a reasonable expectation of privacy." Order at 23.

Defendant's cited authority is inapplicable, as none of Defendant's cases concern the interception of medical information. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 770 (2002) (concerning recorded telephone conversations unrelated to medical services); *People v. Nakai*, 183

Cal. App. 4th 499, 518 (finding no expectation of privacy in chat rooms in a criminal case). Defendant's argument concerning "the circumstances in which the communications were made" fares no better, as individuals have a reasonable expectation that companies will not disclose their PHI. *See* SAC ¶¶ 3-4, 164; *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14.

### C. CIPA Section 632 Provides for SkinSpirit's Derivative Liability.

Defendant states that Plaintiff cannot bring a claim under Section 632 of CIPA because "the text of Penal Code § 632 does not expressly provide for derivative liability." Motion at 10 (quotation omitted). Not so.

Section 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). As a result, Section 31, when applied to CIPA Section 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Vera*, 791 F. Supp. 2d at 965.

Defendant's contention that Plaintiff must bring her claim "pursuant to Section 31" is wholly unsupported by law. Motion at 11. Moreover, in the next sentence, Defendant acknowledges that "courts have entertained extending Section 31 to a CIPA claim." *Id.* Defendant labels Plaintiff's allegations as "conclusory," and likens the facts to *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943–44 (N.D. Cal. 2024). Motion at 11. However, Defendant's reliance on *Smith v. YETI Coolers* is misplaced. In *Smith*, the plaintiff brought claims against a website operator for its use of a payment processor for processing customer transactions. *Smith*, 754 F. Supp. 3d at 938. There, the plaintiff failed to allege that the defendant was aware that the third party payment processor was acting as anything more than a payment processor. *Id.* at 944. That is in stark contrast to Plaintiff's allegations here, where Plaintiff alleges that Defendant assisted

third parties in unlawfully recording consumers' PHI without their knowledge or consent. *See, e.g.*, SAC ¶¶ 4, 7, 143, 147. Defendant did so by intentionally installing the Tracking Technologies on its own Website. *See id.* ¶ 39 (explaining that Defendant installed the LinkedIn Insight Tag on the Website); ¶ 67 (stating that Defendant's Website utilizes Google's pixel and SDK). As a result of Defendant's intentional integration of the Tracking Technologies, LinkedIn and Google were able to intercept and record Plaintiff and putative class members' protected information regarding their medical appointments. *See id.* ¶¶ 82–89 (containing screenshots on the precise information LinkedIn and Google intercepted and recorded). Nothing more is required. *See Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 ("As discussed above, Plaintiff[] adequately allege[s] that [Defendant] knew that [the Third Parties'] data collection had the purpose of tracking individually identifiable user habits, . . . . Furthermore, the allegation[s] that [Defendant] knowingly and affirmatively embedded [the Third Parties'] code into its website is sufficient to plead substantial participation.").

### III. PLAINTIFF HAS SUFFICIENTLY PLEADED THIRD PARTIES INTERCEPTED THE CONTENTS OF HER COMMUNICATION "WHILE IN TRANSIT"

Defendant states that Plaintiff's Section 631 CIPA claim fails because Plaintiff has not plausibly alleged a predicate violation to sufficiently hold SkinSpirit derivatively liable. Motion at 11–13. Specifically, Defendant argues that Plaintiff fails "to state a plausible violation of Section 631(a)'s second clause because [Plaintiff] fail[s] to satisfy the clause's contemporaneity requirement." *Id.* at 13.

To the contrary, Plaintiff alleges that her "communications with Defendant were disclosed . . . and/or intercepted by Google, in real time, via detailed URLs, which contain the medically sensitive information entered into the Website." *See* SAC ¶ 92; *see also id.* ¶ 83 ("Unbeknownst to SkinSpirit's patients, LinkedIn and Google were tracking their activity the moment they entered the Defendant's Website."); ¶ 60 ("This code immediately intercepts a user's interaction . . . including what pages they visit and what they click on."). Further, Plaintiff explains precisely how the tracking mechanisms of both LinkedIn and Google achieve this. *See id.* ¶¶ 34–38 (explaining how the LinkedIn Insight Tag causes HTTP responses, containing information about user's action on

the Website, to LinkedIn); ¶¶ 46–51, 60–64 (explaining how Google's code also causes contemporaneous HTTP responses of users' activity on the Website).

These allegations are sufficient because Plaintiff sets forth the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. No additional allegations are required. *See, e.g.*, *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d 969, 1078-79 (C.D. Cal. Aug. 14 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. 2025) ("The complaint sufficiently stated facts to allege . . . while the same [was] in transit"); *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053–54 (N.D. Cal. 2025) ("Because these trackers allegedly recorded Plaintiffs' activities for marketing and tracked Plaintiffs' activities and personal information, Plaintiffs plausibly allege that Defendant intercepted the communications while they were in transit."); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same). Plaintiff bolsters these allegations through images of the interceptions, which illustrate how LinkedIn and Google intercept and learn the meanings of Plaintiff's communications in real time. *See* SAC, Figures 2-7.

Defendant's cited authorities are distinguishable. First, its reliance on *Doe v. Eating Recovery Center, LLC* is inapplicable insofar that the case was decided on a motion for summary judgment, not the pleading stage. 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). At this stage, all reasonable inferences should be drawn in Plaintiff's favor. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *2 (N.D. Cal. July 14, 2025). Second, Defendant's other cases involved failures by plaintiffs to allege if, and how, "code" intercepted communications while in transit. *See Cody v. Boscov', Inc.*, 2024 WL 2228973, at *3 (C.D. Cal. May 6, 2024) ("Plaintiff's brief description of Kustomer's 'secret code,' however, does not suggest that Kustomer necessarily uses that code to *intercept* customer communications *while* they are in transit, rather than to store . . . such communications") (emphasis in original); *Cody v. Lacoste*

*USA, Inc.*, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024) ("Plaintiff fails to adequately explain the connection, if there is any, between the 'secret code' and Hootsuite's widget."). In stark contrast, Plaintiff describes that both the LinkedIn Insight Tag and Google Analytics are embedded by a JavaScript-based code which "immediately intercepts a user's interaction with the webpage." *See* SAC ¶¶ 34, 60.

## CONCLUSION

For these reasons, the Court should deny Defendant's Motion in its entirety.

Dated: January 9, 2026.	Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
  Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*