Scott S. Humphreys (SBN 298021)
humphreyss@ballardspahr.com
Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

J. Matthew Thornton (*pro hac vice*)
thorntonj@ballardspahr.com
**BALLARD SPAHR LLP**
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.371.3211
Facsimile: 612.371.3207

Gregory P. Szewczyk (*pro hac vice*)
szewczykg@ballardspahr.com
Alexia C. Chapman (*pro hac vice*)
chapmana@ballardspahr.com
**BALLARD SPAHR LLP**
1800 Larimer Street, Suite 1600
Denver, CO 80202-5596
Telephone: 303.299.7354
Facsimile: 303.296.3956

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOURTNEY RUSOW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKINSPIRIT ESSENTIAL LLC, INC.,<br><br>Defendant. | Case No. 3:24-cv-09317-CRB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>Hearing:</u>**<br>Date: February 20, 2026<br>Time: 10:00 a.m.<br>Dept: Courtroom 6, 17th Floor |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

REPLY ..... 2

I. Plaintiff Has Not Alleged New Facts or Cited New Law That Would Warrant This Court Reconsidering Its Prior Order Dismissing Her CIPA Claim as Untimely. ..... 2

II. Plaintiff's Section 632 Claim Fails Because the Tracking Technologies Are Not "Devices" That "Amplify" or "Record" Confidential Communications. ..... 7

1. The Tracking Technologies Are Not "Electronic Amplifying or Recording Devices." ..... 7

2. Plaintiff Did Not Communicate with the Website Under Circumstances Giving Rise To A Reasonable Expectation of Confidentiality. ..... 9

III. Unlike Its Neighboring Provisions, Section 632 Does Not Expressly Contemplate Aiding and Abetting Liability, and Even If It Did, Plaintiff's Allegations Fall Short. ..... 12

IV. To Satisfy Section 631(a)'s In-Transit Requirement, Plaintiff Needed To Allege More Than The Mere Interception of Her Communications. ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .... 10

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .... 8, 9

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .... 11

*Doe v. Eating Recovery Center LLC*,
No. 3:23-cv-05561-VC, -- F. Supp. 3d --, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025).... 13, 14

*Doe v. GoodRx Holdings, LLC*,
No. 3:23-cv-00501, 2025 WL 2052302 (N.D. Cal. July 22, 2025).... 11, 12

*Doe v. Tenet Healthcare*,
789 F. Supp. 3d 814 (E.D. Cal. 2025).... 3, 5

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005).... 6

*Heiting v. Athenahealth, Inc.*,
No. 23-cv-09015, 2024 WL 3761294 (C.D. Cal. July 29, 2024).... 14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .... 5, 6, 7, 8

*Libman v. Apple, Inc.*,
No. 5:22-cv-07069, 2024 WL 4314791 (N.D. Cal. Sep. 26, 2024) .... 9

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .... 10, 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ....*passim*

*Sanchez v. CoreCivic, Inc.*,
No. 3:25-cv-1944, 2025 WL 2962441 (S.D. Cal. Oct. 20, 2025) .... 4

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .... 10, 11

*Torres v. Prudential Financial, Inc.*,
No. 3:22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................ 14

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) ................................................................... 8, 9

**Statutes**

CALIFORNIA PENAL CODE § 631(a) ........................................................................ *passim*

CALIFORNIA PENAL CODE § 632 ............................................................................ *passim*

CALIFORNIA PENAL CODE § 632.01 ........................................................................ 13

## PRELIMINARY STATEMENT

Claims under the California Invasion of Privacy Act ("CIPA")[1] are subject to a one-year statute of limitations. This Court recently held that even when the limitations period is tolled under the delayed discovery rule, it starts to run once a plaintiff is put on inquiry notice of a potential privacy injury. The Court also held that, in Internet tracking cases like this one, a plaintiff is put on inquiry notice when she begins seeing targeted ads related to her use of the defendant's website.

In her last complaint, Plaintiff alleged she visited SkinSpirit's Website more than a year and seven months before filing suit. She also alleged that she saw "harassing" targeted ads as result of using the Website. She failed, however, to specify **when** she began seeing those harassing ads, so the Court dismissed her CIPA claim as untimely. The Court allowed Plaintiff to amend her complaint and provided a straightforward path to cure. All she had to do was allege that she began seeing the ads within one year of filing suit.

Plaintiff amended, but her new complaint is still missing that basic, claim-dispositive allegation. As SkinSpirit argued in its Motion, the absence of such allegation effectively establishes that Plaintiff did, in fact, begin seeing ads more than a year before initiating this lawsuit—an argument Plaintiff does not contest in her Opposition.

Plaintiff instead urges the Court to reconsider its prior ruling and reverse course. Not because Plaintiff has identified any new allegations or intervening legal authority that might warrant reconsideration, but rather because, in Plaintiff's view, the Court's legal analysis was flawed.

Plaintiff is mistaken. Contrary to what she suggests, the date on which Plaintiff began seeing harassing targeted ads is hardly a "red herring." As held in *Saedi*, seeing such ads is enough, as a matter of law, to put a plaintiff on notice of a potential injury and start the one-year period for plaintiff to investigate and file suit. That rule applies with equal force here.

Plaintiff argues that the Court should reject *Saedi* and apply the more forgiving standard adopted in the same non-binding orders this Court previously found were distinguishable. Plaintiff

[1] Unless otherwise noted, capitalized terms have the same definitions given to them in SkinSpirit's Motion.

challenges this Court's finding, but only after digging deep into the dockets to find, buried amongst hundreds of paragraphs in the plaintiffs' complaints, bare-boned, boilerplate allegations indicating the plaintiffs may have seen ads after visiting the defendants' websites. But Plaintiff fails to explain why the mere existence of these allegations is relevant—especially since the courts in those cases did not consider them when ruling on the tolling issue presented here.

Because Plaintiff has failed to raise any other legitimate grounds for this Court to revisit its prior dismissal of Plaintiff's CIPA claim as time-barred, the Court should affirm its original ruling, apply the same analysis to Plaintiff's newly-asserted claim under Section 632 of CIPA, and dismiss both claims with prejudice.

Although the timeliness of Plaintiff's CIPA claims is alone dispositive, both claims also fail for independent reasons. To start, contrary to what Plaintiff argues, nowhere in the SAC does Plaintiff allege that Google or LinkedIn used the Tracking Technologies to "amplify" or "record" her communications, let alone under circumstances sufficient to overcome the widely-recognized presumption that Internet communications are not confidential. Even if she could overcome these threshold issues, Section 632 does not expressly contemplate aiding and abetting liability (under Section 31 or otherwise), unlike some of its neighboring provisions.

Plaintiff's claim under Section 631(a) fails because, contrary to what she suggests, alleging that Google and LinkedIn "intercepted" her communications is not enough under governing law to satisfy that provision's requirement that a third-party attempted to "read" or "learn" the content of her communications while "in transit."

For these reasons and those set forth more fully below and in its Motion, SkinSpirit respectfully requests that the Court dismiss Plaintiff's CIPA claims with prejudice.

## REPLY

### I. Plaintiff Has Not Alleged New Facts or Cited New Law That Would Warrant This Court Reconsidering Its Prior Order Dismissing Her CIPA Claim as Untimely.

Plaintiff does not meaningfully dispute that she filed her CIPA claims against SkinSpirit more than seven months after the applicable one-year statute of limitations expired. Instead, Plaintiff argues—for the second time—that the Court should apply the delayed discovery rule and

toll the statute of limitations because "until contacting undersigned counsel in November 2024," Plaintiff "did not know (and had no way to know)" why she was receiving the "harassing targeted advertisements" purportedly caused by SkinSpirit's use of tracking technologies on its Website. *See* SAC ¶¶ 8, 96.

This Court has already considered—and rejected—Plaintiff's argument. *See* Order at 13:16–25.[2] It held that (1) even if Plaintiff could establish that the delayed discovery rule applied, it would toll the statute of limitations only until such time as Plaintiff "had inquiry notice of the cause of action," and (2) Plaintiff "surely had inquiry notice when she began seeing ads[.]" *See id.* at 12:3–12, 13:16–20. Because Plaintiff failed to allege the date on which she began seeing ads in her First Amended Complaint, the Court gave her an opportunity to amend. The Court even specified that, to save her untimely claim under CIPA, all Plaintiff had to do was "alleg[e] that she first saw these ads within one year of her complaint." *See id.* at 13 n.7.

Plaintiff does not dispute that, despite the Court's clear guidance, she has once again failed to allege when, after using SkinSpirit's Website, she began seeing the "harassing" targeted ads. Plaintiff's omission effectively establishes that she cannot allege in good faith that she filed this lawsuit within one year of seeing the ads. Nor does Plaintiff point to any other new allegations in the SAC that would warrant the Court's reconsideration of its prior analysis of the delayed discovery rule and tolling doctrine.

Plaintiff resorts, instead, to attacking the Court's prior legal reasoning, arguing that the date on which she began seeing "targeted ads" is entirely irrelevant—a "red herring," in her words. *See* Opp. at 3. Plaintiff's argument is not based on any new developments in the law. To the contrary, she relies almost entirely on the same non-binding cases (*Gaige*, *Desert Care*, and *Fullstory*) this Court previously considered but declined to follow. *See* Order at 13–14 n.7.[3] In short, Plaintiff

[2] Plaintiff does not dispute that the analysis which determines the timeliness of her originally-pled CIPA claim under Section 631 is the same analysis that governs the timeliness of her newly-asserted claim under Section 632 of CIPA.

[3] The only other case Plaintiff cites is *Tenet Healthcare*, which was decided on June 9, 2025—before Plaintiff filed her opposition to SkinSpirit's last motion to dismiss. Whatever the reason may be that Plaintiff did not previously cite this case, it fails to support her argument for all the same reasons that the Court rejected *Gaige*, *Desert Care*, and *Fullstory*.

effectively asks the Court to go back and reconsider its application of the same law to the same set of facts and reach a more Plaintiff-friendly outcome.

Plaintiff's request is improper. The Court thoroughly analyzed the delayed discovery rule in its prior Order and ultimately held that the tolling standard articulated in *Saedi* was persuasive and governs here. *See* Order at 13:16–25. Given that Plaintiff has not alleged any new facts or identified any new law that might have altered the Court's analysis of these issues the first time around, this Court's prior holding constitutes the law of the case. Plaintiff has not—and cannot—identify any clear error or manifest injustice that would warrant the Court revisiting its decision. *See, e.g., Sanchez v. CoreCivic, Inc.*, No. 3:25-cv-1944, 2025 WL 2962441, at *3 (S.D. Cal. Oct. 20, 2025) (declining to reconsider prior ruling of law in motion to dismiss under law of the case doctrine).

Even if the Court were to reconsider its prior holding, however, the grounds on which Plaintiff seeks reconsideration lack merit.

Plaintiff first takes issue with a sentence contained in a footnote of the Order that distinguishes the allegations in this case from those addressed in *Gaige*, *Desert Care*, and *Fullstory*. *See* Opp. at 4:19–5:8 (citing Order at 13–14 n.7). Plaintiff argues that if this Court had only endeavored to take the unusual steps of (1) pulling the complaints from the *Gaige*, *Desert Care*, and *Fullstory* dockets, and (2) sorting through the hundreds of paragraphs of allegations in each of them, it would have eventually come across an allegation or two indicating that the plaintiffs saw advertisements after visiting the defendants' websites. While Plaintiff is correct to note that generic allegations of that sort are buried in the plaintiffs' complaints, she fails to explain why the mere existence of such allegations is legally relevant—because it is not. There is no dispute that the courts in *Gaige*, *Desert Care*, and *Fullstory* were neither specifically asked to address, nor did they "discuss[] in [their] published orders" whether such allegations might have put the plaintiffs on "inquiry notice" of a potential privacy injury sufficient to bring an end to any tolling that might have initially been supported by the delayed discovery rule.[4] *See* Opp. at 4:22–

[4] The fact that none of the courts in Plaintiff's cases even attempted to distinguish *Javier* or *Saedi* is further confirmation that those courts did not meaningfully consider the legal ramifications of

5:8.

The court in *Saedi*, by contrast, did consider such allegations, and it held that plaintiff had inquiry notice of her "injury" around the time she visited the website because she began seeing targeted advertisements shortly thereafter. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525, 2025 WL 1141168, at *1–*3 (C.D. Cal. Feb. 27, 2025). Thus, contrary to what Plaintiff argues, while the Court may have brushed with broad strokes in its footnote explaining why the allegations in this case are more like *Saedi* and less like *Gaige*, *Desert Care*, and *Fullstory*, its statement, when viewed through the lens of what is legally relevant here, is perfectly sound: The *Saedi* court actually considered the impact of a plaintiff alleging he or she saw ads on tolling, whereas the courts in the cases on which Plaintiff relies did not.

Plaintiff next argues the Court should reconsider its prior analysis of, and reliance on, *Saedi*. According to Plaintiff, *Saedi* is distinguishable because the plaintiffs in that case alleged that they were generally aware their information was being collected when they visited the defendant's website, whereas here, Plaintiff claims she lacked any such awareness. Opp. at 5:20–22. This argument fails on multiple levels.

To start, Plaintiff's argument ignores the numerous allegations referenced in *Saedi* that are similar to those Plaintiff alleges here. *Compare Saedi*, 2025 WL 1141168 at *1–*3 (referencing allegation that Meta Pixel was installed on the defendant's website "unbeknownst to customers" and "without plaintiff's knowledge"), *with* SAC ¶¶ 7, 124.

More importantly, Plaintiff's argument assumes—incorrectly—that any factual differences which might exist between *Saedi* and this case have any legal bearing on whether, after visiting a

---

plaintiffs' allegations that they saw advertisements.

It is also noteworthy that in at least two of the cases Plaintiff cites (*Desert Care* and *Tenet Healthcare*), the courts reached the delayed discovery issue only after rejecting the defendants' argument that the plaintiffs' allegations establishing their CIPA claims were untimely. *See, e.g.*, *Doe v. Tenet Healthcare*, 789 F. Supp. 3d 814, 853 (E.D. Cal. 2025) ("Before turning to Defendants' arguments, the court notes Plaintiffs' FAC sufficiently alleges claims within the appli[c]able statute of limitations periods."). Thus, not only are those courts' decisions non-binding, their analysis of the delayed discovery rule was dicta.

given website, a CIPA plaintiff is charged with inquiry notice of a potential privacy injury when they begin seeing ads reflecting the information they claim they wanted to keep private. As this Court held in *Javier*, it is the plaintiff's "knowledge of **injury**, not knowledge of a particular defendant's role in the injury," that triggers inquiry notice. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis in original); *see also Saedi*, 2025 WL 1141168 at *10 ("The fact that she could not see the tools on the Website does not mean that Plaintiff was unable to have made earlier discovery, particularly where there were signs of potential injury following her visit to the Website."). Thus, contrary to what Plaintiff suggests, the inquiry notice rule in *Saedi* applies regardless of the extent of Plaintiff's purported knowledge of SkinSpirit's data collection practices at the time she visited the Website.

Plaintiff also renews her contention that she lacked sufficient technical expertise such that "it was impossible for her to discern the causal link between those ads and [SkinSpirit]'s unlawful disclosures." Opp. at 4:17–19 (citing SAC ¶¶ 8–9). However, a plaintiff is not charged with inquiry notice of a potential privacy violation when she ascertains "who" caused the violation or even "how" the violation occurred; rather, as *Saedi* and *Javier* make clear, the triggering event occurs when the plaintiff becomes aware of signs of potential injury—which, in the context of the claims Plaintiff asserts here, came in form of "harassing targeted advertisements" related to appointment requests she made for cosmetic medical procedures on SkinSpirit's Website. *See* SAC ¶¶ 7, 96; *see also Saedi*, 2025 WL 1141168 at *10; *Javier*, 649 F. Supp. 3d at 901 (holding that plaintiff is "required to conduct a reasonable investigation **after becoming aware of an injury**, and [is] charged with knowledge of the information that would have been revealed by such an investigation" (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis added; internal quotations omitted)).

Finally, Plaintiff argues that "the advertisements she saw did not alert her that any of her private information was unlawfully disclosed." Opp. at 3:9–11. But this argument cannot be squared with Plaintiff's own allegations. Plaintiff alleges she "**never** consented, agreed, authorized, or otherwise permitted [SkinSpirit] to share her confidential health information," and that she considered the disclosure of such information "an invasion of privacy" that led to

"**harassing** targeted advertising" in violation of the law. SAC ¶ 96 (emphasis added). She further alleges that those advertisements concerned "various cosmetic medical procedures, specifically targeted at Plaintiff." *Id.* ¶ 7. If, as Plaintiff alleges, she saw ads reflecting private information that she never authorized the disclosure of, it is simply not plausible that those would not have "alerted" her to a potential privacy injury—especially given her characterization of them as "harassing." At a minimum, the advertisements should have put Plaintiff on alert, which is enough to give rise to inquiry notice. *Javier*, 649 F. Supp. 3d at 901.

Because Plaintiff has not alleged any new facts or cited any new law that would alter the Court's prior ruling on the timeliness of her CIPA claim, the Court should again dismiss Plaintiff's claims under CIPA as untimely. This time, the Court should enter dismissal with prejudice, because it has already given Plaintiff an opportunity to cure and, as evidenced by her SAC, she cannot allege that she began seeing the targeted advertisements she complains of within one year of filing her complaint. Should the Court dismiss Plaintiff's CIPA claims on these grounds, it need not consider SkinSpirit's other, independent arguments for dismissal.

## II. Plaintiff's Section 632 Claim Fails Because the Tracking Technologies Are Not "Devices" That "Amplify" or "Record" Confidential Communications.

### *1. The Tracking Technologies Are Not "Electronic Amplifying or Recording Devices."*

Plaintiff argues that the Google and LinkedIn software SkinSpirit uses on its Website qualify as "amplifying or recording devices" and, as such, are subject to Section 632. Her argument is not supported by her own allegations, and to the extent courts are split on this issue, the caselaw favors SkinSpirit's commonsense reading of the statute over Plaintiff's overly broad interpretation.

As an initial matter, Plaintiff fails to identify any non-conclusory allegations supporting her contention that Google and/or LinkedIn used the Tracking Technologies on SkinSpirit's Website to electronically "amplify" or "record" her communications. To the contrary, Plaintiff's well-pled allegations establish, at most, that Google and LinkedIn used the Tracking Technologies to "**<u>intercept</u>**" her communications, *see id*. ¶¶ 4, 7–10, 61–62, or alternatively, that **<u>SkinSpirit</u>** "record[ed] and transmit[ed]" her communications to Google and LinkedIn—allegations that undermine her newfound contention that Google or LinkedIn used the Tracking Technologies to

"amplify" or "record" her communications with the Website. *See id.* ¶ 165.

Even if Plaintiff had adequately alleged facts to establish that Google or LinkedIn used the Tracking Technologies to amplify or record her communications, her Section 632 claim would still fail. Plaintiff alleges the Tracking Technologies are a form of software and, as reflected in SkinSpirit's Motion, courts have held that software does not qualify as a "device" regulated under this particular section of CIPA. Mot. at 8:8–19.

Plaintiff cites a number of cases reflecting a disagreement amongst courts concerning whether software can qualify as a "device" under Section 632. Plaintiff cites an outdated 2019 case in which a federal district court judge in Wisconsin noted that the "majority" of courts favor an interpretation of "device" that encompasses software. *See United States v. Hutchins*, 361 F. Supp. 2d 779, 795 (E.D. Wis. 2019). Upon a closer examination of those cases, however, the courts endorsing that interpretation of "device" largely relied on the 2015 *In re Carrier IQ, Inc.* decision. 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015). The *Carrier IQ* court did not actually address whether the software at issue qualified as a "device." It addressed a much narrower issue: namely, whether, as described in plaintiffs' complaint, the software fell within one of the express exclusions to the definition of "device" under the Federal Wiretap Act. *Id.* at 1084–87. Unlike here, the defendants in that case appear to have conceded for purposes of their motion that the software at issue qualified as a device. The courts that later relied on *Carrier IQ* appear to have incorrectly assumed otherwise.

Plaintiff's reliance on *Carrier IQ* and its progeny is also problematic because the courts in those cases inappropriately construed Section 632's reference to "device" as comparable to the Federal Wiretap Act provision regulating all "[e]lectronic, mechanical, or other devices," which, by definition, includes "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." The two statutes are not in parity; Section 632 applies only to "an electronic amplifying or recording device," whereas devices regulated under the Federal Wiretap Act include not only electronic devices, but also "mechanical or other devices." In at least one of the cases Plaintiff cites, the court suggested that software is a "mechanical" device. *See United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) ("The Court [] agrees with the

government's position that Section 2510(5)'s reference to 'mechanism,' which is commonly defined as a 'process, technique, or system for achieving a result' seems to encompass software."). Section 632, by contrast, does not apply to "mechanical" devices.

Plaintiff's reliance on *Carrier IQ* and *Gladstone* is misplaced for at least one additional reason. In both cases, the "software" at issue was built into or inextricably linked with a physical device—a mobile phone—which facilitated the eavesdropping and recording of their communications. *See, e.g.*, *Carrier IQ*, 78 F. Supp. 3d at 1070.[5] Here, Plaintiff does not allege that the software was built into or inextricably linked with any physical device. To the contrary, Plaintiff alleges the tracking technology operates using Plaintiff's web browser—which is itself software. *See, e.g.*, SAC ¶¶ 46–51. Thus, Plaintiff's cases are distinguishable.

Because Plaintiff has failed to establish that the Tracking Technologies on SkinSpirit's Website qualify as "devices" under Section 632 of CIPA—let alone alleged that Google or LinkedIn used the technologies to amplify or record her communications—her claim should be dismissed.

2. *Plaintiff Did Not Communicate with the Website Under Circumstances Giving Rise To A Reasonable Expectation of Confidentiality.*

Contrary to what Plaintiff suggests in her Opposition, SkinSpirit is not seeking dismissal of her Section 632 claim merely because courts have recognized a "presumption that Internet communications are not confidential." *See* Opp. at 7:21–25. That is only where SkinSpirit's argument begins. The real thrust of SkinSpirit's argument lies in Plaintiff's failure to allege facts sufficient as a matter of law to establish that she had an objectively reasonable expectation of confidentiality when she used the Website, as assessed under the *Mendell* factors. *See* Mot. at 8:28–9:5. Plaintiff hardly addresses **that** argument at all.

Instead, Plaintiff advocates for the application of a different standard—one that ignores the

[5] While *L.B. v. LinkedIn* involved the same technology at issue here, the court's finding that the software in that case constituted a device was premised entirely on its recent decision in *Libman v. Apple, Inc.*, a case in which—once again—the software at issue was built into and inextricably linked with Apple iPhones. No. 5:22-cv-07069, 2024 WL 4314791, at *13 (N.D. Cal. Sep. 26, 2024).

presumption of non-confidentiality applicable to Internet communications and hinges primarily on Plaintiff's subjective expectation of confidentiality based on the nature of the information disclosed rather than the circumstances of its disclosure. That is not governing standard.

The majority of courts agree that Internet communication are presumptively **not** confidential—including in cases that Plaintiff cites favorably in her own brief. *See, e.g.*, Opp. at 8:7–16 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (acknowledging presumption of non-confidentiality)); *see also* Mot. at 9:6–15 (citing *Campbell*, *Revitch*, and *Rodriguez v. Google*). Plaintiff argues that *Brown v. Google* dispelled the presumption. However, in *Brown*, the court seemed to have been addressing a different issue: whether the presumption is enough, without anything more, to defeat a Section 632 claim involving Internet communications. 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) ("That these communications occurred over the internet does not **automatically** mean that plaintiffs gave up that expectation of privacy when they went Incognito." (Emphasis added)). The same is true of *Smith v. Google LLC*. *See* 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (rejecting argument that "Section 632 does not apply **because** there is a 'presumption' under California law that online communications are not confidential" (emphasis added)).

SkinSpirit is not arguing that the presumption of non-confidentiality automatically defeats Plaintiff's claim. Rather, as held in *Rodriguez v. Google* (among other cases), it provides a starting point from which courts must then assess whether allegations exist to overcome the presumption. *See* Mot. at 9:6–10:9. No such allegations exist here.

Plaintiff next argues that the viability of her Section 632 claim hinges entirely on whether she "desire[d]" her communications to be confined to the parties. *See* Opp. at 8:2–6. But this improperly injects subjectivity into what most courts agree is an objective test. *See* Mot. at 8:25–9:5. In assessing whether Plaintiff had an objectively reasonable expectation of confidentiality, her subjective beliefs bear little weight, if any at all.

Finally, Plaintiff argues that because this Court held she had a reasonable expectation of privacy in the disclosed information, it necessarily follows that she had a reasonable expectation of confidentiality in that the same information. Neither the text of the statute, nor cases interpreting

it, support Plaintiff's argument. *See* Mot. at 10; *see also Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018) (finding Internet communications were not "confidential" under Section 632 even where the plaintiff had a reasonable expectation of privacy sufficient to support an invasion of privacy claim).

Nor do *Meta Pixel*, *Smith*, or *GoodRx* support Plaintiff's contention that the mere disclosure of sensitive information satisfies Section 632's confidentiality requirement. In none of those cases did the court rely solely on the nature of the information to find that the plaintiffs had a reasonable expectation of confidentiality. The courts made their findings based on the circumstances under which the defendants allegedly disclosed such information in each case.

*Meta Pixel* involved the disclosure of sensitive medical information shared by patients after logging into a website's private patient portal. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 779. Similarly, *Smith* involved the disclosure of financial information that paying customers input into a tax preparation website while using that service (presumptively after creating an account and logging in), not information inputted on public-facing portions of the website when signing up for that service, like in this case. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1200 (N.D. Cal. 2024). And in *GoodRx*, defendant disclosed patients' prescription information after allegedly promising its customers it would "never" disclose that very information, both in its privacy policy and in public statements by its co-CEO. *Doe v. GoodRx Holdings, LLC*, No. 3:23-cv-00501, 2025 WL 2052302, at *1 (N.D. Cal. July 22, 2025).

The circumstances alleged in *Meta Pixel*, *Smith*, and *GoodRx* are absent here. Plaintiff does not allege that at the time of disclosure she had an established patient-provider relationship with SkinSpirit, or that she inputted her medical information into a private patient portal on the Website. Plaintiff similarly fails to allege that SkinSpirit promised it would never disclose information she inputted on the public-facing portion of the Website, as in *GoodRx*. The best she can do is point to an allegation that SkinSpirit made some (still unspecified) representations to her—without any indication what the representations were, when they were made, or in what manner they were communicated to her. That vague and conclusory allegation, alone, is not enough to overcome the presumption of non-confidentiality applicable to Internet communications.

Because Plaintiff's allegations do not establish that she communicated with the Website under circumstances giving rise to an objectively reasonable expectation of confidentiality, her Section 632 claim should be dismissed.

### III. Unlike Its Neighboring Provisions, Section 632 Does Not Expressly Contemplate Aiding and Abetting Liability, and Even If It Did, Plaintiff's Allegations Fall Short.

Section 632 does not **expressly** contemplate aiding and abetting liability. Mot. at 10:21–24. Plaintiff argues otherwise, but the statute's language speaks for itself. The absence of an aiding provision in Section 632 is particularly telling given that in neighboring CIPA sections—including Section 631(a), which recognizes aiding claims, and Section 632.01, which recognizes aiding and abetting claims for the disclosure of confidential communications to a "health care provider"—aiding liability is contemplated by the statute's plain language. The legislature could have included similar language in Section 632, but it chose not to do so.

Plaintiff falls back on Penal Code Section 31 to support her position. But she fails to mention—and the cases she cites do not meaningfully reconcile—the fact that Section 31 was meant to support aiding and abetting liability arising from the commission of a **crime**. While Section 31 could understandably apply to **criminal** claims brought under CIPA, Plaintiff brings a **civil** claim under Section 632, and thus Section 31 does not apply here. Moreover, as demonstrated in Section 632.01, had the legislature wanted Section 31 to apply, it would have said so. It did not.

Even if Section 31 did apply, Plaintiff's allegations fall short of plausibly alleging that SkinSpirit had the requisite knowledge or intent to support her aiding and abetting theory. *See* Mot. at 11:7–13. Plaintiff argues otherwise, citing the same basic allegations she relied upon to support her claim under Section 631(a)'s aiding provision. *See* Opp. at 9:27–10:8. However, as this Court held in its Order, the scienter requirement that applies to a Section 631(a) claim is far less stringent than what is required to establish "aiding and abetting" liability. *See* Order at 18:6–20:1. While Plaintiff's allegations may have been enough to establish SkinSpirit had an intent to aid under Section 631(a), those same allegations do not come close to showing SkinSpirit had knowledge of, and provided "substantial assistance" to, any alleged wrongful conduct by Google or LinkedIn as required under Section 31. Mot. at 11:7–13. Plaintiff fails to identify any other non-conclusory

allegations that plausibly support such a finding, and thus her claim that SkinSpirit aided and abetted a Section 632 violation should be dismissed.

### IV. To Satisfy Section 631(a)'s In-Transit Requirement, Plaintiff Needed To Allege More Than The Mere Interception of Her Communications.

Plaintiff does not dispute that to state a viable claim against SkinSpirit under Section 631(a)'s aiding provision she must first allege facts sufficient to establish that Google or LinkedIn willfully attempted to read or learn the contents of her communications with the Website "while in transit." *See* CAL. PENAL CODE § 631(a); *see also* Mot. at 11:16–12:24. Plaintiff argues, instead, that she has satisfied that requirement by alleging that Google and LinkedIn "intercepted" her communications. Opp. at 11:3–18. In her view, "no additional allegations are required." *Id.*

If Plaintiff were correct—that the mere "interception" of a communication is all that is required to state a viable Section 631(a) claim—her argument might win the day. However, in *ERC*, Judge Chhabria made clear that the statute's in-transit element requires something "more than just intercept[ing] the communication." *Doe v. Eating Recovery Ctr. LLC*, No. 3:23-cv-05561-VC, -- F. Supp. 3d --, 2025 WL 2971090, at *5–6 (N.D. Cal. Oct. 17, 2025). It requires allegations that the intercepting party (here, Google or LinkedIn) made "some effort at understanding the substantive meaning" of her communication "while in transit." *Id.* at *5. Those allegations are absent from the SAC. And to the extent the SAC describes Google's and LinkedIn's efforts to read or learn the contents of Plaintiff's communications at all, it alleges that they process the information **after** intercepting it. *See* Mot. at 12:25–13:7. Plaintiff conveniently ignores the legal ramifications of these allegations.

Plaintiff attempts to discount Judge Chhabria's *ERC* opinion because it was issued at the summary judgment phase. Opp. at 11:19–22. However, SkinSpirit cites *ERC* for the legal standard it articulates, nothing more. Plaintiff's amended allegations, taken as true, fail to satisfy that legal standard.

Plaintiff argues this Court should rely, instead, on cases in which courts have held that mere interception of a communication is enough to state a Section 631(a) claim. *See id.* at 11:13–18. But in *ERC*, the court considered cases that reached similar conclusions and ultimately found

them "wrong as a matter of law," after inviting supplemental briefing on the issue. 2025 WL 2971090 at *5. It held the "better conclusion," given the nature of the statute and its text, was not to treat Section 631(a)'s "read or learn" and "in transit" as distinct, unconnected requirements as done in those other cases, but rather to read the requirements together as one. *Id.*; *see also Torres v. Prudential Fin., Inc.*, No. 3:22-cv-07465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (holding that the plaintiff must establish that the intercepting party "reads or attempts to read the contents of the communication **while they are in transit**" (emphasis in original)).

Plaintiff argues, in the alternative, that the images her attorneys captured from SkinSpirit's Website and included in the SAC "illustrate how LinkedIn and Google intercept and learn the meanings of Plaintiff's communications in real time." Opp. at 11:16–18 (citing SAC, Figures 2-7). Not so. These screenshots purport to reflect the type of information the Website's Tracking Technologies enabled Google and LinkedIn to intercept; none of them reflect the timing of when those entities allegedly received the information or what they did with it upon receipt. Nor do they "readily illustrate real-time transmissions." *Heiting v. Athenahealth, Inc.*, No. 23-cv-09015-SPG-PDx, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) (rejecting plaintiff's attempt to rely on "graphics" of "network transmissions" to establish "real-time transmissions").

Because Plaintiff has failed to allege that Google or LinkedIn contemporaneously attempted to read or learn the substance of her communications while the same were in transit, she has failed to plausibly allege a predicate violation of Section 631(a). Consequently, her claim against SkinSpirit for aiding such a violation fails as a matter of law and should be dismissed with prejudice.

## CONCLUSION

Plaintiff has had numerous opportunities to amend her complaint and, for the reasons set forth above, any further attempt will prove futile. Accordingly, SkinSpirit respectfully requests that the Court dismiss Plaintiff's CIPA claims with prejudice.

DATED: January 30, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: */s/ J. Matthew Thornton*
Scott S. Humphreys
Gregory P. Szewczyk
J. Matthew Thornton
Brianna R. Howard
Alexia C. Chapman

*Attorneys for Defendant*